UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&G FOODS NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> KIM EMBRY and NOAM GLICK, <br><br> Defendants. | No. 2:20-cv-00526-KJM-DB <br><br><br> ORDER |

      Defendants Kim Embry and Noam Glick move to dismiss the complaint brought by plaintiff B&G Foods North America, Inc. (B&G). The motion is fully briefed. *See* Opp'n, ECF No. 23; Reply, ECF No. 24; Supp. Br., ECF No. 31; Supp. Resp., ECF No. 32. The court heard oral argument by video teleconferencing on September 4, 2020. J. Noah Hagey and David Kwasniewski appeared for B&G, and Noam Glick appeared for defendants.[1] The motion is granted, and the complaint is dismissed with prejudice, as explained below.

    I.    BACKGROUND

      B&G manufactures Snackwell's Devils' Food Cookie Cakes. Compl. ¶ 13, ECF No. 1. The process of baking the cookies causes the formation in the cookies of acrylamide, a naturally occurring byproduct of all baking. *Id.* ¶¶ 16–18. B&G alleges that Embry, represented

---

[1] Noam Glick appeared as counsel on his own behalf and for Embry.

1  by Glick, contends acrylamide causes cancer and has sued many businesses under a California
2  statute that permits private plaintiffs to enforce California Proposition 65, a provision that
3  requires businesses to notify their customers of potential exposures to cancer-causing chemicals.
4  *See* Compl. ¶¶ 1, 2, 7; California Health & Safety Code § 25249.7(d).  B&G is among the targets
5  of Embry's complaints.  *See* RJN Ex. D, ECF No. 18–7 (showing Embry filed suit in Alameda
6  County Superior Court against B&G immediately prior to filing this suit).[2]
7          In its complaint, B&G asserts acrylamide does not cause cancer.  Compl. ¶¶ 23–
8  26.  It therefore claims Proposition 65 violates the First Amendment by compelling it to warn
9  customers that its cookies might give them cancer.  *Id.* ¶¶ 73–80.  B&G also contends Proposition
10 65 is unconstitutionally vague under the Fourteenth Amendment because it does not provide
11 adequate notice to B&G that the level of acrylamide in its products could give rise to liability.  *Id.*
12 ¶¶ 82–87.  B&G seeks an injunction against threats and lawsuits about acrylamide.  *Id.*, Prayer for
13 Relief A.  B&G also seeks a declaration that a Proposition 65 warning requirement violates the
14 First Amendment as applied to its cookies.  *Id.*, Prayer for Relief B.  Embry and Glick move to
15 dismiss under Rule 12(b)(6).
16        II.    LEGAL STANDARD
17         Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to
18 dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may
19 dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged
20 under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.
21 1990).  The court must construe the complaint in the light most favorable to the plaintiff and
22 accept plaintiffs' factual allegations as true.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).
23 /////
24 /////
25
26 [2] The court takes judicial notice that this lawsuit was filed and that it rests on the allegations contained in Embry's complaint.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741,
27 746 n.6 (9th Cir. 2006) (noting that courts may take judicial notice of court filings and similar matters of public record).  In that respect, B&G's request for judicial notice is granted.  The
28 remainder of the request is denied as moot.

2

### III. DISCUSSION

Embry and Glick argue the court should dismiss the complaint because (1) they are not state actors; (2) the Anti-Injunction Act bars the action; and (3) the *Noerr-Pennington* doctrine bars the action. At hearing, B&G for the first time raised the argument that *Mitchum v. Foster*, 407 U.S. 225 (1972) held § 1983 to provide an exception to the Anti-Injunction Act. The court permitted defendants to file a supplemental brief, in which they conceded *Mitchum* precludes the application of the Anti-Injunction Act here; they argued for the first time the court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971). Supp. Br., ECF No. 31. Plaintiff submitted a response addressing this argument. Supp. Resp., ECF No. 32. As discussed below, the court need not address the state action doctrine, the Anti-Injunction Act, *Mitchum* or the *Younger* abstention doctrine because application of the *Noerr-Pennington* doctrine is dispositive.

The *Noerr-Pennington* doctrine was first articulated to provide immunity from antitrust liability for market actors lobbying the government for favorable action. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965) (union's wage agreements with multiemployer bargaining agreement could not be basis of liability under Sherman Act). The doctrine has since been extended substantially. It derives from the First Amendment's Petition Clause, which guarantees "the right of the people . . . to petition the Government for a redress of grievances," *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2005), and provides immunity against claims based on petitions to any government department. *Id.* Lawsuits are petitions in this respect. *Id.* at 930. To provide "breathing space" to the right to petition, the *Noerr-Pennington* doctrine also immunizes "conduct incidental to the prosecution of the suit," such as demand letters and related prelitigation communications. *Id.* at 935–36. Embry and Glick's Proposition 65 demand letters, prelitigation communications and lawsuits thus qualify as petitions entitled to protection under the *Noerr–Pennington* doctrine.

B&G asserts the *Noerr-Pennington* doctrine does not apply to state actors because states have no First Amendment rights. Opp'n at 18 (citing *Aldrich v. Knab*, 858 F. Supp. 1480, 1491 (W.D. Wash. 1994) (discussing effect of state ownership of broadcast licenses on licensees'

3

1  First Amendment rights)). This is not the case for the purposes of *Noerr-Pennington* immunity,
2  however. States *qua* states do not have First Amendment rights, but the *Noerr-Pennington*
3  doctrine protects "petitioning" by government actors, provided they are acting in their official
4  capacities on behalf of the public. *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1094
5  (9th Cir. 2000); *see also Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 645 (9th Cir. 2009). In
6  *Manistee*, for example, the Ninth Circuit held that city officials who lobbied voters, the press and
7  county officials to oppose the county's prospective commercial lease were entitled to the
8  protection of the *Noerr-Pennington* doctrine because they "intercede, lobby, and generate
9  publicity to advance their constituents' goals, both express and perceived." 227 F.3d at 1091.
10 When acting in a representative capacity for constituents, in other words, state actors may receive
11 the immunity.

12         In *Kearney*, the Ninth Circuit extended immunity to a law firm representing a
13 government entity in an eminent domain proceeding. *Kearney*, 590 F.3d at 644. The *Kearney*
14 court clarified "[t]here is no reason to limit *Manistee*'s holding to lobbying efforts." *Id.* "Such
15 intercession is just as likely to be accomplished through lawsuits—the very act of petitioning—as
16 through lobbying." *Id.* at 644–45 (citation omitted).

17         The court here assumes without deciding that if Embry and Glick are "state actors"
18 who can be sued under 42 U.S.C. § 1983, they would be entitled to the protections of the *Noerr-*
19 *Pennington* doctrine just the same: Proposition 65 was a ballot measure subject to a popular vote,
20 so when private plaintiffs such as Embry enforce Proposition 65, they are engaged in an activity
21 sanctioned by California voters and are acting on behalf of the public. *DiPirro v. Bondo Corp.*,
22 153 Cal. App. 4th 150, 183 (2007) ("Citizens bringing Proposition 65 suits need not plead a
23 private injury and instead are deemed to sue in the public interest." (citation and internal
24 quotation marks omitted)).

25         B&G argues that Embry and Glick are not protected by the *Noerr-Pennington*
26 doctrine because their acrylamide lawsuits are "sham litigation." Opp'n at 18. It is true the
27 *Noerr-Pennington* doctrine offers no shield to litigation in pursuit of an ulterior and improper
28 motive, such as cases designed to "interfere directly with the business relationships of a

4

competitor." *Prof. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51 (1993) (internal quotation marks, citation omitted). A series of lawsuits filed without regard to their merits and for an injurious purpose are a sham entitled to no protection. *See Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998). "The inquiry in such cases is prospective: Were the legal filings made, not out of a genuine interest in redressing grievances, but as a part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?" *USS-POSCO Industries v. Contra Costa Cty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994).

A plaintiff's successful history in the disputed litigation may rebut claims of a sham. *See, e.g.*, *id.* (litigation not sham because more than half the supposed sham lawsuits had merit). That is the case here. B&G's own allegations show Embry and Glick's litigation is not a sham, at least not completely. B&G claims "over the last few years, [they] have extracted nearly $1.7 million in penalties and fines from food companies" in acrylamide lawsuits. Compl. ¶ 2. The *Noerr-Pennington* doctrine thus bars B&G's complaint, which must be dismissed.

Ordinarily a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has "stressed Rule 15's policy of favoring amendments." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). But "[l]eave need not be granted" if amendment would constitute "an exercise in futility." *Id.* (citations omitted). Amendment would be futile here. The *Noerr-Pennington* doctrine would apply equally to all claims based on Embry's acrylamide litigation against B&G. At hearing, B&G was not able to propose viable amendments. Dismissal is thus granted with prejudice.

## IV. CONCLUSION

For the reasons above, the defendants' motion to dismiss (ECF No. 18) is GRANTED and the complaint is dismissed with prejudice. The clerk is directed to close the case.

IT IS SO ORDERED.

DATED: October 6, 2020.

CHIEF UNITED STATES DISTRICT JUDGE