CRAIG M. NICHOLAS (Bar No. 178444)
cnicholas@nicholaslaw.org
SHAUN MARKLEY (Bar No. 291785)
smarkley@nicholaslaw.org
JAKE W. SCHULTE (Bar. No. 293777)
jschulte@nicholaslaw.org
**NICHOLAS & TOMASEVIC, LLP**
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496

NOAM GLICK (Bar No. 251582)
noam@glicklawgroup.com
**GLICK LAW GROUP, P.C.**
225 Broadway, 19th Floor
San Diego, CA 92101
Tel: (619) 382-3400
Fax: (619) 615-2193

Attorneys for Defendants
KIM EMBRY and
ENVIRONMENTAL HEALTH ADVOCATES, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| B&G FOODS NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> KIM EMBRY and ENVIRONMENTAL HEALTH ADVOCATES, INC., acting as enforcement representatives under California Proposition 65 on behalf of the State of California, <br><br> Defendants. | CASE NO. 2:20-CV-00526-KJM-DB <br><br> **DEFENDANTS KIM EMBRY AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> **Hearing Date**: October 7, 2022 <br> **Hearing Time**: 10:00 a.m. <br> **Courtroom**: 3 (15th Floor) <br><br> **District Judge**: Hon. Kimberly J. Mueller <br> **Magistrate Judge**: Hon. Deborah Barnes <br><br> **Complaint Filed**: March 6, 2020 <br> **Complaint Dismissed**: October 7, 2020 <br> **Mandate Issued**: May 4, 2022 <br> **FAC Filed**: July 7, 2022 <br> **Trial Date**: None Set |

## I. THERE IS NO STATE ACTION

There is no dispute that 42 U.S.C. § 1983 requires a plaintiff to show that the defendants are state actors and that private parties are presumed *not* to be state actors. *See* Mot. 5:17-6:10. B&G argues this case fits into the limited exceptions to the rule that private parties are not state actors. *See* Opp. 11:9-18:10. The Court should reject B&G's attempt to dramatically expand the exceptions.

### A. The Function at Issue is Not Exclusively Governmental.

As to the public functions test, all agree a state actor must perform traditional *and exclusive* public functions. Mot. 6:6-7, 14-21; Opp. 12:3-4. This test is met for "very few functions" such as "running elections." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).

B&G primarily argues that public health is a *traditional* governmental function. Opp. 12:6-23. But the public function test requires the function be *exclusively* governmental. On that score, B&G states: "*Before* Proposition 65, the enforcement of these laws was the exclusive function of the government." *Id.* 13:1-2 (emphasis added). But that makes Defendants' point. Whatever may have been the case *before* the voters enacted Proposition 65, that landmark initiative changed the enforcement regime. B&G does not dispute that, *after* Proposition 65 – the time period at issue – enforcement actions may be brought by either public prosecutors or private enforcers. Mot. 7:9-24. That is, enforcement is no longer exclusive – if it ever was given unfair business practice statutes and the like. Rather, Proposition 65 contemplates state actions, which are brought by the public prosecutors (California Health & Safety Code § 25249.7(c)), and a "private action" (§ 25249.7(d)(1)).

B&G nonetheless argues that because "private citizens have been empowered to enforce a public health/food labeling law on behalf of the *public* interest and to collect penalties for the *public* treasury, they are performing functions that traditionally and exclusively belong to the government." Opp. 13:14-16. This ignores that Proposition 65's terms allow private citizens to enforce a public health law in the public interest and to collect penalties for the state (and themselves). Cal. Health & Safety Code §§ 25249.7(d), 25249.12(c)-(d). These matters are not *exclusive* to the government. Further, describing the law as quasi-criminal makes no difference to whether enforcement is exclusive. Under Proposition 65, enforcement is not exclusive to the government and B&G's failure to cite the provisions of Proposition 65 in this section of its brief (while doing so in other sections) is telling.

B&G also makes a mistaken policy argument – that the Court should not insulate laws from constitutional attack. Opp. 13:17-23. But "those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments" and constitutional rights are "asserted typically as defenses to state-law claims." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 537, 538 (2021). Here, B&G has asserted the very constitutional claims it makes in this case as affirmative defenses in the state court Proposition 65 lawsuits. RJN, Exs. M at 3:16-19, N at 3:16-19. Moreover, B&G could always sue the Attorney General.

**B.    The Tests for Joint Action, Symbiotic Relationship, and Close Nexus are Not Met.**

Defendants addressed the joint action, symbiotic relationship, and close nexus tests together because of their similarities. *See* Mot. 8:4-17. The joint action test requires that a private party's and a government's actions be "inextricably intertwined." *Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205, 1211 (9th Cir. 2002) (internal quotation marks omitted). The "derivative" symbiotic relationship test" looks at the "interdependence" of a private and governmental entity. *Id.* at 1210. The close nexus test looks at whether "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995 n.13 (9th Cir. 2013) (internal quotation marks omitted). B&G admits that the joint action and symbiotic relationship tests are "[s]imilar" and relies on the "same reasons" for the joint action and close nexus tests. Opp. 15:22-23, 17:22-23. Therefore, although B&G separates out the three tests, Defendants discuss them together.

The fundamental problem for B&G is that Proposition 65's scheme is based on *independent* actions of state and private actors – and often *adverse* ones at that.

B&G relies on the following elements of Proposition 65 to show state action: (1) private enforcement actions cannot commence without notice to the Attorney General, who can prevent a private lawsuit by bringing suit first and who can also send a non-binding letter that the case has no merit (Opp. at 14:9-14, 15:2-6); (2) the Attorney General has an opportunity to review and object to settlements (*id.* 14:14-16, 15:11-14); and (3) the benefit to the State of civil penalties (*id.* 16:8-24). In addition to these terms to Proposition 65, B&G relies on a letter from the Attorney General that is not part of the First Amended Complaint. Opp. 14:19-27. "Ordinarily, a court may look only at the face

of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). B&G provides no reason to depart from the rule and the Court should therefore disregard the letter. (Although judicially noticeable documents can be used, and Defendants have properly sought judicial notice, B&G has not – and is also the plaintiff and should have included any allegations in the complaint.) In any event, the letter reiterates what Proposition 65 already provides: The Attorney General reviews and oversees private enforcement actions. Defendants have already anticipated B&G's three arguments based on the elements of the statute. Mot. 8:18-10:10.

First, the Attorney General's role prior to commencement of a private lawsuit is far removed from that of Defendants. The Attorney General reviews the notice and decides whether to bring a public lawsuit; if so, the private lawsuit does not go forward. Cal. Health & Safety Code § 25249.7(d), These actions are wholly independent. Mere review of a private party's notice and a separate governmental decision about whether to bring a lawsuit do not convert the private party into a state actor. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 48, 52-54 (2000) (government's "mere approval or acquiescence," "subtle encouragement," or "permission of a private choice" does not create state action). Nor does the Attorney General's ability to send a letter stating its view that the claim lacks merit (Cal. Health & Safety Code § 25249.7(e)(1)(A)) show a close relationship between private enforcers and the State – if anything, there is an arm's distance, potentially adverse relationship. Moreover, the letter does not foreclose a private action, which is an independent decision for the private enforcer. *See id.* B&G relies on the possibility of sanctions (Opp. 15:4-7), but that does not matter because sanctions are available regardless of whether the Attorney General sends the letter. Cal. Health & Safety Code § 25249.7(h)(2). Finally, B&G again goes beyond the allegations of its First Amended Complaint in speculating that Defendants withdrew notices because of letters from the Attorney General. Opp. 15:4-10. The Court should disregard this extra-pleading reference and, in any event, there is no basis provided for this speculation.

Second, the Attorney General's responsibility to review settlements and opportunity to object to them (Cal. Health & Safety Code § 25249.7(f)(5)) shows not a close relationship but independence – indeed adversity. Nor does the Attorney General's position determine whether a state court approves or rejects a settlement, which is based on compliance with Proposition 65 and the reasonableness of

1  penalties and attorneys' fees. *Id.* § 25249.7(f)(4). Although B&G pleads that a settlement Defendant
2  Embry entered into did not proceed after the Attorney General sent a letter to the parties, that does not
3  make Defendants state actors. Even if Defendants decided not to proceed with the settlement because
4  of the Attorney General's objection, that is an independent decision they made.

5  Third, B&G has not pled that payment of civil penalties to the State rises to the level necessary
6  to show state action. Although B&G glancingly relies on penalties paid to the State (FAC, ¶ 110(e)),
7  B&G fails to explain how those penalties show state action. The parties agree that to constitute state
8  action the financial benefit must be "indispensable" to the government. Mot. 10:1-3; Opp. 16:4-5. In
9  B&G's main case, the government entity's viability depended on profits from a private restaurant.
10 *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 719-20 (1961). B&G has no pleading anywhere
11 close to this requirement. That should end the inquiry. B&G yet again improperly relies on material
12 outside the pleadings – in this case, a summary of penalties. Opp. 16:10-15. Even were the Court to
13 consider this material, it would not matter as B&G's speculation about what would happen in the
14 absence of funding from private enforcement is conclusory and cannot be presumed true. *Ashcroft v.*
15 *Iqbal*, 556 U.S. 662, 681 (2009).

16 An additional case on which B&G relies show how much its arguments depart from the law
17 on state action. B&G cites *Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1981), with respect to the joint
18 action test. Opp. 13:26-14:8. The Supreme Court held that where the State allows officials to seize
19 property based on an *ex parte* application, the private party seeking the attachment "jointly engages"
20 with the government in the seizure. *Id.* at 942. Unlike that attachment process, which allowed private
21 parties to involve the government, Proposition 65 requires plaintiffs to bring their own actions and
22 litigate them before a court, without the government's help and sometimes over the government's
23 objection. Those are not the hallmarks of a relationship close enough to constitute state action.

24     **C.**    **The Compulsion Test is Not Met.**

25 All agree that the compulsion test requires the State's "coercive influence" or "significant
26 encouragement." Mot. 10:23-24; Opp. 16:28-17:3. B&G comes nowhere near meeting that standard.
27 B&G has no answer to Defendants' showing that Proposition 65 merely *permits* private
28 enforcement. *See* Mot. 10:26-28 (citing Cal. Health & Safety Code § 25249.7(d)). The argument that

the Attorney General "makes private enforcement of Proposition 65 *possible* by fulfilling his statutory duty of reviewing 60-day notices and proposed settlements" (Opp. 17:13-15 (emphasis added)) does not help B&G. Mere possibility does not equal compulsion. Defendants remain free to file or not file lawsuits after the Attorney General reviews the notices and to enter into settlements and submit them to courts for approval or not regardless of the Attorney General's position.

Nor do Defendants explain how the availability of penalties compels private enforcement. *See* Opp. 17:15-19. It bears reiterating that courts "have never held that the mere availability of a remedy for wrongful conduct . . . so significantly encourages the private activity as to make the State responsible." *Sullivan*, 526 U.S. at 53. B&G does not address this case, relying instead on *Tulsa Prof. Collection Services, Inc. v. Pope*, 485 U.S. 478, 487 (1988). Opp. Br. 17:8-12. But unlike the executor appointed by the court in that case, the State did not appoint Defendants and does not control them.

Finally, B&G relies on the following allegation: "The State encourages enforcement representatives like Defendants to sue food companies for injunctive and monetary relief." FAC, ¶99. This is a prime example of what the Supreme Court meant in stating "the allegations are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

### D. The State Action Doctrine Does Not Permit Retaliatory Suits.

B&G neither defends nor disclaims its broad assertion that Defendants are state actors "because California has interjected itself into this dispute by virtue of the fact that Proposition 65 is a state statute and Defendants have filed suit in state court." FAC, ¶ 111. That is a recipe for retaliatory federal lawsuits. Nor does B&G seriously contest that allowing such suits would chill participation by citizens in enforcing numerous state and federal statutes. *See* Mot. 11:6-12:2; Opp. 18:11-19.

B&G's only attempt to rebut Defendants' showing of the chilling effect is its argument that B&G's constitutional rights have been violated. Opp. 18:11-19. But that assumes the validity of the claim and ignores the effect of allowing these types of cases against many citizen enforcers. B&G can raise its free speech argument in defense to Proposition 65 actions. But when B&G instead seeks to sue citizen enforcers in separate actions in federal court, a shield turns into a sword that would destroy the tight limits on state action and impede important public health and other goals.

## II. THE SHAM EXCEPTION IS INAPPLICABLE

The parties agree that, after the Ninth Circuit's decision, this Court's analysis under the *Noerr-Pennington* doctrine is limited to whether the sham exception applies. Mot. 12:5-27; Opp. 6:11-19.

Although B&G cannot meet even the normal pleading standard, B&G is incorrect in its dismissal of heightened pleading. *See* Opp. 7 n.1. B&G relies on *Empress LLC v. City & Cnty. of San Francisco*, 419 F.3d 1052 (9th Cir. 2005). That case in turn relied on Supreme Court cases to the effect that § 1983 cases are not subject to a heightened pleading standard. *Id.* at 1055-56. That is a different question than whether the specific *Noerr-Pennington* defense – which is not limited to § 1983 cases but applies, for instance, to antitrust cases – requires heightened pleading. *Empress* does not conduct an analysis of the pleading standard under *Noerr-Pennington* but simply applies normal pleading standards based on the § 1983 analysis. *Id.* at 1056-57. But both before and after *Empress*, the Ninth Circuit has analyzed the issue and found a heightened standard applies under *Noerr-Pennington* to avoid a chilling effect on First Amendment rights. *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991); *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1063 (9th Cir. 1998); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 647 (9th Cir. 2009). B&G relies on a statement in *Kearney* that a court erred by not taking the complaint's allegations as true, but that is very different than "insufficiently specific allegations," as the Ninth Circuit specifically found. 590 F.3d at 647.

Under whatever pleading standard the Court applies, however, none of the three circumstances calling for application of the sham exception is met in this case.

The first sham exception is "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful." *B&G Foods v. Embry*, 29 F.4th 527, 537 (9th Cir. 2022). B&G takes issue with being required to plead objective baselessness based on an argument it forfeited in the Ninth Circuit. *Id.* at 538 n.4; Opp. 7:10-19. But the Ninth Circuit has limited dispensing with objective baselessness to the context of labor law. *White v. Lee*, 227 F.3d 1214, 1236-37 (9th Cir. 2000). B&G attempts to avoid this limitation by eliminating the words "employers" and "employees" in its quote from *White*. Opp. 7:13-14. The full sentence is: "The *employer's* right of expression has to be balanced against the equal rights of the *employees* to associate freely, giving special consideration to the economic dependence of the *employees* on their *employers*." *White*, 227 F.3d at 1237. That has no application to this non-labor case; the objective baselessness requirement applies with full force.

The lawsuits are not baseless. B&G accuses Defendants of largely ignoring allegations (Opp. 8:17), but virtually all the paragraphs B&G cites are cited in the opening brief. *Compare* Opp. 8:1-16 *with* Mot. 14:6-22. It is actually B&G that ignores the key points. Most importantly, B&G ignores that the Attorney General has brought at least two acrylamide Proposition 65 cases against snack foods. RJN Exs. K, L. This answers many of B&G's arguments. The arguments that acrylamide in food is not a carcinogen, snack foods have low consumption rates, and the acrylamide was present only because of baking (Opp. 8:1-7, 13-16) are just as true of the Attorney General's cases. If those factors show Defendants' cases are a sham, so are the Attorney General's. The proposition is ridiculous and B&G does not defend it – instead ignoring the point. (To the extent the arguments are affirmative defenses (*see* Opp. 8:24-9:12), the same is true.) Moreover, because the issue is *objective* baselessness, B&G cannot use insinuations about Defendants to distinguish the Attorney General's cases.

B&G also takes issue with Defendants' investigations. Opp. 8:7-12. These allegations rely on the named plaintiff's knowledge, but it is the attorney that needs to provide the "certificate of merit." Cal. Health & Safety Code § 25249.10(d)(1). The named plaintiff's knowledge shows nothing about merit. More important, Defendant's expert (a University of Michigan toxicologist) has opined, based on analysis of laboratory testing, that the products contain acrylamide at more than 50 times (for the Cookie Cakes) and more than 145 times (for the Sandwich Cookies) the NSRL. *See* Mot. 13:21-14:5 (discussing RJN Exs. I, J). This evidence alone destroys B&G's claims that Defendants failed to investigate their claims before bringing their notices of violation. Not surprisingly, therefore, B&G urges the Court not to take judicial notice of the expert letter and accompanying laboratory report. Opp. 9:15-21. But the case on which B&G relies draws a distinction between taking judicial notice of "the truth of the facts" in a document and its "existence." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). The Court need not determine whether the products exceed the NSRL, but that an expert provided such an opinion in the notices of violation is not reasonably subject to dispute based on the public records.[1]

---

[1] Indeed, B&G relies on notices of violation in the First Amended Complaint and the opposition brief. FAC, ¶¶ 104-08, 113-18, 166, 174; Opp. 15:7-10. B&G cannot now be heard to question the authenticity of these notices or the appropriateness of relying on them (while continuing to rely on

B&G's remaining arguments are readily dispatched. B&G relies on what it characterizes as evidence destruction (Opp. 8:11-3), but cannot show this bears on the merit of the Proposition 65 claims. *See* Mot. 14:15-19. B&G also argues that dismissals under *Noerr-Pennington* are rare and the facts are disputed. Opp. 9:25-10:3. But the very case B&G cites dismissed a complaint. *Wonderful Real Estate Dev. LLC v. Laborers Int'l Union of N. Am. Local 220*, 2020 WL 91998 (E.D. Cal. Jan. 8, 2020). Moreover, as discussed above, and as is proper in a motion to dismiss, Defendants have shown why B&G has not pled objective baselessness *without relying on disputed facts*. Additionally, B&G only briefly mentions the requirement that the lawsuits be filed with an unlawful motive. Opp. 7:1-2. B&G never explains how this requirement is met and has forfeited any such argument. Further, any basis for meeting the requirement would be pure speculation. *See* Mot. 14:19-22.

Finally, in its introduction, B&G suggests that the mere filing of Proposition 65 lawsuits on acrylamide is problematic because of rulings on the constitutionality of warnings on acrylamide. Opp. 1:6-13. To the extent B&G argues this shows the lawsuits are a sham, B&G ignores that acrylamide is listed as a carcinogen under Proposition 65 and the Proposition 65 lawsuits were filed *before* these rulings. RJN Exs. B (Complaint filed March 6, 2020), H (Complaint filed January 29, 2021); *California Chamber of Commerce v. Becerra*, 529 F. Supp. 3d 1099 (E.D. Cal. 2021) (preliminary injunction ruling of March 30, 2021), *aff'd sub nom. California Chamber of Commerce v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022). Further, *at Defendants'* request, the Proposition 65 lawsuits have been stayed. FAC, ¶ 8; Opp. 20:1-2. The timing shows that Defendants have acted responsibly in light of the uncertainty that developed surrounding acrylamide *after* they filed suit.

The second sham exception is "where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose." *B&G Foods v. Embry*, 29 F.4th at 537. That Defendants relied on expert analysis of laboratory results for the products at issue demonstrates there was no such policy. Further, B&G has no response to Defendants' showing based on Ninth Circuit precedent that whatever the nature of the earlier litigation activity, the second sham exception does not apply if the lawsuits at issue are

---

some of them). Whether or not the expert's opinion is correct (which the Court cannot reach at this point), it certainly shows the sham exception does not apply.

1    meritorious because they do not fall into the pattern of purportedly baseless lawsuits. Mot. 14:23-
2    15:4. The Court need not delve further into the second sham exception given that the lawsuits are
3    meritorious for the reasons discussed with respect to the first sham exception, in particular the expert's
4    opinion and the Attorney General's similar lawsuits.

5    Further, were the Court to look at prior lawsuits, B&G has no response to its admission that
6    Defendants have recovered millions of dollars in the lawsuits at issue and the Court's prior finding
7    that this defeats the sham exception. Mot. 15:5-8. Nor does B&G respond to its concession that
8    Defendants have settled multiple cases and California courts must approve consent judgments. Mot.
9    15:19-23.

10   The only issue Defendants raised that B&G addresses is whether it matters that Defendants
11   have not litigated all the Proposition 65 notices they served. *See* Opp. 10:4-24. Defendants provided
12   three legitimate, non-exclusive reasons why not all Proposition 65 notices proceed to litigation. Mot.
13   15:8-18. B&G argues that two show lack of investigation and does not address the third – whether
14   the volume of products (*i.e.*, the amount of sales) justifies litigation. The uncontestedly legitimate
15   reason alone defeats B&G's inference of bad faith. Nor is there any basis in the pleadings to support
16   B&G's bald assertion that the size of businesses and whether they are subject to a consent decree are
17   always readily ascertainable.

18   The third sham exception involves intentional misrepresentations to the court. *B&G Foods v.*
19   *Embry*, 29 F.4th at 537-38. B&G argues that acrylamide Proposition 65 lawsuits inherently constitute
20   intentional misrepresentations because of the nature of acrylamide. *See* Opp. 10:25-11:8. B&G again
21   ignores that the Attorney General has brought similar acrylamide lawsuits (RJN Exs. K, L), which
22   resolves this contention. Nor does B&G have any answer to Ninth Circuit precedent finding that
23   disputed issues in litigation do not meet the third sham exception. *See* Mot. 15:24-16:4.

24   **III.    THE REMAINING ISSUES ARE READILY RESOLVED**

25   The remaining issues in the motion require little discussion. B&G does not take issue with
26   Defendants' showing on the Anti-Injunction Act (Mot. 1:5-25) except to argue the declaratory
27   judgment claim is brought under § 1983. Opp. 18:20-28. But the cause of action does not cite § 1983.
28

As to *Younger* abstention, B&G is incorrect that abstention is not appropriate because this case includes a damages claim. *See* Opp. 19:19-24. "*Younger* principles apply in an action for damages pursuant to 42 U.S.C. § 1983." *Gilbertson v. Albright*, 381 F.3d 965, 984 (9th Cir. 2004) (en banc). Further, B&G misses that (1) the state cases are ongoing even though they are stayed – they have not been dismissed; (2) the state cases implicate important state interests in health and safety and the asserted defense that they are meritless, if allowed to defeat abstention, would mean that there would almost never be abstention; and (3) that the state cases are stayed does not mean that the state forum is inadequate should the stays be lifted. *Compare* Opp. 19:24-20:6 *with* Mot. 16:26-19:19.

With respect to *Colorado River*, B&G does not undertake an analysis of the factors. *See* Mot. 19:20-20:24. B&G instead relies on the Court's analysis in *California Chamber of Com. v. Becerra*, 2020 WL 5074026, at *4-6 (E.D. Cal. Aug. 27, 2020). Opp. 19:2-18. But that case, which was brought by a large business group against the Attorney General, "addresses the First Amendment challenge to Proposition 65 as enforced against *any* California business using acrylamide, which has the potential to limit or eliminate the need for many enforcement actions against different defendants with discrete products." 2020 WL 5074026, at *5 (emphasis added). This case is between two private parties. The balance of the factors is thus very different.

Finally, as to the scope of the remand order (Mot. 3:22-5:15), B&G argues that there was no limitation on amendment. Opp. 20:10-19. B&G should be estopped from taking this position given its representation to the Supreme Court: "The Ninth Circuit issued a **limited remand** on the basis that Petitioner had not been permitted to amend its complaint to plead allegations around Respondents' 'sham litigation' tactics." RJN Ex. D at p. 7 fn. 3 (emphasis added). B&G has no response. Nor does B&G address that the Ninth Circuit permitted amendment "[b]ecause it is unclear whether B&G could allege the application of a sham exception." *B&G Foods v. Embry*, 29 F.4th at 532. There was no need to specify that no other amendments were allowed beyond that permitted. *Raiser v. City of Los Angeles,* 2014 WL 794786, at *4 (C.D. Cal. Feb. 26, 2014).

IV. **CONCLUSION**

For all of the above reasons, Defendants' motion to dismiss should be granted.

Respectfully submitted,

Dated: September 16, 2022           **NICHOLAS & TOMASEVIC, LLP**

By:   */s/ Jake W. Schulte*
      CRAIG M. NICHOLAS (Bar No. 178444)
      cnicholas@nicholaslaw.org
      SHAUN MARKLEY (Bar No. 291785)
      smarkley@nicholaslaw.org
      JAKE W. SCHULTE (Bar. No. 293777)
      jschulte@nicholaslaw.org
      **NICHOLAS & TOMASEVIC, LLP**
      225 Broadway, 19th Floor
      San Diego, California 92101
      Tel: (619) 325-0492 | Fax: (619) 325-0496

      **GLICK LAW GROUP, P.C.**
      NOAM GLICK (Bar No. 251582)
      noam@glicklawgroup.com
      225 Broadway, 19th Floor
      San Diego, CA 92101
      Tel: (619) 382-3400 | Fax: (619) 615-2193

      Attorneys for Defendants
      KIM EMBRY and ENVIRONMENTAL HEALTH ADVOCATES, INC.