CRAIG M. NICHOLAS (Bar No. 178444)
cnicholas@nicholaslaw.org
SHAUN MARKLEY (Bar No. 291785)
smarkley@nicholaslaw.org
JAKE W. SCHULTE (Bar. No. 293777)
jschulte@nicholaslaw.org
**NICHOLAS & TOMASEVIC, LLP**
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496

NOAM GLICK (Bar No. 251582)
noam@glicklawgroup.com
**GLICK LAW GROUP, P.C.**
225 Broadway, Suite 2100
San Diego, CA 92101
Tel: (619) 382-3400
Fax: (619) 615-2193

Attorneys for Defendants
KIM EMBRY and
ENVIRONMENTAL HEALTH ADVOCATES, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

B&G FOODS NORTH AMERICA, INC.,

Plaintiff,

v.

KIM EMBRY and ENVIRONMENTAL HEALTH ADVOCATES, INC., acting as enforcement representatives under California Proposition 65 on behalf of the State of California,

Defendants.

CASE NO. 2:20-CV-00526-KJM-DB

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SANCTIONS UNDER RULE 11**

**Hearing Date**: March 10, 2023
**Hearing Time**: 10:00 a.m.
**Courtroom**: 3 (15th Floor)

**District Judge**: Hon. Kimberly J. Mueller
**Magistrate Judge**: Hon. Deborah Barnes

**Complaint Filed**: March 6, 2020
**Complaint Dismissed**: October 7, 2020
**Mandate Issued**: May 4, 2022
**FAC Filed**: July 7, 2022
**FAC Dismissed**: November 3, 2022
**SAC Filed**: November 23, 2022
**Trial Date**: None Set

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. RELEVANT BACKGROUND ........ 1

A. Proposition 65 Citizen Suits ........ 1

B. The Court Dismissed B&G's Initial Complaint ........ 2

C. The Ninth Circuit Affirmed but Remanded for Limited Amendment ........ 3

D. The Court Dismissed B&G's First Amended Complaint ........ 3

E. B&G Filed a Second Amended Complaint ........ 4

III. LEGAL STANDARD ........ 5

IV. THE SECOND AMENDED COMPLAINT VIOLATES RULE 11 ........ 6

A. Factual Contentions Contradicted by Other Allegations and Exhibits ........ 6

B. Disputes About Law Presented as Proof of Sham ........ 9

V. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Cases**

*B&G Foods N. Am., Inc. v. Embry*, 143 S. Ct. 212 (2022)........................................................3

*B&G Foods v. Embry*, 29 F.4th 527 (9th Cir. 2022)............................................3, 4, 7, 9, 10, 11, 12

*Cal. Chamber of Commerce v. Becerra,* 529 F.Supp.3d 1099 (E.D. Cal. 2021)..........................2, 11

*Cal. Chamber of Commerce v. Council for Educ. and Rsch. on Toxics,* 29 F.4th 468 (9th Cir. 2022)2, 11

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002)...........................................................5

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)............................................................5

*Council for Educ. and Rsch. on Toxics,* 29 F.4th 468.................................................................10

*Nat-Immonogenics Corp. v. Newport Trial Grp.,* 2020 WL 5239856 (C.D. Cal. Aug. 3, 2020).......12

*Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644 (9th Cir. 1997)..........................................5

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993).........................9, 10

**Statutes**

Cal. Health & Safety Code § 25249.10.......................................................................2, 9

Cal. Health & Safety Code § 25249.6.......................................................................2, 11

Cal. Health & Safety Code § 25249.7.......................................................................2, 3, 7

Cal. Health & Safety Code § 25249.8.......................................................................2, 7, 11

**Other Authorities**

Cal. Code Regs, tit 27, § 25607.2.......................................................................11

Cal. Code Regs, tit 27, § 25703.......................................................................10

Cal. Code Regs, tit 27, §§ 25701-21.......................................................................2

Cal. Code Regs, tit. 27, § 27001.......................................................................2

**Rules**

Fed. R. Civ. P. 11.......................................................................5, 6, 9

## I. INTRODUCTION

Defendants Kim Embry and Environmental Health Advocates, Inc. ("EHA") are faced with yet another iteration of the ill-conceived lawsuit of Plaintiff B&G Foods North America, Inc. ("B&G"), which attacks Defendants' actions to enforce California's Proposition 65. The Court can and should dismiss B&G's Second Amended Complaint for yet again failing to plead properly that Defendants' state court Proposition 65 lawsuits fall within the sham exception to the *Noerr-Pennington* doctrine. This Court has already done so twice and the Ninth Circuit affirmed the first time, only giving B&G a chance to amend – which B&G has since done two times.

In those prior rulings, this Court and the Ninth Circuit set forth the standard for proving the sham exception. B&G has long been on notice of that standard. But rather than admit it cannot meet the settled standard and in the face of this Court's warning that any further pleading must comply with Rule 11 of the Federal Rules of Civil Procedure (ECF 56 at 16:7-10), B&G has resorted to two general tactics that violate Rule 11. First, B&G makes allegations that are contradicted by its own allegations and exhibits. Second, B&G's claims depend on its legal position on how Proposition 65 works and how the First Amendment operates with respect to Proposition 65. Those views are very much contested and – even if they eventually prevail – cannot meet the sham exception for *objective baselessness*.

Accordingly, for all the reasons discussed herein, the Court should find that B&G and/or its attorneys' actions warrant sanctions. Upon such a finding, Defendants respectfully request an opportunity to submit briefing and evidence as to the nature of the sanctions including, but not limited to, recouping attorneys' fees, costs, and expenses as a result of B&G's objectively improper, reckless, and bad-faith conduct.

## II. RELEVANT BACKGROUND

### A. Proposition 65 Citizen Suits

The Safe Drinking Water and Toxic Enforcement Act of 1986, also known as Proposition 65, is a voter-enacted California statute that protects the public's right to know about the potential threats of cancer, birth defects, or other reproductive harm resulting from exposure to hazardous chemicals. Proposition 65 requires businesses to provide a "clear and reasonable warning" on any product that

causes an exposure to "a chemical known to the state to cause cancer or reproductive toxicity." Cal. Health & Safety Code § 25249.6. The Governor must publish and update a "list of those chemicals known to the state to cause cancer or reproductive toxicity." Cal. Health & Safety Code § 25249.8(a). Acrylamide, the chemical at issue in this lawsuit, was listed in 1990.[1] 27 C.C.R. § 27001(c).

Proposition 65 permits any "person" to bring an action "in the public interest" to enforce the initiative. Cal. Health & Safety Code § 25249.7(d). Before bringing an enforcement action, a private party must give 60 days' notice of the alleged Proposition 65 violation to the alleged violator and to the Attorney General and local prosecutors. *Id.* § 25249.7(d)(1). The notice of violation must include a certificate that "there is a reasonable and meritorious case for the private action" and "[f]actual information sufficient to establish the basis of" that certificate. *Id.* If, after reviewing the notice and certificate of merit, the Attorney General "believes there is no merit to the action, the Attorney General shall serve a letter to the noticing party and alleged violator stating" as much. *Id.* § 25249.7(e)(1)(A). If more than 60 days passes without public enforcers pursuing the matter, the private enforcer may commence an action. *Id.* § 25249.7(c), (d).

Proposition 65's warning requirement does not apply if a defendant "can show that the exposure poses no significant risk assuming lifetime exposure at the level in question for substances known to the state to cause cancer." *Id.* § 25249.10 (c). This is called the No Significant Risk Level ("NSRL"). Regulations provide detail on the NSRL affirmative defense. 27 C.C.R. §§ 25701-21.

**B. The Court Dismissed B&G's Initial Complaint**

B&G's original Complaint was brought against Defendants Kim Embry and her attorney Noam Glick with respect to litigation they were pursuing under Proposition 65 as to acrylamide in B&G's Cookie Cakes. ECF 1, ¶¶ 1, 7, 8, 65, 79-80, 87, 94, 97, Prayer. In particular, Ms. Embry had provided a 60-day notice to state authorities and B&G with respect to the Cookie Cakes as required by

---

[1] There is currently an injunction against *new* enforcement actions related to acrylamide in food and beverage products. *See Cal. Chamber of Commerce v. Becerra,* 529 F.Supp.3d 1099, 1123 (E.D. Cal. 2021), *aff'd sub nom., Cal. Chamber of Commerce v. Council for Educ. and Rsch. on Toxics,* 29 F.4th 468, 483 (9th Cir. 2022). Defendants filed their state court actions *before* this Court issued its preliminary injunction in March 2021, which only applies prospectively. *See* SAC, ECF 57, Exhs. E (Embry filed her complaint related to B&G's Cookie Cakes in March 2020), G (EHA filed its complaint related to B&G's Sandwich Cookies in January 2021).

Proposition 65 (Cal. Health & Safety Code § 25249.7(d)(1)) and filed a state court lawsuit. Second Amended Complaint ("SAC"), ¶¶ 62, 68 & Ex. E; Defendants' Request for Judicial Notice in Supp. of Mot. to Dismiss and Motion for Sanctions ("RJN"), Ex. A. On October 7, 2020, the Court dismissed B&G's Complaint without leave to amend, ruling that B&G's claims were aimed at petitioning activity protected under the *Noerr-Pennington* doctrine. ECF 33. The Court found that Defendants' past success in acrylamide litigation showed the sham exception to the doctrine did not apply. *Id.* at 4-5.

**C. The Ninth Circuit Affirmed but Remanded for Limited Amendment**

On March 17, 2022, the Ninth Circuit affirmed the Court's ruling that the Complaint is barred by the *Noerr-Pennington* doctrine but reversed to permit amendment "[b]ecause it was unclear whether B&G could allege the application of the sham exception to the *Noerr-Pennington* doctrine in an amended complaint." *B&G Foods v. Embry*, 29 F.4th 527, 542 (9th Cir. 2022). In the course of the decision, the Ninth Circuit set forth the standard governing the sham exception and found that B&G's original Complaint did not meet that standard. *Id.* at 537-39. Most importantly, the Ninth Circuit addressed the standard for applying the sham exception if a lawsuit is "objectively baseless," finding that doing so required "that no reasonable litigant could realistically expect success on the merits." *Id.* at 538 (internal quotation marks omitted). The Ninth Circuit eventually concluded: "B&G has failed to show that any of the sham exceptions could apply based on the allegations in the complaint." *Id.* at 539.

On April 26, 2022, the Ninth Circuit denied B&G's petition for rehearing en banc. RJN, Ex. I. B&G filed a petition for a writ of certiorari to the Supreme Court of the United States, which was denied on October 3, 2022. *B&G Foods N. Am., Inc. v. Embry*, 143 S. Ct. 212 (2022).

**D. The Court Dismissed B&G's First Amended Complaint**

Meanwhile, on July 7, 2022, B&G filed its First Amended Complaint ("FAC"). ECF 45. Although the Ninth Circuit authorized B&G to file an amendment to allege application of the sham exception to the *Noerr-Pennington* doctrine against Kim Embry and Noam Glick (the original named defendants) and the Proposition 65 lawsuit with respect to Cookie Cakes, B&G, in its amended pleading, removed Mr. Glick and added a new defendant – EHA. *Id.,* ¶¶ 21, 26 n.1. The First Amended Complaint also added a new lawsuit with respect to a new product – B&G's Sandwich

Cookies. *Id.,* ¶¶ 35, 113, 116, 204, 223, 228, Prayer. That product was the subject of a 60-day notice from EHA under Proposition 65 and a state court lawsuit. SAC, ¶¶ 65, 69 & Ex. G; RJN, Ex. B.

On November 3, 2022, this Court again found that B&G's claims were barred by the *Noerr-Pennington* doctrine and dismissed with leave to amend. ECF 56. The Court engaged in a thorough analysis of the sham exception. *Id.* at 6:1-15:24. The end result was that "B&G has not alleged sufficient facts to support" the sham exception. *Id.* at 1:24. This conclusion came after the Ninth Circuit had specifically given B&G an opportunity to amend to try to meet the sham exception, as discussed in the prior section. This Court permitted leave to amend "only with respect to the sham exception to the *Noerr-Pennington* doctrine and only to advance factual allegations to support its claim that the underlying lawsuits are a sham." *Id.* at 16:12-14. The Court added: "The court cautions, however, that any amendments must comply with Rule 11, including the requirement that factual allegations 'have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]' Fed. R. Civ. P. 11(b)(3)." *Id.* at 16:7-10.

**E. B&G Filed a Second Amended Complaint**

Despite the Court's admonition, B&G filed a Second Amended Complaint. ECF 57. That pleading relies heavily on allegations that are contradicted by other allegations and its exhibits. *Compare*, *e.g.*, SAC, ¶¶ 96-97 (alleging attorney's statement that he consulted with an expert was false based on supposed admission in responses to form interrogatories) *with* SAC, Ex. F at 8:21-10:3, 10:22-11:12 (form interrogatories showing no such admission). The Second Amended Complaint also relies on B&G's views about the law surrounding Proposition 65 and the First Amendment as if that shows Defendants' Proposition 65 lawsuits were shams. *E.g.*, SAC, ¶¶ 91-93, 99, 103, 105 (B&G's position on affirmative defenses). As noted above, the Ninth Circuit has ruled that the standard for whether a lawsuit falls within the objectively baseless sham exception is whether there is a realistic expectation of success. *B&G Foods*, 29 F.4th at 538.

Defendants sought and the Court granted an extension of time to file a motion to dismiss to allow time for Defendants to pre-serve a motion for sanctions under Rule 11 and for the 21-day safe harbor to pass. ECF 59, 61. Subsequently, the Court reset the motion to dismiss and Rule 11 hearing

to March 10, 2023. ECF 64.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 11 sets forth four categories of sanctionable conduct. F.R.C.P. 11(b)(1)-(4). Two are at issue here. First, "factual contentions [must] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." F.R.C.P. 11(b)(3). Second, "claims, defenses, and other legal contentions [must be] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." F.R.C.P. 11(b)(2).

The Supreme Court has found that "the central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The Ninth Circuit has ruled:

> Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it.

*Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotation marks omitted). Rule 11 "sanctions should be reserved for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (internal quotation marks omitted).

"A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." F.R.C.P. 11(c)(2). Prior to filing, the motion must be served and "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* Upon a finding of a violation of Rule 11, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." F.R.C.P. 11(c)(1). Sanctions are "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." F.R.C.P. 11(c)(4).

///

## IV. THE SECOND AMENDED COMPLAINT VIOLATES RULE 11

The Court should find B&G's Second Amended Complaint violates Rule 11 based on both its factual and legal contentions.

### A. Factual Contentions Contradicted by Other Allegations and Exhibits

Rule 11 requires that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." F.R.C.P. 11(b)(3). The Second Amended Complaint, however, contains factual allegations that cannot meet this standard because they are contradicted by the exhibits B&G attaches and B&G's own allegations. Given that the baselessness of the allegations is demonstrated by B&G's own submissions, the inquiry into the pleading cannot have been reasonable and competent.

First, B&G pleads that attorney Noam Glick's statement that he consulted with an expert to reach the belief there was a meritorious Proposition 65 case was false. SAC, ¶¶ 96-97. B&G's entire basis for this allegation is Defendant EHA's response to form interrogatories. SAC, ¶ 97. B&G states:

> This statement was false, as EHA admitted that it had not obtained a written statement or interviewed any person about its claims, and that no person—including any expert—had prepared a report pertaining to its claims. EHA stated that, at least as of March 23, 2021, no report had been made concerning the subject matter of this case. Ex. F, EHA Resp. Form Int. No. 12.6.

*Id.* This allegation is demonstrably false. The responses to which the Second Amended Complaint refer and attach *object* to the extent the form interrogatories inquire into *expert* communications and only respond *subject* to that objection. SAC, Ex. F at 8:21-10:3, 10:22-11:12. For instance, Form Interrogatory 12.6 asks: "Was a report made by any PERSON concerning the INCIDENT?" *Id.* at 10:22-23. The response includes the following: "Plaintiff objects to the extent that this request calls for attorney-client communications and/or attorney work product. Moreover, Plaintiff further objects to the extent that it calls for expert opinion, and/or the premature disclosure of experts in violation of Cal. Code of Civ. Proc. § 2034.010 *et seq.*" *Id.* at 11:6-9. Because the exhibit on which B&G solely relies shows there was no falsehood, there is no basis for the allegation.

Second, B&G pleads that "Defendants misrepresented to the Court . . . that they filed valid certificates of merit prior to bringing suit." SAC, ¶ 124; *see also* SAC, ¶¶ 127, 137-39. But B&G

concedes that Defendant Embry provided a certificate of merit on April 22, 2019, and did not sue until March 6, 2020. SAC, ¶¶ 68, 89. Likewise, B&G concedes that Defendant EHA provided a certificate of merit on October 8, 2020, and did not sue until January 22, 2021. SAC, ¶¶ 68, 95. B&G's claim that those certificates of merit were invalid appears to rely on later, amended notices of violation that contained additional information. SAC, ¶¶ 127, 133-34. But the inclusion of additional information does not mean that Defendants failed to provide proper certificates of merit prior to filing suit. This is particularly true given the following provision of Proposition 65:

> If, after reviewing the factual information sufficient to establish the basis for the certificate of merit and meeting and conferring with the noticing party regarding the basis for the certificate of merit, the Attorney General believes there is no merit to the action, the Attorney General *shall* serve a letter to the noticing party and the alleged violator stating the Attorney General believes there is no merit to the action.

Cal. Health & Safety Code § 25249.7(e)(1)(A) (emphasis added). *B&G concedes the Attorney General did not object* to the notices of violation (which contain the certificates of merit, Cal. Health & Safety Code § 25249.7(d)(1)). SAC, ¶¶ 63, 66. There is no basis to allege the original certificates of merit were invalid.

Third, B&G pleads "Defendants misrepresented to the Court that acrylamide is 'known' to the State to cause cancer." SAC, ¶ 124. But B&G concedes there is acrylamide in the products at issue. SAC, ¶ 9. B&G also agrees that acrylamide is listed under Proposition 65 as a carcinogen. SAC, ¶¶ 221-22. In so pleading, B&G specifically cites California Health & Safety Code § 25249.8(a), which provides that "the Governor shall cause to be published a list of those chemicals known to the state to cause cancer." The sum of the matter is, as the Ninth Circuit found: "It is undisputed that B&G's Cookie Cakes contain some amount of acrylamide, that acrylamide is on the list of chemicals 'known to the state to cause cancer,' and that B&G does not provide a warning." *B&G Foods*, 29 F.4th at 538. There was no false statement based on B&G's concessions.

Fourth, B&G makes a "spoliation" claim that includes the following allegation about a laboratory that conducted tests of B&G's products:

> IEH stated that it had destroyed the samples at Ms. Embry's instruction on or about 30 days after it tested the sample—approximately May 4, 2019, after Plaintiff initiated the litigation by filing her April 19, 2019, Notice of Violation. Ex. J, Decl. of David Kwasniewski

> in support of mot. for terminating sanctions (April 30, 2021), Exhibit 4, Case No. RG20057491.

SAC, ¶ 80. But the exhibit on which this allegation is based contains no such statement. ECF 57-10, Ex. 4. Moreover, B&G's attorneys are in possession of evidence in another case showing that it is *IEH's policy* to destroy samples and have so alleged. RJN, Ex. M at 4:4-6. B&G's attempt to find fault elsewhere has no basis.

Fifth, B&G alleges "acrylamide is caused by cooking, which would provide Plaintiff with an affirmative defense to this action." SAC, ¶ 91 (citing 27 C.C.R. § 25703(b)(1)). B&G then pleads that Defendant Embry "admitted in discovery that the acrylamide in cookies is the result of cooking," which means Defendant "Embry and her attorneys were aware that Plaintiff had *an affirmative defense that would defeat the action*." SAC, ¶¶ 92-93 (emphasis added). Similarly, B&G pleads that Defendant EHA's expert "acknowledged that acrylamide is the result of cooking—and therefore that Plaintiff had *an affirmative defense that would defeat the action*." SAC, ¶ 99 (emphasis added). B&G concludes that Defendants' attorney Noam Glick therefore made false statements in the certificates of merit submitted with the notices of violation under Proposition 65 in claiming that his pre-lawsuit investigation did not prove any affirmative defenses. SAC, ¶¶ 94, 100. B&G also concludes that Defendants failed to conduct an adequate pre-lawsuit investigation for the same reason. SAC, ¶ 103. In other words, B&G relies on allegations that Defendants conceded there is a *successful* affirmative defense to their Proposition 65 lawsuits because acrylamide is caused by cooking.

But B&G refers in the Second Amended Complaint to "the *alternative NSRL* that would be required by Cal. Code Regs. § 25703(b)(1)." SAC, ¶ 123 (emphasis added). That is, B&G concedes that the cooking regulation sets forth an alternative No Significant Risk Level and does *not automatically exempt* products from Proposition 65.

Although that is enough to show B&G's allegations have no basis, B&G has previously admitted in its First Amended Complaint: "No one who makes or sells baked goods could ever be sure whether the exemption applies to their products" and "the cooking exemption is also vague on its face and subject to a multitude of differing interpretations." ECF 45, ¶¶ 73-74. B&G deleted these allegations in the Second Amended Complaint. But B&G's prior admission that the import of the

regulation is subject to interpretation further shows that the factual contention that the cooking regulation would defeat the Proposition 65 lawsuits is devoid of support.

**B. Disputes About Law Presented as Proof of Sham**

The Second Amended Complaint attempts to craft its allegations to avoid application of the *Noerr-Pennington* doctrine and in particular to fit within the sham exception to the doctrine. Although B&G cannot survive a motion to dismiss on any of its allegations or legal theories, Defendants focus here on the most egregious allegations given the standard under Rule 11.

One situation where the sham exception can apply is if "the lawsuit is objectively baseless." *B&G Foods*, 29 F.4th at 537 (internal quotation marks omitted). This Court has previously found (in accord with the Ninth Circuit and the Supreme Court): "A lawsuit is objectively baseless when 'no reasonable litigant could realistically expect success on the merits.'" ECF 56 at 8:19-20 (quoting *B&G Foods*, 29 F.4th at 538); *see also, Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) (examining objective baselessness with reference to Rule 11 standard).

Despite this standard, B&G repeatedly relies on its view of the law as if that decides the Proposition 65 lawsuits are shams. That is, B&G assumes that if it is right about legal issues notwithstanding a contrary argument, the *Noerr-Pennington* doctrine does not apply due to the sham exception. This violates Rule 11's requirement that "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." F.R.C.P. 11(b)(2). In particular, B&G's allegations are irreconcilable with the well-accepted standard for the objective baselessness sham exception. B&G has long been on notice of that standard. *B&G Foods*, 29 F.4th at 538; ECF 56 at 8:19-20. The failure to abide by it was not reasonable and competent.

First, B&G pleads that Defendants' Proposition 65 lawsuits were shams because the products did not exceed the No Significant Risk Level. SAC, ¶¶ 103, 105. Were the products at issue under the NSRL, B&G would have an affirmative defense under Proposition 65. *See B&G Foods*, 29 F.4th at 533; Cal. Health & Safety Code § 25249.10(c). But an expert has opined that the products contain acrylamide in amounts that exceed the NSRL. *See* RJN Exs. C, D. In the view of the expert, based on laboratory test results showing acrylamide content of more than 600 parts per billion, "consuming

a single serving of the product[s]" results in ingesting more than 50 times (for the Cookie Cakes) or 145 times (for the Sandwich Cookies) the NSRL. RJN Exs. C, D. B&G has a different view of how to calculate the NSRL and what tests to use. SAC, ¶¶ 113-15. "Proving the acrylamide level is lower than the No Significant Risk Level requires expensive testing and costly expert testimony if the case proceeds to trial." *Council for Educ. and Rsch. on Toxics,* 29 F.4th 468 at 480. Even if B&G ultimately prevails on this affirmative defense, that does not mean "'no reasonable litigant could realistically expect success on the merits.'" *B&G Foods*, 29 F.4th at 538 (quoting *Pro. Real Est. Invs.*, 508 U.S. at 65). Given the expert's opinion that the NSRL is exceeded, there is no way to show the lawsuits are shams.

Second, as discussed in the prior section, B&G alleges that the cooking regulation provides an affirmative defense that defeats the Proposition 65 lawsuits. SAC, ¶¶ 91-93, 99. But the cooking regulation actually states:

> For chemicals assessed in accordance with this section, the risk level which represents no significant risk shall be one which is calculated to result in one excess case of cancer in an exposed population of 100,000, assuming lifetime exposure at the level in question, except where sound considerations of public health support *an alternative level*, as, for example: (1) where chemicals in food are produced by cooking necessary to render the food palatable or to avoid microbiological contamination.

27 C.C.R. § 25703(b) (emphasis added). In other words, the regulation provides that cooking under certain circumstances could result in a different level – a level that would be the subject of litigation in an appropriate Proposition 65 lawsuit. There is no blanket exemption for chemicals caused by cooking, just a question about whether the No Significant Risk Level should be modified. Indeed, the California Attorney General has brought at least two acrylamide Proposition 65 cases with respect to snack foods. RJN Exs. G, H. B&G may argue for a different interpretation and may argue for a lower NSRL, but these are questions that the state court would need to resolve. There is no valid argument that the cooking regulation shows the Proposition 65 lawsuits are shams given that the standard for objective baselessness requires demonstrating no reasonable litigant could realistically expect success. ECF 56 at 8:19-20; *B&G Foods*, 29 F.4th at 538.

Third, B&G pleads that the Proposition 65 lawsuits are shams because Defendants know the products at issue do not cause cancer. SAC, ¶ 146. This allegation cannot show the lawsuits are

shams. As this Court stated, "Proposition 65 enforcers do not need to independently determine whether a listed chemical causes cancer." ECF 56 at 9:11-12. There is no ground to argue to the contrary as the basis of Proposition 65 is that "the Governor shall cause to be published a list of those chemicals known to the state to cause cancer." Cal. Health & Safety Code § 25249.8(a). Thereafter: "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10." Cal. Health & Safety Code § 25249.6. The Ninth Circuit's conclusion is dispositive: "It is undisputed . . . that acrylamide is on the list of chemicals 'known to the state to cause cancer.'" *B&G Foods*, 29 F.4th at 538. Even were there some possible argument to get around all of this, there is still no basis to argue that B&G's view of what Proposition 65 requires renders Defendants' lawsuits shams given the support for Defendants' position.

Fourth, B&G also ignores the standard for objective baselessness in pleading that the Proposition 65 lawsuits are shams based on the defense that they would require unconstitutional forced speech. SAC, ¶¶ 189-214. Defendants filed their Proposition 65 lawsuits *before* this Court's and the Ninth Circuit's rulings on the preliminary injunction involving acrylamide and Proposition 65 – let alone before a final ruling. SAC, Exs. E (Complaint filed March 6, 2020), G (Complaint filed January 22, 2021); *California Chamber of Commerce v. Becerra*, 529 F. Supp. 3d 1099 (E.D. Cal. 2021) (preliminary injunction ruling of March 30, 2021), *aff'd sub nom. California Chamber of Commerce v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022). Defendants were not required to predict that this Court would rule the way it did, particularly given that the Attorney General took the opposite position. Further, *at Defendants'* request, the Proposition 65 lawsuits have been stayed. SAC, Ex. I. There is thus no basis to claim that Defendants improperly pushed forward in light of the preliminary injunction. Moreover, a new regulation (Cal. Code Regs, tit 27, § 25607.2(b)) has been designed in part to avoid First Amendment concerns with using the general Proposition 65 warning for acrylamide. RJN, Ex. J at 9. Accordingly, even if the current preliminary injunction is made permanent, that is not the end of the story as to Proposition 65 acrylamide litigation. The contested nature of the constitutional issue demonstrates that even if the Proposition 65 lawsuits in the end cannot

move forward because of a First Amendment defense, the lawsuits were not shams. Again, B&G cannot get around the standard that requires showing no reasonable litigant could realistically expect success. ECF 56 at 8:19-20; *B&G Foods*, 29 F.4th at 538.

## V. CONCLUSION

For all of the above reasons, the motion should be granted. Defendants respectfully request the Court find that B&G has violated Rule 11. Upon such a finding, Defendants request an opportunity to brief and submit evidence on the appropriate scope of sanctions. *See, e.g., Nat-Immonogenics Corp. v. Newport Trial Grp.,* 2020 WL 5239856, at *10 (C.D. Cal. Aug. 3, 2020) (granting motion for sanctions and affording movants "20 days" to "file a motion and affidavit supporting their reasonable expenses and fees incurred" on account of respondents' sanctionable conduct).

Respectfully submitted,

Dated: February 9, 2023

**NICHOLAS & TOMASEVIC, LLP**

By: */s/ Jake W. Schulte*

CRAIG M. NICHOLAS (Bar No. 178444)
cnicholas@nicholaslaw.org
SHAUN MARKLEY (Bar No. 291785)
smarkley@nicholaslaw.org
JAKE W. SCHULTE (Bar. No. 293777)
jschulte@nicholaslaw.org
**NICHOLAS & TOMASEVIC, LLP**
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

NOAM GLICK (Bar No. 251582)
noam@glicklawgroup.com
**GLICK LAW GROUP, P.C.**
225 Broadway, Suite 2100
San Diego, CA 92101
Tel: (619) 382-3400 | Fax: (619) 615-2193

Attorneys for Defendants
KIM EMBRY and ENVIRONMENTAL HEALTH ADVOCATES, INC.