J. Noah Hagey, Esq. (SBN: 262331)
   hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
   borden@braunhagey.com
Forrest Hainline, Esq. (SBN: 64166)
   hainline@braunhagey.com
David H. Kwasniewski, Esq. (SBN: 281985)
   kwasniewski@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFF
B&G FOODS NORTH AMERICA, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&G FOOD NORTH AMERICA, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>KIM EMBRY and ENVIRONMENTAL HEALTH ADVOCATES, INC., acting as enforcement representatives under California Proposition 65 on behalf of the State of California,<br><br>        Defendants. | **Case No. 2:20-cv-00526-KJM-DB**<br><br>**PLAINTIFF B&G FOODS'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS AND REQUEST FOR SANCTIONS AGAINST DEFENDANTS**<br><br>Date:          March 10, 2023<br>Time:          10:00 a.m<br>Judge:         Hon. Kimberly J. Mueller<br>Courtroom:   3<br><br>SAC Filed:    November 23, 2022<br>Trial Date:    None Set |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... 1

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 3

    A.    Nature of the Action ............................................................................... 3

    B.    Procedural History ................................................................................. 5

    C.    Defendants' Motion for Sanctions ......................................................... 6

ARGUMENT ..................................................................................................................... 7

I.    DEFENDANTS' MOTION VIOLATES RULE 11 ......................................... 8

    A.    No Reasonable Attorney Could Believe that Defendants Could Prevail on Their Motion.................................................................................................. 8

        1.    Defendants' Spoliation Satisfies the Sham Litigation Exception............... 9

        2.    Defendants Fail to Meaningfully Address Many Other Reasons Why Their Lawsuits Are Shams ................................................................................. 11

        3.    Defendants Fail to Show They Actually Submitted Proper Certificates of Merit16

    B.    Defendants' Motion for Sanctions Was Filed for an Improper Purpose .............. 18

II.    DEFENDANTS SHOULD BE REQUIRED TO PAY B&G FOODS' REASONABLE ATTORNEY'S FEES AND COSTS FOR OPPOSING THIS MOTION ....................................................................................... 19

    A.    Counsel's Hourly Rates ........................................................................ 19

    B.    The Hours Spent Are Reasonable ......................................................... 20

CONCLUSION................................................................................................................. 21

PLAINTIFF B&G FOODS'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

Plaintiff B&G Foods North America, Inc. ("B&G Foods") respectfully submits this Opposition to Defendants Motion for Sanctions (Dkt. 68).

## INTRODUCTION

Defendants' motion for sanctions violates all three prongs of Rule 11: (1) no reasonable attorney could believe that it has any possibility of success; (2) it is unsupported by any evidence; and (3) it is presented for the improper purpose of trying to resolve contested fact questions in Defendants' favor at the pleading stage. The Court should deny Defendants' motion and award B&G Foods its attorney's fees and costs for having to oppose it. This amounts to $64,000 to date. (Declaration of Matthew Borden ("Borden Decl.") ¶¶ 22-35.)

In their heavy-handed attempt to silence B&G Foods' advocacy, Defendants ironically claim that they are engaged in "petitioning activity." (Mot. at 1.) But unlike B&G Foods' First Amendment right against being compelled to put false speech on its labels—which both this Court and the Ninth Circuit have vindicated in published opinions—Defendants' lawsuits are built on a shambles of spoliated evidence, misleading certifications and clients who testify they know "nothing" about their own claims. As shown in redline (Borden Decl., Ex. 1), in response to the Court's dismissal of the prior complaint, B&G Foods added numerous pages worth of facts and hundreds of pages of supporting documentation, including Defendants' sworn discovery responses and deposition testimony. These facts demonstrate that B&G Foods's sham litigation allegations are meritorious—and go far beyond the good faith belief necessary to make an allegation in a pleading. No reasonable lawyer could believe otherwise.

The Second Amended Complaint ("SAC") meets the sham litigation exception for at least six separate and independent reasons. (SAC ¶¶ 2-3, 70.) To meet their burden under Rule 11, Defendants would have to prove that no reasonable attorney would believe that any one of these six reasons had any possibility of prevailing. *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F. 2d 1531, 1541 (9th Cir. 1986) (party seeking sanctions must show that entire pleading is baseless). Just the opposite is true. Defendants admit that they spoliated the evidence on which they base their state court lawsuits. This is because they obtained and sent product samples to a laboratory they knew would destroy the samples after testing them. (Mot. at 8.) This conduct

constitutes spoliation as a matter of law. *William v. Russ*, 167 Cal. App. 4th 1215, 1225 (2008), and the Ninth Circuit has held that spoliation of evidence makes a lawsuit a sham and thus not subject to *Noerr-Pennington* immunity. *Kearney v. Foley & Lardner*, *LLP*, 590 F.3d 638, 647 (9th Cir. 2009). This fact, alone, renders Defendants' motion frivolous.

Defendants' motion separately has no possibility of success because it does not address all the reasons B&G Foods alleges that Defendants' state court lawsuits are shams. These reasons include that Defendants failed to conduct an adequate pre-suit investigation, made false statements in their complaints, know that the accused cookies do not cause cancer, filed the lawsuits as part of a pattern of sham litigation, and knowingly filed unconstitutional lawsuits.

The bulk of Defendants' motion addresses only one of these reasons, namely, the allegation that Defendants' certificates of merit are defective. As shown in the myriad of documents attached to the SAC, B&G Foods has more than a good faith basis for alleging that Defendants' certificates were improper: their state-court discovery responses expressly deny that Defendants consulted an expert *before* filing their certificates of merit, as Prop 65 requires. After the Ninth Circuit noted that Defendants' inadequate pre-suit investigation would satisfy the sham litigation rule, *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 541 (9th Cir. 2022) Defendants reversed field and claimed, without any competent supporting evidence, that those expert reports had been prepared and provided to the Attorney General.. In the SAC, B&G Foods cites those reports, contrasts them with Defendants' discovery responses denying their existence, and alleges that a reasonable inference is that the expert reports were generated *after* this suit was filed to avoid liability.

Before Defendants filed their Motion, B&G Foods asked Defendants to provide evidence, such as confirmatory emails and/or metadata proving that the expert reports existed before the certificates of merit were filed. Defendants refused to do so. Thus, even if this were the only basis for alleging sham litigation, such allegations are proper because B&G Foods investigated and substantiated them, and a reasonable trier of fact could find in its favor in light of Defendants' sworn testimony and failure to provide any evidence.

This motion never should have been filed. It contains no evidence supporting Defendants' factual allegations, and Defendants refused to provide any in advance of filing it. (Borden Decl.

Ex. 2.) Yet they now ask the Court to make factual determinations in their favor at the pleading stage. This only underscores that the motion was brought for the improper purpose of trying to chill and intimidate B&G Foods into withdrawing meritorious claims before discovery.

## BACKGROUND

This First Amendment case was initiated after considerable deliberation and research by experienced trial counsel long barred in California. BraunHagey & Borden LLP is a leading litigation and corporate boutique with almost 50 attorneys in San Francisco and New York. (Borden Decl. ¶¶ __.) It also boasts an Impact Practice that works alongside civil rights organizations to help protect the rights of underserved groups including the elderly, independent media members, inmates, and reproductive rights. *See* https://www.braunhagey.com/impact.

### A. Nature of the Action

B&G Foods previously made cookies that it sold under the Snackwells® line. The cookies, like every other baked good, french fries, coffee, nuts, legumes, olives, and countless other safe and healthy foods, contain trace amounts of acrylamide. There is no reliable, scientific evidence that acrylamide in food poses any risk of harm; homo sapiens have literally been eating it since they learned to cook with fire.

California's Prop 65 is ostensibly an environmental statute. It provides that if a product contains over a specified amount of a chemical identified as a carcinogen by the State, the product must bear a cancer warning. The State enforces the statute by enabling private enforcers to bring enforcement actions, after following a number of procedural requirements that include providing a pre-suit Certificate of Merit to the Attorney General. Through this scheme, Prop 65 has eliminated some unnecessary exposures to harmful substances by companies that opt to change their processes instead of adding the cancer warning. One example is lead in glass. It used to be ubiquitous. Virtually nobody in California adds lead to glass now.

Unfortunately, the statute has also been misused by lawyers, who take advantage of their status as privateers, and use the power of the State to plunder businesses, small and large, for their own benefit. Pleased with the bounty such cases bring, the State does little to curtail these abuses and uses this enforcement scheme to place unconstitutional regulations on businesses that punish

consumers and confuse the public, while at the same time, generate revenue for itself. The wave of acrylamide cases is a prime example. Because these suits are unconstitutional, this Court has enjoined any future filings of Prop 65 acrylamide lawsuits. *Cal. Chamber of Commerce v. Becerra*, 529 F. Supp. 3d 1099 (E.D. Cal. 2021), *aff'd* 29 F.4th 468 (9th Cir. 2022) (*"Calchamber"*).

Even among litigants bringing Prop 65 acrylamide lawsuits, Defendants stand out. They were, and still remain, the most prolific filers. Their business model is also unique in several other respects. Unlike other Prop 65 plaintiffs, Defendants only prosecute or settle a small percentage of the claims they file, and abandon most of their claims. (SAC ¶¶ 160–88.)[1] Defendants settlements are also unique. They involve small, "nuisance value" payments. Also uniquely, Defendants allow businesses to continue to sell products without Prop 65 warnings even when the products contain many times more acrylamide than would ordinarily be allowed under Prop 65.[2] Defendants' practices have drawn repeated, formal admonishments from the Attorney General. (AG Letter re: private settlement against public interest (April 13, 2017), *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/prop65/letter-glick-nicholas.pdf ("In the Settlement, Lambro, which does not appear to be represented by counsel, agrees to pay you and your client $14,900 and $100, respectively, in exchange for Embry not filing a lawsuit or discussing publicly the claims or the settlement. Lambro does not agree to take any corrective action to remedy the alleged Proposition 65 violation."); AG Letter re: unlawful private settlement (March 2, 2018), *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/prop65/letter-unlawful-private-settlement-

---

[1] All of Defendants Prop 65 claims, lawsuits, and settlements may be found on the Attorney General's website by running searches for the Defendants' names. https://oag.ca.gov/prop65/60-day-notice-search. *See also B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 542 (9th Cir. 2022) (noting Defendant Embry's high volume of Prop 65 filings compared to the very few settlements she entered).

[2] For example, Defendant Embry has entered into consent judgments requiring warnings on products containing more than 10 parts per billion of acrylamide (Borden Decl. Ex. 3 [Western Bagel Consent Judgment].), yet has also testified that it is safe to consume products containing up to 285 parts per billion (*Id.* Ex. 4 [Embry Deposition Transcript].) and signed other consent judgments allowing acrylamide levels of 350 parts per billion (*id.* Ex. 5 [Elevation Brands Consent Judgment].) Likewise, Defendant EHA has stated that it is not safe for consumers to eat foods containing more than 280 parts per billion of acrylamide (*id.* Ex. 6 [EHA Discovery Response]) but also entered into consent judgments allowing products to be sold with up to 390 parts per billion. *id.* Ex. 7 [Desserts on Us Consent Judgment].)

030218.pdf (settlement's injunctive relief would be "illusory, and not likely to result in any benefit to the public"); AG Letter re Lead in Dark Chocolate Notices (February 1, 2021) *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/prop65/letter-chocolate-020121.pdf (claims brought by Defendant EHA were barred by consent judgment entered three years earlier). The Attorney General has only issued 36 such admonishments in the 37-year history of Proposition 65.[3]

On April 22, 2019, and October 8, 2020, Defendants sent Notices of Violation (NOV) to B&G Foods, which is a statutory precursor to initiating suit. B&G Foods then conducted its own testing and investigation and found that there was no Prop 65 violation for many reasons. The trace amount of acrylamide in the cookies is naturally formed during baking. And the amount of acrylamide in the cookies is so small that even if consumers ate the cookies every day, they would not be exposed to acrylamide in an amount exceeding the statutory safe harbor threshold of 0.2 micrograms per day. B&G Foods informed Defendants, but they filed suit anyway.

Faced with either (1) paying Defendants to settle their meritless claims or (2) putting a false cancer warning on its cookies, B&G Foods hired counsel with decades of combined experience litigating the ins and outs of Prop 65, and which has litigated First Amendment issues across the country to protect the rights of individuals, journalists, political dissidents, and businesses, (Borden Decl. ¶ 22) to protect B&G Foods' First Amendment right against government compelled speech.

**B.      Procedural History**

B&G Foods initiated this action on March 6, 2020. On November 7, 2020, the Court dismissed the Complaint. The Court assumed Defendants were state actors and thus potentially liable under § 1983, but held Defendants were immune from liability under the *Noerr-Pennington* doctrine, and dismissed with prejudice. The Ninth Circuit reversed and remanded with instructions to allow B&G Foods leave to amend. *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 541 (9th Cir. 2022).

---

[3] All the Attorney General's letters regarding Proposition 65 may be found here: https://oag.ca.gov/prop65/ag-letters. Of the 47 total letters, 11 are general pronouncements regarding the Attorney General's views on matters of policy, rule changes, or interpretations of various regulations; the remaining three dozen letters are admonishments to Prop 65 plaintiffs intended to discourage them from prosecuting meritless claims or entering into settlements that harm the public.

Following the Ninth Circuit's ruling, B&G Foods filed its First Amended Complaint. On November 2, 2022, the Court dismissed this complaint, but granted leave for B&G Foods to amend to "add factual allegations that make it plausible the defendants' Proposition 65 litigation is a sham . . . For example, it could allege the defendants did not file the certificate of merit required by Proposition 65, or that the certificate filed contains falsehoods." (Dkt. 56.)

Consistent with the Court's guidance, on November 23, 2022, B&G Foods filed the SAC. The SAC contains over 200 paragraphs, supported by evidence, and details at least six reasons why Defendants' lawsuits are shams. As detailed in a redline reflecting those amendments, among other things, the SAC provides additional, detailed allegations showing that Defendants spoliated crucial evidence in their state court lawsuits and also did not submit proper Certificates of Merit before filing their suits, as Proposition 65 regulations require. (Borden Decl., Ex. 1.)

## C. Defendants' Motion for Sanctions

On January 13, 2023, Defendants served their Motion for Sanctions.[4] After reviewing the motion, B&G Foods requested that Defendants substantiate the factual claims made in their motion. Specifically, B&G Foods explained that, based on the discovery and information it had obtained through its investigation, it did not appear Defendants had timely submitted proper certificates of merit or that Defendants made any effort to preserve evidence. (Borden Decl., Ex. 2.) B&G Foods requested that, if Defendants had any evidence to the contrary—such as contemporaneous correspondence with the Attorney General or their expert, or correspondence with their laboratory requesting that evidence be preserved—that Defendants provide such evidence so B&G Foods could evaluate whether to amend its SAC. (*Id.*)

The parties met and conferred regarding these requests on February 3, 2023. During that call, Defendants admitted that they did not know whether they had any records of what they submitted to the Attorney General, did not know if there had been any other correspondence with the Attorney General regarding their lawsuits against B&G Foods, and did not know how testing

---

[4] Defendants originally attempted to serve their Motion for Sanctions on December 23, 2022. This service was ineffective, however, because their deadline to file their motion was just 21 days later. After unsuccessfully moving the Court for an extension of time to file their motion (Dkt. 64), Defendants re-served their motion and stipulated to a briefing schedule with B&G Foods (Dkt. 65.)

1  of the products on which they file suit is typically ordered or whether a request to preserve

2  evidence was made. (Borden Decl., Ex. 8.)

3        On February 7, 2023, Defendants produced two one-page printouts of a website that

4  purported to show that they submitted Notices of Violation to the Attorney General in connection

5  with their lawsuits against B&G Foods. The printouts did not identify what was submitted to the

6  Attorney General. Defendants stated they could not find any other correspondence with the

7  Attorney General regarding their lawsuits against B&G Foods and did not produce any other

8  documents or information. (Borden Decl. Ex. 8) After receiving Defendants' production, B&G

9  Foods again requested that Defendants produce any evidence relating to the issues identified in its

10 prior requests. Defendants did not respond. (Borden Decl. ¶ 10; Ex. 8.) In meeting and conferring

11 with Defendants, B&G Foods also asked them to provide evidence that they had tried to preserve

12 the evidence that their labs destroyed. (Borden Decl. Exs. 2, 9.) Defendants lawyer claimed not to

13 know how that process worked. (*Id.*) Defendants refused to produce any other documentation, and

14 on February 9, 2023, Defendants filed this motion. (Dkt. 68.)

15                                  **ARGUMENT**

16       Rule 11 is violated when a pleading has no basis in law or fact, or is brought for an

17 improper purpose. Fed. R. Civ. P. 11(c). The standard is objective. A court must consider (1)

18 whether a pleading is "legally or factually 'baseless' from an objective perspective," and (2)

19 whether counsel conducted "'a reasonable and competent inquiry' before signing and filing it."

20 *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quoting *Buster v. Greisen*, 104 F.3d

21 1186, 1190 (9th Cir. 1997)). The Court may only find a complaint is "frivolous" and in violation of

22 Rule 11 if it is "'*both* baseless *and* made without a reasonable and competent inquiry.'" *Amaro v.

23 Bee Sweet Citrus, Inc.*, Case No. 1:21-cv-00382-JLT-HBK, 2022 WL 3908309 *2 (E.D. Cal. Aug.

24 30, 2022) (quoting *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) "Rule 11 must not be

25 construed so as to conflict with the primary duty of an attorney to represent his or her client

26 zealously." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).

27       "[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and

28 can lead to sanctions." Fed. R. Civ. P. 11, Adv. Comm. Notes to 1993 Amendment. Courts may

award reasonable expenses, including attorney fees, incurred in "opposing the motion." Fed. R. Civ. P. 11, Adv. Comm. Notes to 1993 Amendment. "A party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions." *Patelco*, 262 F.3d 897, 913 (9th Cir. 2001).

## I.   DEFENDANTS' MOTION VIOLATES RULE 11

Defendants' motion to sanction B&G Foods for asserting its First Amendment rights violates Rule 11 for at least two reasons: (1) no reasonable attorney could believe that Defendants could prevail on their motion, and (2) it was brought for an improper purpose. For both these separate and independent reasons, the Court should deny Defendants' motion and sanction them pursuant to Rule 11(c).

### A.   No Reasonable Attorney Could Believe that Defendants Could Prevail on Their Motion

The movant bears the burden of proof on a Rule 11 motion. *Griffin v. Price*, Case No. 1:21-cv-01507-DAD-SAB-HC, 2022 WL 718742, at *1 (E.D. Cal. March 10, 2022) (citing *Tom Growney Equip. v. Shelley Irr. Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987). To prevail, it must prove that the entire complaint that it seeks to sanction is frivolous. *Golden Eagle*, 801 F. 2d 1531 at 1540 (Rule 11 only permits imposition of sanctions "when the 'pleading, motion, or other paper' itself is frivolous, not when one of the arguments in support of a pleading or motion is frivolous'").

The seminal case regarding when a complaint violates Rule 11 is *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990) (*en banc*). In that case, the Ninth Circuit held that "if there is a colorable claim to a particular type of relief on a given set of facts and the signer relies on an unsupportable legal theory to bolster his claim when a supportable one exists as well, the signer cannot be sanctioned under Rule 11." *Id.* at 1363. The Ninth Circuit explained that in assessing whether a complaint is frivolous, courts must assess "the knowledge that reasonably could have been acquired at the time the pleading was filed"; "the type of claim and the difficulty of acquiring sufficient information"; "which party has access to the relevant facts"; and "the significance of the [allegedly frivolous claim or allegation] in the pleading as a whole." *Id.* at 1364 (citing *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986)) (internal quotation marks omitted)).

PLAINTIFF B&G FOODS'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

The Ninth Circuit cautioned that that "complaints are not filed for an improper purpose if they are non-frivolous" because a complaint "is the vehicle through which [a plaintiff] enforces his substantive legal rights" and it would be "counterproductive . . . to penalize the assertion of non-frivolous substantive claims." *Townsend*, 929 F.2d at 1362; *see also In re Keegan Mgmt. Co. Secs. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) (where "evidence was enough to render complaint nonfrivolous," sanction could not issue even if allegations were untrue or unsupported at the time of filing); *Sussman v. Bank of Israel*, 56 F.3d 450, 458 (2d Cir. 1995) ("[S]pecial care must be taken to avoid penalizing the filing of a nonfrivolous complaint, for otherwise a plaintiff who has a valid claim may lose his right 'to vindicate his rights in court' " (quoting *Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Fed. of Fed. Emps.*, 844 F.2d 216, 224 (5th Cir. 1988))). Defendants do not discuss, or even cite, *Townsend* in their motion.

No reasonable attorney could believe that Defendants' motion could win because it does not address all the sham litigation allegations in the SAC, much less prove that no reasonable attorney could believe that such allegations would succeed. To the contrary, Defendants admit that they spoliated evidence, which, itself satisfies the sham litigation exception. The other allegations in the pleading, which Defendants either fail to address or offer no evidence to dispute, establish the sham litigation exception as well. And every allegation which Defendants challenge is supported by ample evidence, as demonstrated in the Appendix submitted herewith. Because Defendants have not proven, or even tried to prove, that B&G Foods has no good faith basis for filing the SAC, Defendants' motion necessarily has no possibility of success, and violates Rule 11.

### 1. Defendants' Spoliation Satisfies the Sham Litigation Exception

Defendants concede—both in the Motion at 8, and in their Motion to Dismiss (Dkt. 66-1) at 5—that they spoliated the product samples which they claim tested positive for acrylamide and which form the entire basis for their lawsuits. Spoliation is one basis for finding that a lawsuit is a sham, and thus exempt from *Noerr-Pennington* immunity. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 647 (9th Cir. 2009). In *Kearney*, plaintiff filed a § 1983 lawsuit challenging a state court eminent domain proceeding. Plaintiff alleged that the State suppressed evidence which would have shown that his property was more valuable than the State claimed. *Id.* at 646.The State sought, and

the district court granted, dismissal on *Noerr-Pennington* grounds. The Ninth Circuit reversed, holding that allegations of suppression or destruction of evidence were "precisely the sort the sham exception was created to address." *Id.*

Here, as alleged in the SAC, and conceded by Defendants, the product samples on which Defendants predicate their lawsuits against B&G Foods were destroyed as a matter of "policy" by their testing laboratory. (SAC ¶¶ 75–77; Mot. at 8.) The SAC further alleges that this spoliation prejudiced B&G Foods because Defendants selected a laboratory that used nonstandard testing procedures to produce unusually high acrylamide results, and B&G Foods was deprived of an opportunity to challenge these procedures because it could not retest the same products tested by Defendants. (SAC ¶¶ 75-76.)

Defendants' Motion does not address any of these allegations. Instead, it cites just one of the 11 paragraphs detailing their spoliation, paragraph 80, and asserts that it is not supported by the exhibit to which it cites. This is untrue. The exhibit cited includes a statement by Defendants that they were not guilty of spoliation because their lab was not legally required to preserve evidence. (Dkt. 57-10 at 9 (Ex. J to SAC).) Moreover, other documents referenced in that exhibit include further admissions regarding Defendants' spoliation. (Borden Decl. Ex. 9 (Correspondence with Defendants' laboratory in which it admits to destroying evidence when "it was not paid" to preserve the samples and further states "In fact, the subpoena received February of this year, nearly one year after litigation began, is the first notice documents and samples should be preserved in the captioned matter."). And it is beside the point, because Defendants have repeatedly admitted on the record in this action that they spoliated evidence. (Mot. at 5, Dkt. 66-1 at 8.)

Defendants suggest that they are not responsible for the spoliation of evidence because the evidence was destroyed by the laboratory as a matter of "policy." (Mot. at 8.) This is incorrect as both a matter of law and fact. As a matter of law, that a third party possesses, and ultimately destroys, evidence does not excuse a parties' duty to preserve it. *Williams v. Russ*, 167 Cal. App. 4th 1215, 1223–24 (2008) (finding plaintiff spoliated evidence, and issuing terminating sanctions, when plaintiff left evidence in the care of a third party storage facility which destroyed it when plaintiff failed to pay the storage fee). And as a matter of fact, the laboratory used by Defendants

requires the party ordering a test to specifically select whether they want the product sample preserved, returned, or destroyed. (Borden Decl. Ex. 10.) As the laboratory stated, Defendants never instructed it to preserve evidence. (*Id.* at Ex. 9.)

Before Defendants filed this Motion, B&G Foods requested that Defendants produce any correspondence with their laboratory that would show they instructed the laboratory to preserve evidence or otherwise made any effort to prevent spoliation. Defendants' lawyer claimed he did not understand the lab request process, and Defendants ultimately refused to respond to this request. (Borden Decl. Ex. ¶ 10, Exs. 8, 9.)

Having examined controlling Ninth Circuit case law, no reasonable lawyer could conclude that B&G Foods has no possibility of showing sham litigation because B&G Foods alleges, and Defendants actually admit, that Defendants spoliated evidence. As the Ninth Circuit held in *Kearney*, spoliation is "precisely the sort the sham exception was created to address." 590 at 646. For this reason alone, Defendants' motion is frivolous.

### 2. Defendants Fail to Meaningfully Address Many Other Reasons Why Their Lawsuits Are Shams

Defendants' Motion is also frivolous because Defendants ignore, or offer no evidence to rebut, many of the other reasons B&G Foods has alleged their lawsuits are shams, despite the fact that Defendants possess, or should possess, all the relevant evidence. *See Townsend*, 929 F.2d at 1364. Defendants ignore the dozens of allegations in the SAC that their lawsuits are shams because they were part of a practice of serial filings made without regard to the merits. Defendants likewise largely ignore the allegations in the SAC that their lawsuits contain misrepresentations to the court. Defendants dispute that B&G Foods could show that its products do not violate Proposition 65, but do not deny that they conducted no pre-suit investigation into B&G Foods's defenses. Defendants claim the law does not require them to know whether B&G Foods's cookies cause cancer, but do not deny that this means that they filed suit without knowing whether the cancer warnings they sought to put on the cookies were actually true or that their lawsuits might violate B&G Foods's First Amendment rights. No reasonable attorney reading Ninth Circuit case law could believe that

they could meet their burden of proving that the entire SAC is frivolous without addressing all the allegations at issue, especially here, where such allegations are meritorious and well-supported.

### a. Defendants Do Not Address Allegations that Their Lawsuits Were Part of a Series of Meritless Filings

Defendants' Motion does not address, or even mention, the dozens of allegations in the SAC detailing how their lawsuits against B&G Foods are part of a series of lawsuits filed without regard to their merit and for an unlawful purpose. (SAC ¶¶ 160-88.) As the Ninth Circuit held in this case, lawsuits are a sham if "the legal filings were made, not out of a genuine interest in redressing grievances, but as part of a patter or practice of successive filings undertaken essentially for the purposes of harassment[.]" *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 539 (9th Cir. 2022). The SAC alleges that Defendants collectively have filed over 1,000 NOVs. Of these, less than 10% have resulted in any resolution. (SAC ¶¶ 168-70, 175-77.) Defendants have abandoned virtually all of the remaining claims. (*Id.*) And of those that Defendants have settled, the SAC alleges the resolutions are classic "shake-down" settlements, which offer the public illusory "benefits" or allow products to be sold with acrylamide levels that Defendants themselves have asserted pose a risk of harm. (SAC ¶¶ 160–88.) These allegations plausibly demonstrate that Defendants' lawsuits are shams because they are just two of over a thousand claims filed by Defendants not to redress any legitimate grievance but only to harass businesses into paying a ransom. *B&G Foods*, 29 F.4th at 539. Because Defendants fail to address, much less refute this sham litigation exception that was expressly noted by the Ninth Circuit in this case, it is objectively frivolous for them to claim that B&G Foods has no possibility of prevailing herein.

### b. Defendants Fail to Prove that No Reasonable Attorney Could Believe that Their Lawsuits Contain Misrepresentations

Defendants also largely ignore the twenty-two allegations detailing how their state court complaints contain false statements. (SAC ¶¶ 124–45.) These allegations identify representations made by Defendants that were later contradicted by their testimony or other evidence, including that the State of California knows acrylamide in food causes cancer, that they filed valid certificates of merit; that acrylamide in food is capable of causing cancer in humans; that affirmative defenses, such as the safe harbor or cooking exception, do not bar Plaintiffs' claims; or

that Plaintiffs filed their lawsuits on behalf of the public interest. (SAC ¶¶ 131-45.)

Misrepresentations to the Court are another basis for concluding state court lawsuits are shams.

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646–47 (9th Cir. 2009).

Defendants dispute one of these allegations, which states in full:

> Defendants' lawsuits are also shams for the separate and independent reason that their complaints contain several false statements. In particular, Defendants misrepresented to the Court that acrylamide is "known" to the State to cause cancer; that they filed valid certificates of merit prior to bringing suit; that they performed an adequate pre-suit investigation; and that B&G Foods's products were not exempt from Proposition 65 under any known affirmative defenses.

(SAC ¶ 124.) Defendants take issue with the assertion that "Defendants misrepresented to the Court that acrylamide is 'known' to the State to cause cancer." Defendants do not address the facts alleged in paragraphs 125-44, including that they failed to conduct any reasonable pre-suit investigation before filing their claims or filed their lawsuits for improper purposes and not in the public interest, as they alleged. For this reason alone, their argument fails, because it is Defendants' burden to show not just that one "sub-argument in support of an otherwise valid . . . pleading . . . is unmeritorious," but instead that the entire pleading is frivolous. *Golden Eagle*, 801 F.2d at 1540–1541.

Defendants instead assert that it was not false for them to say California knows acrylamide cause cancer because acrylamide is included in the Prop 65 list. (Mot. at 7.) This is beside the point. As detailed in the SAC, the State has repeatedly admitted that it does not, in fact, know that acrylamide in food causes cancer. (SAC ¶¶ 55-61; Borden Decl. Exs. 18, 19.) Indeed, this Court has determined that it would be at least controversial, if not outright false, to state that California knows acrylamide in food causes cancer, which is why it enjoined Prop 65 acrylamide lawsuits. *Calchamber*, 529 F. Supp. 3d 1099, 1117-18. The allegations in Defendants' complaints that acrylamide is known to California to cause cancer were thus not accurate—especially in light of *Calchamber*. (SAC ¶¶ 125–26.) No attorney who read this Court's Opinion would believe that B&G Foods could never establish sham litigation based on Defendants' submission of false statements to Courts, much less that B&G Foods' entire pleading has no objective possibility of success.

### c. Defendants Failed to Conduct Meaningful Pre-Suit Investigations

The SAC alleges that Defendants failed to properly investigate whether B&G Foods's products violated Proposition 65, either because they trace amounts of acrylamide present did not exceed the Prop 65 safe harbor level, or No Significant Risk Level ("NSRL"), or because the acrylamide was formed during the cooking process, and the products should be exempt from the usual NSRL. (SAC ¶¶ 104–23.) A failure to conduct a pre-suit investigation is a basis for finding a lawsuit is a sham. *B&G Foods*, 29 F.4th at 541.

Defendants contend that, based on their test results—the ones obtained from the evidence they intentionally destroyed during the pendency of this action—B&G Foods cannot show that its products fall within the safe harbor threshold. (Mot. at 10.) They do not, however, dispute that B&G Foods's test results show that its products do not exceed the NSRL. Because Defendants' spoliation rendered their results inadmissible, at best, the only evidence is that B&G Foods' products do not exceed the threshold. On these facts, no reasonable attorney could believe that B&G Foods lacks a good faith basis for asserting that Defendants failed to adequately investigate their claims.

Defendants also contest B&G Foods' allegation that the cooking regulations provide an affirmative defense that defeats their lawsuits. (Mot. at 10 (citing SAC ¶¶ 91-93, 99).) This allegation, however, is supported by B&G Foods' testing of the products, and analysis of the consumption of the products, which show that they are below the statutory NSRL (Borden Decl. Ex. 18), and the undisputed fact that the products are cooked (Borden Decl. Exs. 4 at 61:11-22; Ex. 12; Ex. 14 at Response No. 7; Ex. 15 at Response No. 7; Cal. Code Regs. § 25703(b)(1)). Therefore any "alternative NSRL" would be higher than the statutory NSRL—which is already higher than the actual level of acrylamide in the products. This is sufficient to allege Defendants cases are shams. *See B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 541 (9th Cir. 2022) ("[a] reasonable factfinder could infer . . . that Defendants' suit was objectively baseless because they knew (or should have known) that B&G was not violating Prop. 65 but filed suit anyway" if B&G "could allege that Cookie Cakes 'unquestionably qualifies for [an affirmative defense],' and that Defendants made no effort to investigate their claims and filed without regard to the merits."

Defendants contend that their "expert" opined that B&G Foods's products violated Prop 65. As a threshold matter, it is unclear that this "expert" rendered any opinion prior to Defendants filing

suit. *Infra* I.A.3. Defendants' expert report also fails to explain how he came to his conclusion and lists no qualifications for rendering it. (*See* Dkt. 52-2 (Defendants' expert reports).) As detailed in the SAC, at a minimum Defendants' expert would have had to calculate the average rate and frequency of consumption of the cookies to render his opinion, but his one-page report provides no indication he did so. (SAC ¶¶ 104–17.); *Env'tal Law Found. v. Beech-Nut Nutrition Corp.*, 235 Cal. App. 4th 307, 327-28 (2015) (Prop 65 violation determined by averaging exposure over time). Similarly, Defendants offer no evidence to prove they or their expert analyzed whether the acrylamide present in B&G Foods's products arose from the cooking process and if so, whether an alternative safe harbor level would be appropriate. (SAC ¶¶ 118–123.) For all these reasons, B&G Foods has at least a good faith basis for making this allegation, which establishes the sham litigation exception, and no reasonable attorney could believe otherwise. This is a separate and independent reason why no reasonable attorney could believe that Defendants' sanctions motion could prevail.

### d. Defendants Do Not Dispute They Filed Their Lawsuits without Determining Whether the Warnings Would Be True

The SAC alleges that Defendants knew the accused cookies do not cause cancer and knew that their lawsuits would, if successful, force B&G Foods to place a false warning on its products, but filed suit anyway. (SAC ¶¶ 146–159, 189–214.) Filing a lawsuit without a sincere belief that it could succeed on the merits is a reason for finding that lawsuit to be a sham. *B&G Foods*, 29 F.4th at 541 (citing *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 353 (9th Cir. 2014) (allegations that a party hoped to enforce its "rights through the *threat* of litigation rather than through actual litigation" sufficient to qualify for the sham exception).

Defendants contend that B&G Foods's "view of the law" (Mot. at 9)—i.e., that Defendants' lawsuits are unconstitutional, as this Court has held—does not show that their lawsuits were a sham. But Defendants do not dispute that they knew, or should have known, that there was a scientific consensus that acrylamide in food does not cause cancer, that the State had admitted acrylamide in food does not cause cancer, and that the accused cookies do not cause cancer. (Borden Decl. Exs. 18, 19.) Notwithstanding these facts, which Defendants do not dispute, they sued B&G Foods to force a cancer warning onto the cookies. Defendants filed their lawsuits not because they had any

anticipation they would succeed, but rather because they believed they "threat of litigation" would yield a ransom payment from B&G Foods. That is sham litigation. *B&G Foods*, 29 F.4th at 541.

### 3. Defendants Fail to Show They Actually Submitted Proper Certificates of Merit

The SAC alleges that Defendants failed to submit proper Certificates of Merit as required prior to filing their Prop 65 lawsuits. (SAC ¶¶ 86–102.) As both the Ninth Circuit and this Court have held in this case, Defendants' failure to file proper Certificates of Merit would make their state court lawsuits a sham because a Certificate of Merit is a statutory prerequisite for filing a Prop 65 lawsuit. *In re Vaccine Cases*, 134 Cal. App. 4th 438, 456-57 (2005).

The SAC details how Defendants' original Certificates of Merit contained no information showing that B&G Foods's cookies actually violated Proposition 65—only a statement by Defendants' lawyer that they did so. (SAC ¶¶ 86–89, 95–97.) In discovery in state court, B&G Foods requested that Defendants provide whatever other additional information they may have submitted with their Certificates of Merit. Defendant Embry testified that she was unaware of any expert analysis regarding the accused cookies. (SAC ¶ 110, Ex. A, *see* Borden Decl. Ex. 4 at 80:9-21, 82:22-83:22.) In response to an interrogatory asking if any person made a report regarding Defendant EHA's claims, Defendant EHA responded "No." (SAC ¶ 97 & Ex. F; *see* Borden Decl. Ex. 11 at Responses Nos. 12.2, 12.3, 12.6.)

The SAC further details how, after the Ninth Circuit rendered its opinion in this case, Defendants amended their Certificates of Merit and produced two one-page expert reports stating that the accused cookies contained acrylamide in an amount that violated Proposition 65. (SAC ¶¶ 89, 98; *see* Borden Decl. Ex. 12) The SAC alleges that Defendants' denial of the existence of any expert reports in their discovery responses, and the fact that they only produced their expert reports after the Ninth Circuit suggested Defendants' inadequate Certificates of Merit could support an argument that the sham exception applied, support the inference that the reports "were manufactured after the fact and/or were never included in Defendants' original certificates of merit." (SAC ¶ 112.) Defendants appear to concede this inference is as they say the one-page expert reports were "additional" materials added to their certificates of merit. (Mot. 7.)

Defendants contend that they did not deny the existence of the expert reports, but merely objected to B&G Foods's discovery into their expert reports. (Mot. at 6.) That is false. Defendant EHA stated that "No" report existed. (SAC, Ex. F.) Defendant Embry testified she was unaware of any expert analysis. (SAC ¶ 110, Ex. A; *See also* Borden Decl. Ex. 4 at 80:9-21, 82:22-83:22, Ex. 11 at Responses Nos. 12.2, 12.3, 12.6; Ex. 14 at Response No. 2; Ex. 15 at Response No. 2) California law does not permit a litigant to deny the existence of a document in a discovery response, even if it is privileged. *Smith v. Super. Ct.*, 189 Cal. App. 2d 6, 12 (1961) (while expert reports may be protected from disclosure under the work product privilege, "only the contents could be privileged not the fact of the document's existence.").

Defendants alternatively suggest that it does not matter that they submitted false discovery responses and withheld evidence from B&G Foods since they provided the evidence to the Attorney General, who has not said that Defendants' lawsuits are without merit. (Mot. at 7.) This assertion is not supported by any evidence; Defendants did not produce any communications with the Attorney General. (Borden Decl. Exs. 2, 9, 15 at Response No. 13) Before they filed this motion, B&G Foods asked Defendants to produce any information showing that the expert reports existed and were transmitted to the Attorney General prior to the filing of their lawsuits. (Borden Decl., Exs. 2, 9.) Defendants only provided what appears to be an automated response from the Attorney General stating that it had received something, not what Defendants provided. (Id.)

In sum, B&G Foods has a good faith basis to allege that Defendants failed to provide an expert report with their Certificate of Merit based on the following facts: (1) Defendants denied the existence of such reports in discovery responses; (2) Defendants testified in deposition that no such reports existed, (3) Defendants changed their story after an adverse ruling by the Ninth Circuit, (4) Defendants amended their NOVs after the litigation was filed (Borden Decl. Ex. 4 at Tr. 80:9-2182:22-83:22; Ex. 12; Ex. 14 at Response No. 2; Ex. 15 at Response No. 2), and (5) Defendants have refused to provide any other substantiation, such as contemporaneous communications with their expert telling him to test the cookies, an engagement letter for the testing, internal discussion of any such testing, invoices for any such testing, records reflecting payments for any such testing, or communications with the Attorney General about such testing. These facts more than support the

allegations in the SAC, which, like many other contested issues in litigation will be determined through discovery. No reasonable lawyer, under these circumstances, could believe that B&G Foods did not have at least a good faith basis for making these allegations.

**B.      Defendants' Motion for Sanctions Was Filed for an Improper Purpose**

Defendants' Motion separately violates Rule 11 because it was filed for the improper purposes of intimidating and harassing B&G Foods for asserting its First Amendment rights, and seeking a determination on contested factual issues in the absence of discovery—at the same time as the Court is ruling on their Motion to Dismiss. It is improper to use Rule 11 as a mechanism for trying to resolve factual issues in this fashion, especially at the pleading stage. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("[I]mposition of a Rule 11 sanction is not a judgment on the merits of an action."); *Miletak v. Acuity Mut. Ins. Co.*, 2022 WL 17098616, at *2 (N.D. Cal. Nov. 21, 2022) (on sanctions motion, declining to decide whether certain claims failed as a matter or law or omitted key factual allegations; *Hunt v. Sunny Delight Bevs. Co.*, 2018 W.L. 6786265 *5 (C.D. Cal. Dec. 18, 2018) (even when Complaint was based on indisputably false allegations, Rule 11 did not permit court to "confus[e] the issue of attorney honesty with the merits of the action" and render a final judgment based on "newly-revealed facts").

Where, as here, a litigant has violated the other prongs of Rule 11, there an inference that the motion was filed for an improper purpose. *Townsend*, 929 F.2d 1358. Defendants' purpose is laid bare by B&G Foods' efforts to avoid this motion. B&G Foods repeatedly asked Defendants to provide substantiation for the disputed facts that Defendants seek to resolve through this motion— e.g., that they told their lab not to destroy samples, or that they submitted expert reports with their Certificates of Merit—but Defendants refused to provide it. At the pleading stage, Rule 11 requires a plaintiff to investigate its claims and have a good faith basis for making the allegations. As set forth above, B&G Foods easily meets this standard. But what Plaintiffs are asking in their motion is that the Court resolve the merits of these issues in their favor at the pleading stage. That is the opposite of what Rule 12 requires and a subversion of Rule 11 for an improper purpose.

If Defendants actually did have proof for their factual claims, they should have submitted it with their moving papers or at least provided it to B&G Foods to avoid this process. Indeed, one

PLAINTIFF B&G FOODS'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

would think that if they had evidence exonerating themselves, they would be eager to show it to reduce motion practice and the needless consumption of judicial and party resources. Defendants' refusal to do so underscores that they filed this motion for an improper purpose.

## II. DEFENDANTS SHOULD BE REQUIRED TO PAY B&G FOODS' REASONABLE ATTORNEY'S FEES AND COSTS FOR OPPOSING THIS MOTION

The Court may award sanctions to a party who successfully opposes a motion for sanctions. *Patelco*, 262 F.3d at 913. No safe harbor is needed for such sanctions. *Id.* B&G Foods, however, provided Defendants notice several times that it would seek sanctions if Defendants persisted in filing their motion. (Borden Decl., Exs. 2, 9.) Reasonable attorney's fees are warranted for a Rule 11 violation. *Unioil v. E.F. Hutton & Co., Inc.*, 809 F.2d 548, 549 (9th Cir. 1986, as amended on denial of rehearing and rehearing en banc 1987). The fees incurred by B&G Foods are reasonable in light of market rates and time necessary to prepare this Opposition. (Borden Decl. ¶¶ 22-35.)

### A. Counsel's Hourly Rates

BraunHagey & Borden (BHB) is a leading national boutique law firm with offices in San Francisco and New York with almost 50 part- and full-time attorneys. The firm routinely handles high profile, complex litigation before federal and state courts throughout the country and has substantial experience both with Prop 65 and with First Amendment litigation on behalf of a wide variety of clients. This includes recent cases commercial speech issues, protecting the rights of journalists, and fighting against book bans in Texas. BHB's last two jury verdicts both exceed $50 million. In addition to complex commercial litigation, BHB also handles significant pro bono and impact litigation assignments. Every time it has petitioned a court for its fees in such matters, they have been approved in full.[5] The rates that BHB charges its commercial clients are substantially

---

[5] U.S. District Court Judge Edward J. Davila recently approved BHB's 2020 rates in *Optronic Technologies, Inc., v. Ningbo Sunny Electronic Co., Ltd*., et al., No. 5:16-cv-6370 (N.D. Cal.), Dkt. No. 657, *affirmed* by *Optronic Technologies, Inc., v. Ningbo Sunny Electronic Co., Ltd*., 201 F.4th 1466 (9th Cir. 2021). The firm's rates have been approved in decisions issued by numerous courts, including the Ninth Circuit in *Walker v. B&G Foods, Inc*., et al., No. 16-15349 (9th Cir., Jul. 20, 2017), *Silver v. B.A. Sports Nutrition*, Case No. 20-cv-00633-SI (N.D. Cal.); *Hill v. Robert's Am. Gourmet Food, Inc*., No. C 13-80166 EDL (N.D. Cal.), *Hunt v. Sunny Delight Beverages Co*., No. 18-cv-00557-JLS-DFM (C.D. Cal.), *Davis v. AG Seal Beach, LLC*, et al., Case No. BC468346 (Los Angeles Super. Ct.), and *State of California ex rel. Todd Dominguez v. En Pointe Techs. Inc*., et al., Case No. 37-2011-00100936-CU-BTL (San Diego Super. Ct.).

lower than the rates charged by the big firms and boutiques where BHB's lawyers previously practiced, e.g., Morrison & Foerster, LLP, Quinn Emanuel Urquhart & Sullivan LLP, Latham & Watkins, LLP, Keker & Van Nest LLP, and Munger, Tolles & Olson, LLP to name a few.

Matthew Borden is a partner and co-founder of BHB with over two decades of commercial litigation experience. After law school, Mr. Borden clerked for the Honorable William Alsup in the United States District Court for the Northern District of California. He practiced in big law before co-founding BHB. He has successfully tried cases in federal and state court and argued appeals before the Ninth Circuit, the Federal Circuit and the California Courts of Appeal. He has represented and sued Fortune 500 companies, private equity funds, financial institutions, and foreign governments in billion-dollar lawsuits and other high-stakes litigation. (Borden Decl. ¶ 24.) David Kwasniewski is a partner at BHB with over ten years of commercial litigation experience since graduating from Cornell Law School and clerking for the Hon. Curtis V. Gomez of the District Court of the Virgin Islands. He has litigated dozens of Prop 65 cases, consumer class actions, and unfair competition claims while representing some of the largest food, beverages, supplement, and cosmetic companies in the country. (Borden Decl. ¶ 26.) Forrest Hainline is a counsel at BHB with decades of Prop 65 experience who litigated some of the very first acrylamide cases to be filed. He also personally tried several seminal Prop 65 cases, including *the People ex rel. Brown v. Tri-Union Seafoods, LLC*, Case No. A116792 (Cal. 4th App. Ct. 2009); and *Ogden v. Bumble Bee Foods, LLC*, Case No. C12-1828 LHK (N.D. Cal. 2013). (Borden Decl. ¶ 28)

### B. The Hours Spent Are Reasonable

The time spent opposing this motion is detailed in the Borden Declaration at paragraphs 25, 27, 29, 31. This amounts to $64,000 to date. B&G Foods is not seeking fees on behalf of several other timekeepers who expended significant time and resources drafting and preparing this opposition, estimated to exceed $20,000. Should Defendants contest the quantum of B&G Foods's overall fee expenditure on this motion, it reserves the right to seek compensation for all the time expended in connection with this response.

<u>**CONCLUSION**</u>

For the foregoing reasons, B&G respectfully submits that Defendants' motion should be denied, and Defendants should be sanctioned in the amount of $64,000.

Dated:  February 21, 2023                    Respectfully Submitted,

                                             BRAUNHAGEY & BORDEN LLP

                                             By:  /s/ *Matthew Borden*
                                                      Matthew Borden

                                             *Attorneys for Plaintiff*
                                             *B&G Foods North America, Inc.*