# EXHIBIT 4

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

KIM EMBRY, AN INDIVIDUAL,

       Plaintiff,

 vs.                   CASE NO. RG20057491

B&G FOODS NORTH AMERICA, INC.,

A DELAWARE CORP., RALPH'S

GROCERY COMPANY, AN OHIO CORP.

       Defendants.

_____

DEPOSITION OF KIM EMBRY

APPEARING REMOTELY FROM

San Francisco, California

Friday, November 13, 2020

Stenographically Reported by:  Ashley Soevyn,

CSR No. 12019

APPEARING REMOTELY FROM MARIN COUNTY, CALIFORNIA

Magna Job No. 663115

Pages 1 - 98



Page 2

1      SUPERIOR COURT OF THE STATE OF CALIFORNIA
2                COUNTY OF ALAMEDA
3
4   KIM EMBRY, AN INDIVIDUAL,
5              Plaintiff,
6    vs.                         CASE NO. RG20057491
7   B&G FOODS NORTH AMERICA, INC.,
    A DELAWARE CORP., RALPH'S
8   GROCERY COMPANY, AN OHIO CORP.
9              Defendants.
    _____
10
11
12
13         Deposition via video conference of
14   KIM EMBRY taken on behalf of defendants, with all
15   parties appearing remotely beginning at 10:06 a.m.
16   and ending at 12:40 p.m. on Friday, November 13,
17   2020, before ASHLEY SOEVYN, Certified Shorthand
18   Reporter No. 12019.
19
20
21
22
23
24
25



```
 1   REMOTE APPEARANCES:
 2
 3   For the Plaintiff Kim Embry
 4           GLICK LAW GROUP
 5           BY:  NOAM GLICK
 6           Attorney at Law
 7           225 Broadway, 19th Floor
 8           San Diego, California 92101
 9           E-mail: noam@glicklawgroup.com
10           Phone: (619) 382-3400
11
12   For the Defendants B&G Foods
13           BRAUNHAGEY & BORDEN
14           BY:  DAVID H. KWASNIEWSKI
15           Attorney at Law
16           351 California Street
17           10th Floor
18           San Francisco, California 94104
19           E-mail: kwasniewski@braunhagey.com
20           Phone: (415) 599-0210
21
22
23   Also Remotely Present: Nick Peruto, Videographer
24   Cameron Baker, paralegal, BraunHagey & Borden
25   Valerie Garcia, paralegal, Glick Law Group
```



```
```

```
 1                    INDEX TO EXAMINATION
 2   WITNESS:
 3   DEPOSITION OF KIM EMBRY
 4   EXAMINATION BY:                            PAGE
 5   MR. KWASNIEWSKI                              8
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



```
 1                    INDEX TO EXHIBITS
 2                        KIM EMBRY
 3         KIM EMBRY V. B&G FOODS NORTH AMERICA
 4              Friday, November 13, 2020
 5            Ashley Soevyn, CSR No. 12019
 6   EXHIBIT NO.        DESCRIPTION                PAGE
                  (Provided electronically to the
 7   reporter)
 8   Exhibit 1     LinkedIn Profile of Kim Embry     11
 9   Exhibit 2     Defendant's Amended Notice of     14
                   Deposition of Plaintiff Kim
10                 Embry
11   Exhibit 3     Release and Settlement            36
12   Exhibit 4     Amazon.com Lambro 289w dryer      41
                   vent seal
13
     Exhibit 5     Settlement Agreement              43
14
     Exhibit 6     Settlement Agreement & General    49
15                 Release
16   Exhibit 7     Letter dated March 2, 2018 to     54
                   Mr. Glick and Mr. Nicholas from
17                 the Office of the Attorney
                   General
18
     Exhibit 8     Complaint for Civil Penalties     63
19                 and Injunctive Release
20   Exhibit 9     Consent Judgment as to Nonni's    68
                   Foods, LLC
21
     Exhibit 10    Letter dated March 20, 2020       94
22                 Offer to Compromise
23
24
25
```



```
 1      A    Not really.  I have a Costco membership.    11:33:01
 2   I can't remember the last time I've been.
 3      Q    Got it.  So at issue in this lawsuit
 4   and -- and many of your other notices of violation
 5   is a chemical called acrylamide.  What is            11:33:22
 6   acrylamide?
 7      A    Acrylamide --
 8           MR. GLICK:  Objection.  Hold on.  Hold
 9   on.  Objection.  Calls for expert testimony, lacks
10   foundation.                                          11:33:33
11           THE WITNESS:  I do know a little bit
12   about acrylamide.  It is a chemical found in foods.
13   When cooked -- baked at really high temperatures and
14   then once it's ingested in the human body, it
15   actually becomes a carcinogen.                       11:33:48
16   BY MR. KWASNIEWSKI:
17      Q    And -- and you mentioned it's formed in
18   foods when they're -- when they're baked or fried,
19   you said?
20      A    To my understanding, I -- when it's at a     11:33:55
21   very high temperature, baked and fried, that's when
22   it forms.
23      Q    And you understand that it forms in -- in
24   all manners of food when they're treated that way,
25   like if you fry fish or bake it or if you roast      11:34:12
```



```
 1   conclusion, vague and ambiguous, lacks foundation.    11:59:17
 2   BY MR. KWASNIEWSKI:
 3        Q    You can answer, Ms. Embry, if you can.
 4        A    I -- actually, I don't know the answer to
 5   this, so I would say no.                              11:59:37
 6        Q    Okay.  Earlier we talked a little bit
 7   about your research into acrylamide.  I want to get
 8   a bit more specific now.
 9             Have you read any scientific study about
10   whether the cookie cakes at issue in this lawsuit     11:59:58
11   cause cancer?
12        A    No.
13        Q    What about any study that the cookie
14   cakes cause birth defects?
15        A    No.                                         12:00:09
16        Q    Are you aware of any person who has ever
17   contracted cancer because he ate these cookie cakes?
18        A    No.
19        Q    Or any person who has had a birth defect
20   because he ate these cookie cakes or she?             12:00:29
21        A    No.
22        Q    So your goal in bringing this lawsuit or
23   at least one goal is to get warnings on these
24   products, correct?
25        A    Yes.                                        12:00:56
```



```
 1      Q    But you wouldn't want B&G Foods to put a      12:00:59
 2   warning on its products that was false, would you?
 3      A    No.
 4           MR. GLICK:  Vague and ambiguous.
 5   BY MR. KWASNIEWSKI:                                   12:01:09
 6      Q    Now, you just said that you're not aware
 7   of any research or study that the cookie cakes cause
 8   cancer but you still want B&G Foods to put a warning
 9   on its product which says that they do; is that
10   right?                                                12:01:36
11           MR. GLICK:  Objection.  Argumentative,
12   lacks foundation, calls for a legal conclusion,
13   calls for expert testimony.
14           THE WITNESS:  My knowledge is that the
15   cookies have acrylamide in them.  We're not going     12:01:48
16   after the cookie itself.  We're going after the
17   chemical that's in them.
18   BY MR. KWASNIEWSKI:
19      Q    Okay.  But you don't know whether the
20   cookie cakes themselves could ever cause cancer in    12:01:58
21   anyone?
22           MR. GLICK:  Same objections.
23           THE WITNESS:  I mean, we could say that
24   about a number of different products, that's why
25   we're looking at what the make up is of the product.  12:02:13
```



```
 1   So the chemical that's in there is what causes          12:02:15
 2   cancer, just like a cigarette.  The wrapper of a
 3   cigarette doesn't cause cancer, but what the
 4   chemicals are inside is what do.  That's why people
 5   went after big cigarette companies.                     12:02:27
 6   BY MR. KWASNIEWSKI:
 7        Q    Got it.  So do I understand you to be
 8   suggesting that cookie cakes are as bad for you as
 9   cigarettes?
10        A    That's not what I --                          12:02:36
11             MR. GLICK:  Hold on.  Hold on.
12   Objection.  Calls for expert testimony, lacks
13   foundation, argumentative.  Go ahead.
14             THE WITNESS:  That's not --
15   BY MR. KWASNIEWSKI:                                     12:02:47
16        Q    You can answer the question.
17        A    No.
18        Q    And you said before that you're not aware
19   of anyone who has ever contracted cancer because
20   they ate cookie cakes, right?                           12:02:58
21        A    Not cookie cakes, no.
22        Q    Did you specifically do any research
23   before you filed this complaint regarding how often
24   people eat cookie cakes?
25        A    I did not do research, no.                    12:03:17
```



```
 1        Q    Do you have an understanding, apart from      12:03:20
 2   any discussions you may have had with your
 3   attorneys, about how many cookie cakes a person
 4   would have to eat to be exposed to a dangerous level
 5   of acrylamide?                                          12:03:33
 6             MR. GLICK:  Objection.  Calls for expert
 7   testimony and calls for attorney-client
 8   communications, and although he did caveat that to
 9   say apart from our communications, do not reveal in
10   answering the question anything that might be           12:03:47
11   protected by the attorney-client privilege.
12             THE WITNESS:  Could you repeat the
13   question?
14             MR. KWASNIEWSKI:  Sure.  Madam Court
15   Reporter, would you mind reading it back.               12:03:57
16             THE REPORTER:  (Record read.)  Do you
17   have an understanding apart from any discussions you
18   may have had with your attorneys about how many
19   cookie cakes a person would have to eat to be
20   exposed to a dangerous level of acrylamide?             12:04:18
21             THE WITNESS:  No, that's where I would
22   trust an expert's opinion.
23   BY MR. KWASNIEWSKI:
24        Q    So let's talk about the co-defendant, my
25   other client, which is Ralph's Grocery Company.  Why    12:04:26
```



```
 1              I, the undersigned, a Certified Shorthand
 2    Reporter of the State of California, do hereby
 3    certify:
 4              That the foregoing proceedings were taken
 5    before me at the time and place herein set forth;
 6    that any witnesses in the foregoing proceedings,
 7    prior to testifying, were duly sworn; that a record
 8    of the proceedings was made by me using machine
 9    shorthand, which was thereafter transcribed under my
10    direction; further, that the foregoing is a true
11    record of the testimony given.
12              I further certify I am neither financially
13    interested in the action nor a relative or employee
14    of any attorney or party to this action.
15              IN WITNESS WHEREOF, I have this November
16    30, 2020 subscribed my name.
17
18
19
20
      _____
21    ASHLEY SOEVYN
      CSR No. 12019
22
23
24
25
```

