CRAIG M. NICHOLAS (Bar No. 178444)
cnicholas@nicholaslaw.org
SHAUN MARKLEY (Bar No. 291785)
smarkley@nicholaslaw.org
JAKE W. SCHULTE (Bar. No. 293777)
jschulte@nicholaslaw.org
**NICHOLAS & TOMASEVIC, LLP**
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496

NOAM GLICK (Bar No. 251582)
noam@glicklawgroup.com
**GLICK LAW GROUP, P.C.**
225 Broadway, Suite 2100
San Diego, CA 92101
Tel: (619) 382-3400
Fax: (619) 615-2193

Attorneys for Defendants
KIM EMBRY and
ENVIRONMENTAL HEALTH ADVOCATES, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| B&G FOODS NORTH AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KIM EMBRY and ENVIRONMENTAL HEALTH ADVOCATES, INC., acting as enforcement representatives under California Proposition 65 on behalf of the State of California,<br><br>Defendants. | CASE NO. 2:20-CV-00526-KJM-DB<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**Hearing Date**: March 10, 2023<br>**Hearing Time**: 10:00 a.m.<br>**Courtroom**: 3 (15th Floor)<br><br>**District Judge**: Hon. Kimberly J. Mueller<br>**Magistrate Judge**: Hon. Deborah Barnes<br><br>**Complaint Filed**: March 6, 2020<br>**FAC Filed**: July 7, 2022<br>**SAC Filed**: November 23, 2022<br>**Trial Date**: None Set |

## I. INTRODUCTION

Defendants have shown that this case should be dismissed yet again under the *Noerr-Pennington* doctrine. B&G's attempts to fit its allegations into each of the three prongs of the sham exception to the doctrine are weak and readily dispatched. Most importantly, as to the first two prongs, B&G does not apply the appropriate legal standard as set forth in this Court's prior rulings. With respect to the sham exception for fraud and intentional misrepresentations, B&G does not show how its allegations could meet the intent requirement or explain how the allegations meet the heightened pleading standard that this Court has found applies. *See* ECF 56 at 13:27-14:9. As to the exception for lawsuits that are objectively baseless and brought with an unlawful motive, B&G relies solely on its legal view on two affirmative defenses and on the broader constitutionality of Proposition 65 lawsuits. But even accepting B&G's flawed view of the law, B&G falls well short of showing that "'no reasonable litigant could realistically expect success on the merits." *Id.* at 8:19-20 (internal quotation marks omitted). Indeed, B&G does not even reference this Court's ruling on the standards for showing these first two sham exceptions. Similarly, as to the final prong – the sham exception for a series of lawsuits – B&G ignores that this Court has already ruled against the very arguments B&G reasserts. *See id.* at 11:19-13:17.

If the Court reaches the separate state action issue, the Court should reject B&G's attempt to expand dramatically the limited exceptions to the rule that private parties are not state actors. Proposition 65's scheme is based on independent actions of state and private actors – and often adverse ones at that. Private enforcers are not state actors.

## II. THE SHAM EXCEPTION TO THE *NOERR-PENNINGTON* DOCTRINE IS INAPPLICABLE

B&G does not attempt to use many of its new allegations in the Second Amended Complaint to support application of the sham exception to the *Noerr-Pennington* doctrine. The allegations with respect to each of the six bases B&G now raises for invoking the sham exception are insufficient. Defendants address the six bases below with respect to the pertinent prong of the sham exception. In addition, B&G has no response to Defendants' general discussion of outcome versus process injury. *See* ECF 66-1, Mot. 15:16-21.

**A.   B&G has Not Pled the Sham Exception for Fraud and Intentional Misrepresentations**

B&G makes three arguments for the sham exception based on fraud and intentional misrepresentations, none of which bear muster.

*1.   There was no "Spoliation"*

B&G first argues that the regular disposal of perishable product samples constitutes "spoliation." *See* ECF 69, Opp. 6:10-8:15. This argument fails for three reasons.

First, B&G points to no case that finds that destruction of a sample where the test on that sample can be replicated in other samples constitutes "spoliation." This scenario simply does not constitute "spoliation," as the Orange County Superior Court found in rejecting the same argument B&G's counsel made in another case. *See* ECF 66-2, RJN Ex. L at 2. B&G does not dispute that other samples can be tested or that the samples that were tested prior to initiating litigation are not afforded greater weight than other samples. *See* Mot. 5:23-28. Although B&G asserts that the Second Amended Complaint contains allegations to the contrary (Opp. 8:3-5, 9-11), the cited allegations are not on point. If B&G wants to attack laboratory testing procedures in a Proposition 65 case, it can do so based on the procedures in place – and does not need the samples. If the laboratory does not replicate the findings on other samples, B&G is free to argue that the initial testing was unreliable. B&G is even free to argue that failure to retain a sample supports an adverse inference or the like. But none of this requires that any particular sample of a perishable product be kept indefinitely to avoid "spoliation."

Second, B&G has no support for its argument that Defendant Kim Embry rather than the lab at issue – IEH – decided to dispose of the sample. The Second Amended Complaint relies on an exhibit for this proposition (a letter from IEH Laboratory). *See* ECF 57, SAC ¶ 80 & Ex. 4. B&G has now dropped this assertion after Defendants pointed out the exhibit has no such import. *See* Mot. 5:18-20. Instead, B&G now relies on a laboratory form to suggest that disposal of the sample was Defendant Embry's choice. *See* Opp. 7:27-8:2; ECF 70-1. But in 2021, B&G's attorneys argued to the Orange County Superior Court that the evidence showed that *the lab's policy* was to destroy

samples. RJN, Ex. M at 4:4-6. Further, in B&G's opposition to Defendants' sanctions motion in this case, B&G affirmatively states: "the product samples on which Defendants predicate their lawsuits against B&G Foods were destroyed as a matter of "'policy' by their testing laboratory." ECF 71 at 10:4-6. Yet in opposing the Motion to Dismiss, B&G persists in blaming Defendants. B&G's reliance on an *undated* form to do so could not help the argument even were it tenable in light of the statements to the Orange County Superior Court and to this Court with respect to the sanctions motion. There is no basis to infer that the form on which B&G relies was being used when the samples at issue were tested, which B&G concedes was back in 2019 (*see* SAC, ¶ 80) – before the 2021 Orange County Superior Court case.[1] B&G also relies on conclusory allegations about intent and does not meet the heightened pleading standard that B&G does not dispute applies to fraud allegations. *See* ECF 56 at 13:27-14:9.

Third, Defendants pointed out that B&G *admits* that Defendants also relied on a "test result from *another lab*." Mot. 5:20-22; SAC, ¶ 98 (emphasis added). B&G has no response to this admission. Indeed, the second lab – Medallion Labs – produced results that an expert relied on to opine that there was a Proposition 65 violation. *See* RJN Ex. D. That a lab other than the one that is the basis for B&G's unfounded speculation about nefarious motives and practices reached a similar result shows just how misguided B&G is in its allegations. B&G's allegations are not only speculative and conclusory, but they are contradicted by evidence.

### 2.  *The Certificates of Merit are Not False*

B&G next argues that Defendants falsely claimed they submitted certificates of merit that contained the information Proposition 65 requires. *See* Opp. 5:28-6:2, 8:16-11:4. This argument is almost entirely premised on allegations that Defendants did not have an expert *report* at the time of the initial certificates of merit. *See* Opp. 9:9-10:18. But the certificate of merit does not require an expert *report*. Instead, Proposition 65 requires "that the person executing the certificate has consulted

---

[1] Further, the form is not part of the Second Amended Complaint. "Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). B&G provides no reason to depart from the rule and the Court should therefore disregard the form. (Although judicially noticeable documents can be used, and Defendants have properly sought judicial notice, B&G has not. It is also the plaintiff and should have included any allegations in the complaint.)

with one or more persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other data regarding the exposure to the listed chemical," that "the person executing the certificate believes there is a reasonable and meritorious case for the private action," and that "information sufficient to establish the basis of the certificate of merit" be provided to the Attorney General. Cal. Health & Safety Code § 25249.7(d)(1). Defendants have provided the detailed expert analysis that accompanied the Certificate of Merit (*See* RJN Exs, C, D), which fully conforms with section 25249.7(d)(1).[2] There is no basis to argue impropriety based on allegations that there was no expert "report" when one is not required.

B&G continues to rely on a response to form interrogatories that Defendants demonstrated *objected* to the extent the form interrogatories inquire into *expert* communications and only responded *subject* to those objections and therefore are not admissions about anything with respect to experts. *See* Mot. 7:14-25. To the extent B&G believes the objections were improper, that is an argument about discovery obligations in state court, not a ground to establish that Defendants made false statements in the certificates of merit. That is, even had Defendants wrongly asserted objections with respect to the existence of expert material, that would just mean that Defendants had to answer the interrogatories without objecting to the inquiry into expert communications – it would not establish the appropriate expert consultation was lacking, which is what B&G concludes.

In the end, B&G relies on conclusory statements that do not meet the heightened pleading standard for fraud. This is particularly true because Proposition 65 provides: "If, after reviewing the factual information sufficient to establish the basis for the certificate of merit . . . , the Attorney General believes there is no merit to the action, the Attorney General *shall* serve a letter . . . stating the Attorney General believes there is no merit to the action." Cal. Health & Safety Code § 25249.7(e)(1)(A) (emphasis added). B&G concedes the Attorney General did not object to the initial notices of violation (which contain the certificates of merit, Cal. Health & Safety Code § 25249.7(d)(1)). SAC, ¶¶ 63, 66. B&G's response is that this goes beyond the pleadings. Opp. 10:27-11:4. But admissions in a pleading and a statutory requirement are proper considerations in a motion to dismiss. Given that B&G

---

[2] The original expert analyses are dated April 12, 2019 and June 24, 2020, respectively – i.e., prior to when Embry and EHA brought their original notices of violation against B&G.

concedes that the Attorney General did not object and that the initiative requires the Attorney General to object if the basis of the certificate of merit is unfounded, there is no room for an inference that the certificates of merit were insufficient.

### 3. The Lawsuits do Not Include False Claims

B&G further argues that Defendants made five false statements in their Proposition 65 complaints. Opp. 13:13-15:2. B&G again ignores the heightened pleading standard and the requirement to allege intentional misrepresentation. *See* Mot. 7:27-8:6. There are also additional reasons that each statement is not false.

As to the argument that Defendants falsely stated that acrylamide is known to the State of California to cause cancer, the Ninth Circuit ruled: "It is undisputed that B&G's Cookie Cakes contain some amount of acrylamide, that *acrylamide is on the list of chemicals 'known to the state to cause cancer,'* and that B&G does not provide a warning." *B&G Foods v. Embry*, 29 F.4th 527, 538 (9th Cir. 2022) (emphasis added); *see also* Mot. 8:7-13. B&G has no response.

The argument that Defendants falsely stated that they provided valid certificates of merit prior to bringing suit is addressed above. *See supra* Part II.A.2; *see also* Mot. 8:14-9:2. The arguments that Defendants made false statements that they conducted an adequate pre-lawsuit investigation and with respect to affirmative defenses fail because such statements were not expressly made in the complaints. *See* SAC, Exs. E, H. In any event, Defendants address below the issues with respect to pre-lawsuit investigation and affirmative defenses. *See infra* Part II.B.1; *see also* Mot. 6:13-7:13, 11:12-12:13.

As to the argument about irreparable harm, Defendants have demonstrated that pleading irreparable harm is justified by the deprivation of consumers' right to know so that they can make informed decisions. Mot. 9:3-14. B&G's response is that false warnings are harmful. But that assumes the warning would be false. Whether a Proposition 65 warning is required is for the state court to decide and even were no warning required after a contested trial, that would not make the pleading at the outset of the litigation a sham.

**B.  B&G has Not Pled the Sham Exception for Objective Baselessness and Motive**

B&G also makes two arguments for the sham exception based on objective baselessness and unlawful motive, neither of which overcome the standard that "'no reasonable litigant could

1  realistically expect success on the merits.'" ECF 56 at 8:19-20 (quoting *B&G Foods v. Embry*, 29
2  F.4th at 538).

3                         *1.     The Pre-Lawsuit Investigation was Sufficient*

4        B&G argues that Defendants did not conduct an adequate pre-lawsuit investigation into the
5  affirmative defenses that the products did not exceed the No Significant Risk Level and that
6  acrylamide is caused by cooking. Opp. 11:5-13:12.

7        As to the NSRL defense, B&G relies on consumption patterns. *Id.* 11:20-28. But Defendants
8  demonstrated that an expert has opined that the products contain acrylamide in amounts that exceed
9  the NSRL because "consuming a single serving of the product[s]" results in ingesting well over the
10 NSRL. RJN Exs. C, D. The frequency of consumption does not matter in light of the expert's finding
11 that *one serving* exceeds the NSRL. *See* Mot. 11:18-12:10. B&G has no response.

12       As to cooking, B&G also has no response to Defendants' showing that the California Attorney
13 General has brought at least two acrylamide Proposition 65 cases with respect to snack foods. *See*
14 Mot. 6:26-7:2 (citing RJN Exs. G, H). If Defendants' lawsuits were shams simply because the
15 acrylamide results from cooking, so were the Attorney General's. That is enough to show the absurdity
16 of B&G's position. In addition, B&G argues on the one hand that cooking could "warrant a different
17 NSRL" and on the other that cooking could require "an exception to Prop 65's labelling requirements."
18 Opp. 12:1-21. B&G still cannot settle on a theory about the effect of cooking. Defendants have
19 demonstrated that the cooking regulation does not create an automatic exception but only that there
20 could be a different NSRL under certain circumstances, which would be the subject of litigation. Mot.
21 6:13-24. B&G has no explanation as to how the *possibility* of a different NSRL down the road makes
22 the pre-lawsuit investigation a sham. Instead, B&G falls back on the allegations it *withdrew* claiming
23 the cooking regulation is vague. Opp. 12:22-13:6. But B&G's position that the regulation is subject
24 to interpretation undercuts B&G's argument that Defendants made false statements. *See* Mot. 7:3-13.
25 Defendants have set forth how the regulation applies. *Id.* 6:13-24. B&G's inconsistent positions on
26 vagueness and what the cooking regulation means cannot make *Defendants'* lawsuits shams.

27       B&G nevertheless argues that Defendants seek to draw inferences in their favor and ignore
28 allegations. Opp. 12:5-7. That is not the case. B&G is attempting to shoehorn into the sham exception

1  disputes about how affirmative defenses can be proven or defeated under Proposition 65.  Where there
2  are such disputes, a Proposition 65 defendant's position does not make the plaintiff's lawsuit a sham
3  when there is a contrary position based on expert testimony or the law.

        2.  *Contested Constitutional Claims Do Not Make the Lawsuits Shams*

5  B&G further argues that Proposition 65 lawsuits on acrylamide are necessarily shams because
6  they are unconstitutional.  *See* Opp. 16:12-28.  But B&G does not dispute that the Proposition 65
7  lawsuits at issue were filed before this Court issued its preliminary injunction on the constitutional
8  issue, before the Ninth Circuit affirmed, and before a final ruling in the case (which has not yet issued);
9  nor does B&G dispute that the constitutional issue was contested, including by the Attorney General.
10 *See* Mot. 12:24-13:8.  Under B&G's argument, Defendants were required to dismiss their lawsuits as
11 soon as the constitutional claims were raised, or at least after this Court issued a preliminary injunction,
12 because there was a contested issue of constitutionality that had not been finally resolved.  That is not
13 the law.  Instead, Defendants properly requested that their lawsuits be stayed.

14  In the end, the only way the Proposition 65 lawsuits could be shams is if no reasonable litigant
15 could adopt the Attorney General's position on the constitutional issue.  Until there is a final ruling on
16 the constitutional question – including on the new acrylamide regulation – Defendants are justified in
17 maintaining their lawsuits.  *See* Mot. 13:9-17.

18  **C.** **B&G has Not Pled the Sham Exception for a Series of Lawsuits**

19  Finally, B&G argues that Defendants' Proposition 65 lawsuits are part of a series of lawsuits
20 filed without regard to the merits and for an unlawful purpose.  Opp. 15:3-16:11. Defendants have
21 shown that they are not.  Mot. 13:18-15:15.

22  B&G ignores what the Court has already stated on this issue: "Even with the low-end success
23 rates of 25 out of 260 and 160 out of 800" in terms of the ratio of settlements to notices of violation,
24 an inference of "a sham operation" is not plausible.  ECF 56 at 12:11-14.  That should settle the matter.

25  Nor does B&G have any response to the Court's finding that these are "low-end success rates."
26 *Id.* at 12:13.  B&G does not dispute that the success rates it pleads exclude *ongoing cases* and that
27 including such cases would change the percentages; nor does B&G contest that there are legitimate
28 reasons that not all Proposition 65 notices of violation are litigated.  *See* Mot. 14:8-18.  Additionally,

1  B&G admits that Defendants have obtained millions of dollars in supposed sham lawsuits. SAC, ¶
2  24. This too defeats the sham exception. ECF 33 at 5:9-14; ECF 56 at 12:20-13:17. Given all of this,
3  B&G's argument to infer a pattern of meritless litigation is implausible.

4        B&G attempts to bolster its argument with speculative and conclusory allegations. *See, e.g.*,
5  Opp. 15:16-20, 16:9-11. These cannot be presumed true. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,
6  545 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). B&G's only specific allegation is that the
7  Attorney General objected to one of Defendant Embry's proposed settlements, from which B&G infers
8  other settlements were illegitimate. *See* Opp. 15:21-16:1. But B&G does not explain how an objection
9  to a *settlement* makes a *lawsuit* meritless or how *one* settlement objection shows a *series* of meritless
10 cases. *See* Mot. 15:10-15. There is simply no basis to infer from one objection to a settlement that
11 Defendants have filed a series of meritless cases.

12 **III.     THERE IS NO STATE ACTION**

13       B&G takes an incredibly broad reading of when a private citizen can be a state actor and has
14 no response to Defendants' showing that adopting B&G's theory would chill private enforcement. *See*
15 Mot. 20:6-26. Nor does B&G dispute that a private citizen can be a state actor only under limited
16 circumstances. *See id.* 16:1-7. B&G's attempt to fit Defendants into those limited circumstances fails.

17       As to the public functions test, all agree a state actor must perform traditional *and exclusive*
18 public functions. Mot. 16:3-4, 10-14; Opp. 17:20-21. This test is met for "very few functions" such
19 as "running elections." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).

20       B&G primarily argues that public health is a *traditional* governmental function. Opp. 17:25-
21 18:2. But the public function test requires the function be *exclusively* governmental. B&G does not
22 dispute that Proposition 65 enforcement actions may be brought by either public prosecutors or private
23 enforcers. *See* Mot. 17:1-11. That is, Proposition 65 contemplates both a state action, which is brought
24 by a public prosecutor (California Health & Safety Code § 25249.7(c)), and a "private action" brought
25 by a private party (*Id.* § 25249.7(d)(1)). B&G has no response to this fatal flaw in its theory.
26 Describing the law as quasi-criminal (Opp. 18:3-15) makes no difference to whether enforcement is
27 exclusive. Under Proposition 65, government enforcement is not exclusive and B&G's failure to cite
28 the provisions of Proposition 65 in this section of its brief (while doing so in other sections) is telling.

As to the remaining state actor tests, B&G relies on the following elements of Proposition 65: (1) private actions cannot commence without notice to the Attorney General, who can prevent a private lawsuit by bringing suit first and who can also send a non-binding letter that the case has no merit (Opp. 18:22-25, 20:3-5, 15-17); (2) the Attorney General has an opportunity to review and object to settlements (*id.* 18:25-27, 20:3-5); and (3) civil penalties (*id.* 19:8-19, 20:5-10). Defendants have already addressed these arguments. Mot. 18:3-19:13, 19:26-20:5.

At the outset, the Attorney General's role prior to commencement of a private lawsuit is far removed from that of Defendants. The Attorney General reviews the notice and decides whether to bring a public lawsuit; if so, the private lawsuit does not go forward. Cal. Health & Safety Code § 25249.7(d). These actions are wholly independent. Mere review of a private party's notice and a separate governmental decision about whether to bring a lawsuit do not convert the private party into a state actor. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 48, 52-54 (2000) (government's "mere approval or acquiescence," "subtle encouragement," or "permission of a private choice" does not create state action). Nor does the Attorney General's ability to send a letter stating the view that the claim lacks merit (Cal. Health & Safety Code § 25249.7(e)(1)(A)) show a close relationship between private enforcers and the State – if anything, there is an arm's distance, potentially adverse relationship. Moreover, the letter does not foreclose a private action, which is an independent decision for the private enforcer. *See id.* The possibility of sanctions does not matter because sanctions are available regardless of whether the Attorney General sends the letter. *Id.* § 25249.7(h)(2).

The Attorney General's later responsibility to review settlements and opportunity to object to them (Cal. Health & Safety Code § 25249.7(f)(5)) shows not a close relationship but independence – indeed adversity. Nor does the Attorney General's position determine whether a state court approves or rejects a settlement, which is based on compliance with Proposition 65 and the reasonableness of penalties and attorneys' fees. *Id.* § 25249.7(f)(4). Although B&G relies on an allegation that a settlement Defendant Embry entered into did not proceed after the Attorney General sent a letter to the parties (Opp. 20:15-20), that does not make Defendants state actors. Even if Defendants decided not to proceed with the settlement because of the objection, that is an independent decision they made.

Nor has B&G pled that payment of civil penalties to the State rises to the level necessary to show state action. Although B&G glancingly relies on penalties paid to the State in the Second Amended Complaint (SAC, ¶¶ 234(e), 237), that is not enough as the financial benefit must be "indispensable" to the government. Mot. 19:6-8. B&G does not so plead.[3]

With respect to the compulsion test, B&G argues that "the Attorney General makes private enforcement of Proposition 65 *possible* by fulfilling his statutory duty of reviewing 60-day notices and proposed settlements." Opp. 20:3-5 (emphasis added). But mere possibility does not equal compulsion. Defendants remain free to file or not file lawsuits after the Attorney General reviews the notices and to enter into settlements and submit them to courts for approval or not regardless of the Attorney General's position. Nor does B&G explain how the availability of penalties *compels* as opposed to encourages private enforcement. *See* Opp. 20:5-10. It bears reiterating that courts "have never held that the mere availability of a remedy for wrongful conduct . . . so significantly encourages the private activity as to make the State responsible." *Sullivan*, 526 U.S. at 53. B&G does not address this case, relying instead on *Tulsa Prof. Collection Services, Inc. v. Pope*, 485 U.S. 478, 487 (1988). Opp. 20:1-3. But unlike the executor appointed by the court in that case, the State did not appoint Defendants and does not control them.

Lastly, B&G's reliance on *Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1981) is misguided. Opp. 18:17-18. Unlike the attachment process at issue in Lugar, which allowed private parties to "jointly engage" the government, Proposition 65 requires plaintiffs to bring their own actions without the State's help. Those are not the hallmarks of a relationship close enough to constitute state action.

IV. **CONCLUSION**

For all of the above reasons, Defendants' motion to dismiss should be granted.

Respectfully submitted,

Dated: February 28, 2023                    **NICHOLAS & TOMASEVIC, LLP**

                          By:   */s/ Jake W. Schulte*
                                CRAIG M. NICHOLAS (Bar No. 178444)

---

[3] B&G again improperly relies on material outside the pleadings – in this case, a summary of penalties. *See* Opp. 19:8-11. The Court should not consider this material. *See supra* n.1. In any event, B&G's speculation about what would happen in the absence of funding from private enforcement is conclusory and cannot be presumed true. *Ashcroft v. Iqbal*, 556 U.S. at 681.

cnicholas@nicholaslaw.org
SHAUN MARKLEY (Bar No. 291785)
smarkley@nicholaslaw.org
JAKE W. SCHULTE (Bar. No. 293777)
jschulte@nicholaslaw.org
**NICHOLAS & TOMASEVIC, LLP**
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

NOAM GLICK (Bar No. 251582)
noam@glicklawgroup.com
**GLICK LAW GROUP, P.C.**
225 Broadway, Suite 2100
San Diego, CA 92101
Tel: (619) 382-3400 | Fax: (619) 615-2193

Attorneys for Defendants
KIM EMBRY and ENVIRONMENTAL HEALTH ADVOCATES, INC.