1  CRAIG M. NICHOLAS (Bar No. 178444)
   cnicholas@nicholaslaw.org
2  SHAUN MARKLEY (Bar No. 291785)
   smarkley@nicholaslaw.org
3  JAKE W. SCHULTE (Bar. No. 293777)
   jschulte@nicholaslaw.org
4  **NICHOLAS & TOMASEVIC, LLP**
   225 Broadway, 19th Floor
5  San Diego, California 92101
   Tel: (619) 325-0492
6  Fax: (619) 325-0496

7  NOAM GLICK (Bar No. 251582)
   noam@glicklawgroup.com
8  **GLICK LAW GROUP, P.C.**
   225 Broadway, Suite 2100
9  San Diego, CA 92101
   Tel: (619) 382-3400
10 Fax: (619) 615-2193

11 Attorneys for Defendants
   KIM EMBRY and
12 ENVIRONMENTAL HEALTH ADVOCATES, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&G FOODS NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> KIM EMBRY and ENVIRONMENTAL HEALTH ADVOCATES, INC., acting as enforcement representatives under California Proposition 65 on behalf of the State of California, <br><br> Defendants. | CASE NO. 2:20-CV-00526-KJM-DB <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SANCTIONS UNDER RULE 11** <br><br> **Hearing Date**: March 10, 2023 <br> **Hearing Time**: 10:00 a.m. <br> **Courtroom**: 3 (15th Floor) <br><br> **District Judge**: Hon. Kimberly J. Mueller <br> **Magistrate Judge**: Hon. Deborah Barnes <br><br> **Complaint Filed**: March 6, 2020 <br> **Complaint Dismissed**: October 7, 2020 <br> **Mandate Issued**: May 4, 2022 <br> **FAC Filed**: July 7, 2022 <br> **FAC Dismissed**: November 3, 2022 <br> **SAC Filed**: November 23, 2022 <br> **Trial Date**: None Set |

## I. INTRODUCTION

B&G's opposition depends on the premise that somewhere in its lengthy Second Amended Complaint there must be at least one non-frivolous allegation – and that this one allegation necessarily defeats sanctions. But that is not what Rule 11 provides. B&G relies on an old Ninth Circuit case to make this argument. But the Ninth Circuit later provided in an *en banc* opinion: "the mere existence of one non-frivolous claim is not dispositive," noting that otherwise "a party that has one non-frivolous claim may pile on frivolous allegations without a significant fear of sanctions." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363-64 (9th Cir. 1990) (*en banc*). That remains the law. B&G's misstatement to the contrary is an attempt to avoid responsibility for a scattershot complaint.

Defendants do not seek sanctions based on every statement in the Second Amendment Complaint – or even every wrong statement. Given Rule 11's stringent standard, Defendants focus on the most egregious violations: (1) allegations that are contradicted by B&G's *own* allegations and exhibits; and (2) theories that cannot meet the sham exception for objective baselessness because they depend on B&G's views on contested propositions of law, including where the California Attorney General is aligned with Defendants. B&G is unable to show that these allegations and theories are justified.

## II. THE *CURRENT* LEGAL STANDARD

Defendants previously set forth the legal standard governing Rule 11 motions. ECF 68-1, Mot. 5:2-27. B&G does not dispute that the motion is properly before the Court. *See* ECF 71, Opp. 6 n.4.

But because B&G relies on old Rule 11 law, Defendants need to correct that area of the standard. In particular, B&G argues that the entire Second Amended Complaint must be frivolous for sanctions to issue, relying on the 1986 Ninth Circuit case *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir. 1986). Opp. 1:21-26, 8:14-17, 13:13-15. Whatever the merits of B&G's interpretation of that case, in 1990 the Ninth Circuit addressed the issue *en banc*, thereby superseding the 1986 case (and others). In *Townsend v. Holman Consulting Corp.*, the Ninth Circuit specifically addressed the interpretation of *Golden Eagle* that B&G adopts that "'Rule 11 permits sanctions only when the pleading as a whole is frivolous or of a harassing nature, not when

one of the allegations or arguments in the pleading may be so characterized.'" 929 F.2d at 1363 (quoting *Murphy v. Business Cards Tomorrow, Inc.,* 854 F.2d 1202, 1205 (9th Cir. 1988)) (emphasis deleted). The Ninth Circuit then stated: "As an en banc court, we use this opportunity to overrule *Murphy* [the case quoted above]." *Id.*

Among the reasons *Townsend* gave for overruling the statement of the law in *Murphy* on which B&G now relies more than 30 years later is the following:

> It would ill serve the purpose of deterrence to allow as does *Murphy*, a "safe harbor" for improper or unwarranted allegations. Under *Murphy*, a party that has one non-frivolous claim may pile on frivolous allegations without a significant fear of sanctions.

929 F.2d at 1363. *Townsend* also notes: "The relation of the allegedly frivolous claim to the pleading as a whole is thus a relevant factor, but the mere existence of one non-frivolous claim is not dispositive." *Id.* at 1364. It is entirely unclear how B&G's counsel could have missed these repeated statements as B&G discusses *Townsend* in its brief and even touts it as "seminal." Opp. 8:18-9:4. In any event, as the law stands today, "F.R.Civ.P. 11 sanctions may be imposed when a portion, not the entirety, of a pleading is frivolous." *Altmann v. Homestead Mortg. Income Fund*, 887 F.Supp.2d 939, 955 (E.D. Cal. 2012).

### III. B&G DOES NOT REFUTE THE RULE 11 VIOLATIONS

#### A. The Court Should Disregard Much of B&G's Argument

Given the legal standard, the Court should disregard those portions of B&G's argument that address allegations that are not included in the sanctions motion. *See, e.g.*, Opp. 11:14-20, 12:3-20. Defendants do not have to show that everything B&G pled is frivolous and have instead focused on the most egregious violations.

The Court should also disregard B&G's attempt to tar Defendants based on issues that have nothing to do with the allegations that are before the Court on the sanctions motion – such as the merits of Proposition 65 and Defendants' consent decrees (that courts have approved) and the like. *See* Opp. 3:25-4:2, 4:4-5:5. Nor do B&G's counsel's qualifications matter. *See* Opp. 3:6-10. If anything, this makes things worse as they should have known better.

1       B&G attempts to make much of its bold request that Defendants provide certain material to support the motion. *See* Opp. 6:12-7:14, 11:4-8, 17:13-18, 17:24-28. This is a red herring. Rule 11 requires that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). B&G cannot flip this requirement to make Defendants responsible for B&G's allegations. Defendants were not required to expend yet more time on a case that has been dismissed twice and should be dismissed again. Defendants nevertheless provided two documents confirming they provided all the requisite materials to the Attorney General prior to initiating the underlying state court actions.

      The Court should also disregard B&G's Appendix as it is a blatant attempt to avoid page limits.

### B.     Frivolous Factual Contentions

      Defendants have demonstrated that the Second Amended Complaint contains five factual contentions without evidentiary support in violation of Rule 11(b)(3). Mot. 6:4-9:2. B&G often ignores the problems Defendants raised with its allegations and when it does address the issues at hand, cannot mount a serious defense of its allegations.

      First, Defendants showed that B&G's allegation that attorney Noam Glick made a false statement that he consulted with an expert depended entirely on an exhibit that does not so demonstrate. Mot. 6:11-25. The exhibit consists of responses to form interrogatories that *object* to inquiries into *expert* communications and respond *subject* to that objection. ECF 57, SAC Ex. F at 8:21-10:3, 10:22-11:12. Given the objections, the responses do not show there were no expert communications. Other than baldly state that this is not true, B&G's only substantive response is that California discovery law makes the objections invalid. Opp. 17:1-9. B&G presents no evidence it raised this point with the state court or even in a meet and confer with Defendants' counsel. But even were B&G correct, that would not turn the interrogatory responses into admissions. Rather, the interrogatory responses would have to be amended to delete the objections and then respond anew. *See* California Code of Civil Procedure § 2030.300(a) ("the propounding party may move for an order compelling a *further response* if," among other grounds, the "objection to an interrogatory is without merit") (emphasis added). Absent a further response without the pertinent objections, there is no basis to conclude that the form interrogatories show the lack of consultation with an expert. The new

documents to which B&G points all are personal to Defendants' knowledge – as opposed to attorney Glick's – or contain the same objections or both.

Second, Defendants demonstrated that B&G's allegation that Defendants misrepresented that they filed valid certificates of merit lacks evidentiary support given B&G's concessions that Defendants provided certificates of merit before filing their lawsuits to which the Attorney General did not object despite being required to do so if the Attorney General believes the certificates lack merit. Mot. 6:26-7:14. B&G's attempt to justify its allegation relies primarily on discovery. *See* Opp. 16:9-17, 17:1-9. The interrogatory responses are addressed immediately above. Defendant Embry's statements in her deposition are irrelevant because she did not submit the certificate of merit – B&G concedes that her attorney Noam Glick did. SAC, ¶¶ 94-96, 100. Proposition 65 requires "that *the person executing the certificate* has consulted with one or more persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other data regarding the exposure to the listed chemical" and that "*the person executing the certificate* believes there is a reasonable and meritorious case for the private action." Cal. Health & Safety Code § 25249.7(d)(1).

That Defendants later amended their notices of violation does not matter, contrary to B&G's argument. *See* Opp. 16:18-27. The Attorney General was *required* to object to the original notices of violation if their certificates of merit did not show the action had merit. Cal. Health & Safety Code § 25249.7(e)(1)(A). B&G concedes the Attorney General did not object. SAC, ¶¶ 63, 66. Given this, B&G cannot rely on the later amendment to show the original was deficient. In any event, Defendants' amended notices simply add the relevant laboratory results and analysis that had *already* been conducted (and submitted to the Attorney General) prior to the original notices being issued. *See* ECF 68-2, RJN Exs. C, D. This was done voluntarily, in no small part, to put B&G on notice that its allegations regarding Defendants' pre-suit investigation (or lack thereof) were false. Nonetheless, B&G persisted with its baseless allegations. SAC, ¶¶ 124, 127.

Third, Defendants showed that B&G's allegation that "Defendants misrepresented to the Court that acrylamide is 'known' to the State to cause cancer" is not false given that B&G concedes that acrylamide is listed under Proposition 65 as a carcinogen, the initiative provides that "the Governor shall cause to be published a list of those chemicals known to the state to cause cancer," and the Ninth

1  Circuit in the appeal of this case found: "acrylamide is on the list of chemicals 'known to the state to
2  cause cancer.'" Mot. 7:15-23 (citations omitted). Because Proposition 65 identifies a list of
3  "chemicals known to the state to cause cancer" (Cal. Health & Safety Code § 25249.8(a)), and because
4  acrylamide is on that list, there is no basis to argue the statement at issue was false. Defendants were
5  not required to defer to evidence as to whether acrylamide actually causes cancer as B&G argues. *See*
6  Opp. 13:16-24. They were entitled to rely on the label Proposition 65 places on acrylamide in pleading
7  their Proposition 65 case.

8  Fourth, Defendants demonstrated that B&G's "spoliation" claim included the factual
9  allegation that a laboratory that conducted tests of B&G's products "destroyed the samples at Ms.
10 Embry's instruction" and cited in support Exhibit 4 to Exhibit J (ECF 57-10, Ex. J to SAC) to the
11 Declaration of David Kwasniewski. Mot. 7:24-8:2 (quoting SAC, ¶ 80). Defendants further
12 demonstrated that Exhibit 4 to Exhibit J contained no such statement and that B&G's attorneys
13 possessed evidence in another case showing that it is *the lab's policy* to destroy samples and made that
14 allegation in that case. Mot. 8:2-5. B&G largely avoids the issue. Opp. 9:22-10:10, 10:22-28, 11:4-
15 13. Defendants did not contend that the entire "spoliation" claim violates Rule 11 – although that
16 would have been reasonable – to precisely avoid the back and forth in which B&G engages. Suffice
17 it to say that Defendants have not conceded there has been any "spoliation."

18 In any event, when B&G purports to address the Rule 11 issue actually before the Court, there
19 is nothing but misdirection. B&G first states: "The exhibit cited includes a statement by Defendants
20 that they were not guilty of spoliation because their lab was not legally required to preserve evidence.
21 (Dkt. 57-10 at 9 (Ex. J to SAC).)" But that is not the allegation at issue, which is that Defendant
22 Embry instructed the lab to destroy samples. Moreover, the cite to page 9 of ECF 57-10 is Exhibit 7
23 *not* Exhibit 4, on which the allegation in the Second Amended Complaint relies. That is, B&G has
24 abandoned the support it proffered for its allegation (Exhibit 4) and its new support (Exhibit 7) does
25 not address the allegation in the Second Amended Complaint.

26 B&G next points to a document included with its opposition papers that also fails to support
27 the allegation that Defendant Embry instructed the lab to destroy the samples. Opp. 10:15-20 (relying
28 on ECF 72-9).

B&G also belatedly relies on a laboratory form to suggest that disposal of the sample was Defendant Embry's choice. *See* Opp. 10:28-11:3 (relying on ECF 72-10). This form, however, is *undated*. As noted above, in 2021, B&G's attorneys argued to the Orange County Superior Court that the evidence showed that *the lab's policy* was to destroy samples. RJN, Ex. M at 4:4-6. There is no basis to deduce from the form that it was being used when the samples at issue were tested, which B&G concedes was back in 2019 (*see* SAC, ¶ 80) – before the 2021 Orange County Superior Court case that invoked the lab's policy.

Notably, B&G's opposition brief specifically states: "the product samples on which Defendants predicate their lawsuits against B&G Foods were destroyed as a matter of 'policy' by their testing laboratory." Opp. 10:4-6. That is, B&G is now arguing consistently with its attorneys' position in the Orange County Superior Court case and inconsistently with the Second Amended Complaint. This change is important as the Second Amended Complaint pleads that Defendants "intentionally and willfully destroyed" the samples (SAC, ¶ 75) as part of B&G's attempt to make Defendants appear to be purposefully manipulating testing results (SAC, ¶ 76). B&G's retreat on this issue undercuts its claims.

Fifth, Defendants showed that B&G pled they were aware of an affirmative defense that would *defeat* the Proposition 65 lawsuits based on acrylamide being the result of cooking and that this shows Defendants failed to conduct an adequate pre-lawsuit investigation and Defendants' attorney made false statements in the certificates of merit. Yet Defendants also plead "the *alternative NSRL* that would be required by Cal. Code Regs. § 25703(b)(1)" (SAC, ¶ 123 (emphasis added)) – the cooking regulation – and previously argued that the cooking regulation is vague (ECF 45, ¶¶ 73-74). Mot. 8:6-9:2. Because B&G concedes that the cooking regulation does not automatically defeat Proposition 65 lawsuits, the allegations at issue are false. B&G does not address these points. Opp. 13:27-15:12. Nor does B&G acknowledge that the Attorney General has brought at least two acrylamide Proposition 65 cases with respect to snack foods (RJN Exs. G, H) that would be entirely without merit under B&G's theory. Instead, B&G argues that its products do not exceed the NSRL based on *B&G's test results* and consumption patterns. That has nothing to do with whether the cooking regulation

1 automatically exempted the products from Proposition 65 – particularly during the pre-lawsuit
2 investigation when Defendants were unaware of B&G's test results.

**C.	Frivolous Theories**

In addition, Defendants have demonstrated that the Second Amended Complaint attempts to fit its allegations in four areas into the sham exception for objectively baseless lawsuits based on B&G's views of the law when there are competing legal views. Yet the Court has held that the standard for this sham exception is that "no reasonable litigant could realistically expect success on the merits." ECF 56 at 8:19-20 (internal quotation marks omitted). Thus, B&G's allegations cannot meet the standard and violate Rule 11(b)(2). Mot. 9:3-12:3.

Despite Defendants making very plain that they are relying on the mismatch between B&G's legal contentions in contested areas of the law and the standard for objective baselessness, B&G never grapples with this point. Rather, for each of the four areas at issue, B&G just reasserts its view of why it will prevail.

First, as to B&G's theory that Defendants' lawsuits were shams because the products did not exceed the NSRL and therefore B&G has an affirmative defense, B&G attempts to denigrate Defendants' expert's view to the contrary and relies on consumption patterns. Opp. 15:1-6. But Defendants showed these are contested issues that do not meet the standard for objective baselessness given that the expert has opined that the products exceed the NSRL by many times based on a single serving. Mot. 9:23-10:9. Even were B&G to prevail in the end in state court, that would not make the lawsuits objectively baseless.

Second, as to B&G's theory that the cooking regulation provides an affirmative defense that defeats the Proposition 65 lawsuits, B&G fails to grapple with Defendants' showing that the cooking regulation actually just provides for an alternative NSRL under certain circumstances. Mot. 10:10-26; Opp. 14:14-26. If B&G wants to press an argument in state court that the plain language of the regulation requires an automatic exemption despite referring to an alternative NSRL, B&G may do so. If B&G wants to argue that the alternative NSRL is above the level of the products, B&G may do that as well. But either way, these are contested matters – the first based on the regulation itself and

the second for the reasons discussed in the prior paragraph – that do not meet the standard for objectively baseless lawsuits.

Third, as to B&G's theory that the Proposition 65 lawsuits are shams because Defendants know the products at issue do not cause cancer, B&G nowhere acknowledges this Court's statement that "Proposition 65 enforcers do not need to independently determine whether a listed chemical causes cancer." ECF 56 at 9:11-12. Nor does B&G deal with the remainder of Defendants' showing – that acrylamide is a listed chemical that comes within this ruling. *See* Mot. 10:27-11:12. Rather, B&G essentially contests that acrylamide is properly on the list. *See* Opp. 15:23-25. That is not responsive to the Court's ruling. In any event, Defendants' and the Court's views are certainly not objectively baseless.

Fourth, B&G's theory that the Proposition 65 lawsuits are shams because there is a defense that they would require unconstitutional forced speech is more of the same. B&G does not acknowledge the contested nature of this argument or that the Attorney General believes the lawsuits are constitutional. *See* Mot. 11:13-12:3; Opp. 15:21-25. Whatever the end result, the Attorney General's position – which is congruent with Defendants' – is not objectively baseless.

## IV. B&G'S COUNTER-REQUEST FOR SANCTIONS IS FRIVOLOUS

B&G seeks sanctions on the mistaken belief that Defendants are improperly asking the Court to resolve this case on the merits through the Rule 11 motion. *See* Opp. 18:4-19:3. That is simply wrong as a factual matter. The parallel motion to dismiss explains why this case should be dismissed. The sanctions motion focuses on areas that not only require dismissal but are so improper that they are frivolous.

Given that B&G has miscited the law governing this motion by relying on a superseded Ninth Circuit case and largely ignored the reasons Defendants believe sanctions are warranted, B&G's counter-request for sanctions is not just misguided but is itself frivolous. But Defendants do not intend to prolong this case any further by seeking sanctions for B&G's counter-request.

## V. CONCLUSION

The Second Amended Complaint's multiple failings overshadow the complaint as a whole. Accordingly, Defendants' motion for sanctions should be granted. B&G's counter-request for

sanctions should be denied. If the Court finds that B&G violated Rule 11, Defendants request an opportunity to brief and submit evidence on the appropriate scope of sanctions. *See, e.g., Nat-Immunogenics Corp. v. Newport Trial Grp.,* 2020 WL 5239856, at *10 (C.D. Cal. Aug. 3, 2020) (granting motion for sanctions and affording movants "20 days" to "file a motion and affidavit supporting their reasonable expenses and fees incurred" on account of respondents' sanctionable conduct).

Respectfully submitted,

Dated: February 28, 2023 **NICHOLAS & TOMASEVIC, LLP**

By: */s/ Jake W. Schulte*
CRAIG M. NICHOLAS (Bar No. 178444)
cnicholas@nicholaslaw.org
SHAUN MARKLEY (Bar No. 291785)
smarkley@nicholaslaw.org
JAKE W. SCHULTE (Bar. No. 293777)
jschulte@nicholaslaw.org
**NICHOLAS & TOMASEVIC, LLP**
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

NOAM GLICK (Bar No. 251582)
noam@glicklawgroup.com
**GLICK LAW GROUP, P.C.**
225 Broadway, Suite 2100
San Diego, CA 92101
Tel: (619) 382-3400 | Fax: (619) 615-2193

Attorneys for Defendants
KIM EMBRY and ENVIRONMENTAL HEALTH ADVOCATES, INC.