1   CRAIG M. NICHOLAS (Bar No. 178444)
    cnicholas@nicholaslaw.org
2   JAKE W. SCHULTE (Bar. No. 293777)
    jschulte@nicholaslaw.org
3   **NICHOLAS & TOMASEVIC, LLP**
    225 Broadway, 19th Floor
4   San Diego, California 92101
    Tel: (619) 325-0492
5   Fax: (619) 325-0496

6   NOAM GLICK (Bar No. 251582)
    noam@glicklawgroup.com
7   **GLICK LAW GROUP, P.C.**
    225 Broadway, Suite 2100
8   San Diego, CA 92101
    Tel: (619) 382-3400
9   Fax: (619) 615-2193

10  R. JEFFREY NEER (Bar No. 190417)
    jeff@forumllp.com
11  **FORUM LAW PARTNERS, LLP**
    803 Deep Valley Dr.
12  Rolling Hills Estates, California 90274
    Tel: (310) 974-8800
13  Fax: (310) 974-8801

14  Attorneys for Defendants
    KIM EMBRY and ENVIRONMENTAL
15  HEALTH ADVOCATES, INC.

16              **UNITED STATES DISTRICT COURT**

17              **EASTERN DISTRICT OF CALIFORNIA**

18
    B&G FOODS NORTH AMERICA, INC.,          Case No. 2:20-cv-00526-KJM-DB
19
                                            **OPPOSITION TO *EX PARTE* APPLICATION
20              Plaintiff,                   TO AMEND CASE SCHEDULE**

21          v.

22  KIM EMBRY and ENVIRONMENTAL            **Judge**: Hon. Kimberly J. Mueller
    HEALTH ADVOCATES, INC., acting as      **Courtroom**: 3
23  enforcement representatives under California
    Proposition 65 on behalf of the State of
24  California,                            **SAC Filed:**  November 23, 2022
                                           **Trial Date:**  None Set
25              Defendants.

26

27

28

─────────────────────────────────────────────

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................................. 1

II.     RELEVANT BACKGROUND ........................................................................................... 5

III.    ARGUMENT ....................................................................................................................... 6

IV.     CONCLUSION .................................................................................................................... 8

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Cases**

*Am. Cas. Co. of Reading, Pa. v. Krieger*,
 160 F.R.D. 582 (S.D. Cal. 1995)..................................................................................... 3

*Hood v. Hartford Life & Acc. Ins. Co.*,
 567 F.Supp.2d 1221 (E.D. Cal. 2008)............................................................................. 7

*Hufnagle v. Rino Int'l Corp.*,
 2012 WL 6553743 (C.D. Cal. Dec. 14, 2012) ............................................................... 8

*Johnson v. Mammoth Recreations, Inc.*,
 975 F.2d 604 (9th Cir. 1992)........................................................................................... 7

*Little v. City of Seattle*,
 863 F.2d 681 (9th Cir. 1988)........................................................................................... 6

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
 883 F. Supp. 488 (C.D. Cal. 1995)................................................................................. 8

*Shelton v. Am. Motors Corp.*,
 805 F.2d 1323 (8th Cir. 1986)......................................................................................... 4

*United States ex rel. Terry v. Wasatch Advantage Grp., LLC*,
 327 F.R.D. 395 (E.D. Cal. 2018)..................................................................................... 7

*Zivkovic v. Southern Calif. Edison Co.*,
 302 F3d 1080 (9th Cir. 2002)........................................................................................... 7

**Rules**

E.D. Cal. L.R. 144(c) .................................................................................................... 1, 8

E.D. Cal. L.R. 144(d) ........................................................................................................ 8

E.D. Cal. L.R. 144(e) .................................................................................................... 1, 8

E.D. Cal. L.R. 231........................................................................................................ 1, 8

E.D. Cal. L.R. 540........................................................................................................ 1, 8

Fed. R. Civ. P. 16(b) ......................................................................................................... 6

**I.      INTRODUCTION**

Any discovery delays in this case are all of Plaintiff B&G Foods North America, Inc.'s ("B&G") own making, and the instant *Ex Parte* Application should be denied. There is no good cause to grant the instant *Ex Parte*.  Indeed, the use of an *ex parte* application is inappropriate, and this should have been done by noticed Motion.[1]

B&G has not been diligent.  Rather, B&G served wildly overly broad discovery requests, asking Defendants to produce all documents from every one of the more than 700 separate Notices of Violation of Proposition 65 ("NOV") concerning acrylamide that Defendants have ever issued. The discovery requests also clearly called for attorney client privileged communications and attorney work product.  Defendants Kim Embry ("Embry") and Environmental Health Advocates, Inc. ("EHA") rightfully objected which has resulted in numerous efforts to meet and confer, and two prior Motions to Compel brought by B&G having been denied.

To be clear, Defendants fully complied with their discovery obligations and have already provided substantive responses to all discovery requests and produced ample documents and ESI evidencing the pre-suit investigative process for the two B&G cookie products at issue, showing compliance with the Proposition 65 pre-suit requirements.

Never satisfied with either the clear evidence that the pre-suit requirements were met, and unwilling to compromise, B&G instead has plowed forward with a series of ill-conceived motions that have repeatedly been denied.  *See* Order dated October 10, 2023 (Dkt. No. 125 – "Plaintiff's August 10, 2023 motion to compel (Dkt. No. 106) is denied."; B&G failed to comply with Local Rule 251 by not adequately describing what discovery responses were actually in dispute); Order dated October 10, 2023 (Dkt. No. 125 – "Plaintiff's August 25, 2023 motion to compel (Dkt. No. 111) is

---

[1] The Local Rules of the Eastern District recognize limited situations in which *ex parte* applications may be filed: *ex parte* motions to extend time where a stipulation cannot reasonably be obtained as where a defendant has not been served, or where there is an application to shorten time (L.R. 144(c) and (e)); injunctive relief (L.R. 231); and default judgment (L.R. 540).  B&G's request does not fall within any of these situations.  Consistent with the Local Rules, the process by which the Court could entertain such requests would be for a party to file a motion to amend the scheduling order and submit with that motion an application for an order shortening time to hear the matter, with notice to the opposing party, and on good cause.  To the extent that the motion needs to be heard on shortened time due to the pending deadline, Plaintiff should have used Local Rule 144(e).

OPPOSITION TO EX PARTE APPLICATION TO AMEND CASE SCHEDULE

1    denied."; B&G failed to meet and confer with third party IEH before filing its Joint Statement);  Order

2    dated December 19, 2023 (Dkt. No. 136 – "Plaintiff's November 20, 2023, motion to compel (Dkt.

3    No. 130) is denied without prejudice to renewal in all other respects."; B&G improperly combined

4    five discovery items in a single Joint Statement, and its briefing was "entirely vague and

5    conclusory.").

6        In a continuing pattern of failing to follow the Court's Orders, Plaintiff recently set three

7    separate Motion to Compel hearings on the same date and time (January 26, 2024, at 10:00 a.m.; Dkt.

8    Nos. 137, 138, 139), in direct violation of the Court's Order dated December 18, 2023.  *See* Dkt. No.

9    136 at fn. 1 ("Moreover, multiple discovery motions should be noticed for hearing on **separate dates**

10    so that each motion is heard on a distinct date.") (emphasis added).

11        The reason for this explicit restriction is obvious:  To avoid unduly burdening the Court and

12    opposing counsel with having to deal with multiple filings on the same date.  However, Plaintiff

13    ignored this unambiguous Order and set three hearings (and expected opposing counsel to respond to

14    three separate Joint Statements) within less than a week and all at the same time.  Defendants' counsel

15    repeatedly told Plaintiff's counsel this course was improper.  Undeterred, Plaintiff insisted on this

16    course until – at the last minute – it reset the hearing dates (*see* Dkt. Nos. 140, 141, 142) to not get

17    embarrassed and blown out a third time (and likely with prejudice to refiling) on procedural grounds

18    by the Court.  In short, the six-month delay in resolving the discovery dispute is entirely of Plaintiff's

19    own making.

20        It is important to note that for every Proposition 65 NOV that Defendants have ever issued,

21    including the two acrylamide NOVs served on B&G, the same pre-suit investigation is undertaken

22    by Embry/EHA: (1) the product is purchased; (2) the product is sent for testing to an accredited

23    laboratory; (3) an analysis is performed by a qualified expert; and (4) if the expert opines the

24    consumer product contains a listed chemical beyond the acceptable level of exposure under

25    Proposition 65; (5) then the supporting factual materials are supplied to the Attorney General as part

26    of certifying the merit of the NOV and initiating an enforcement action.  Schulte Dec., ¶ 2.  Simply

27    put, Defendants' enforcement actions are not "shams."

28

Unsatisfied, B&G seeks voluminous documents and ESI related to <u>all</u> 700+ acrylamide NOVs and citizen enforcement actions brought by Embry/EHA.   To disprove a negative (i.e., that Embry/EHA's actions are <u>not</u> "shams"), Defendants offered to produce a random sampling of documents and ESI for a representative portion of acrylamide NOVs, which will demonstrate that Embry/EHA abide by all statutory requirements before prosecuting Proposition 65 actions. However, B&G has rejected any compromise and insists that Defendants produce <u>tens of thousands</u> of documents and ESI for the 700+ acrylamide NOVs Embry/EHA served over half a decade. This position is unreasonable considering Plaintiff's "sham" allegations are entirely *speculative*.

As for alleged "interference" with B&G's discovery directed to third parties, this is fiction. B&G has issued improper subpoenas to a laboratory that Defendant Embry used to test the cookies, IEH Laboratories.   IEH successfully opposed B&G's motion to compel, and then subsequently complied with the subpoena once it was properly issued.

As for expert Dr. John Meeker, Defendants have made him available for deposition.   Dr. Meeker has produced 139 documents related to his engagement on the two cookie products at issue.

As for the latest outrage, B&G only recently issued[2] **six (6) deposition and document subpoenas directed at Defendants' counsel**.[3]   B&G's subpoenas raise significant concern for a multitude of reasons.

*First,* deposing an opponent's counsel is strongly disfavored and only permitted in limited circumstances.   Courts are reticent to permit such behavior given its propensity to "lower the bar." *Am. Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 587 (S.D. Cal. 1995) (given "the negative

---

[2] B&G provided notice of the subpoenas on December 14, 2023, and attempted service through a process server the same day.  Defendants' counsel accepted service on December 15, 2023.  The suspect timing of B&G's subpoenas (clearly intended to harass opposing counsel during the holidays) required Defendants' counsel to expend substantial resources before and after Christmas to promptly bring motions to quash.  Schulte Dec., ¶ 3

[3] B&G originally served deposition and document subpoenas on six attorneys for Defendants: Craig Nicholas, Noam Glick, Shaun Markley, Jake Schulte, R. Jeffrey Neer, and Janani Natarajan.  B&G later withdrew its subpoenas to Mr. Neer and Ms. Natarajan.  Messrs. Nicholas, Glick, Schulte, and Markley have filed motions to quash.  Schulte Dec., ¶ 4; and *see* E.D. Cal. Nos. 2:24-mc-00002-DAD-DB (Glick MTQ), 2:24-mc-00003-DJC-CKD (Schulte MTQ), 2:24-mc-00011-DAD-JDP (Markley MTQ), 2:24-mc-00014-DAD-JDP (Nicholas MTQ).

impact that deposing a party's attorney can have on the litigation process, the taking of opposing counsel's deposition should be permitted only in limited circumstances, and [] the party seeking to depose another party's attorney must demonstrate the propriety and need for the deposition."); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) ("We view the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed only in limited circumstances.")  This is because, among other reasons, (1) both the attorney-client privilege and work-product doctrine are implicated when an attorney deposes his or her adversary; (2) if there is a fear that counsel may be deposed, it could chill a client's candor with their lawyer; and (3) attorneys who might be deposed about their knowledge of a case may shield themselves from relevant facts, resulting in less effective representation.  Thus, B&G's subpoenas are inherently suspect without even getting to the merits.

*Second,* B&G fails to meet its burden in establishing the *Shelton* factors necessary to depose its **opponent's counsel**.  Among other things, *Shelton* requires the discovery sought be non-privileged.  Yet, a cursory review of the subpoenas reveal they require the disclosure of privileged attorney-client communications and protected attorney work product.  Hence, the discovery sought by the attorney subpoenas easily fail the *Shelton* test.  To circumvent this prohibition, B&G claims (for the first time, and nearly 4 years into the action) that the "crime-fraud exception" applies, entitling it to pierce the requisite privileges and obtain Defendants' counsel's documents and testimony.  However, B&G fails to meet its burden in raising the crime-fraud exception.  Outside of B&G's unfounded *allegations* regarding Defendants' "sham" Proposition 65 enforcement actions, there is no factual evidence (let alone a preponderance of the evidence) suggesting fraud.  Moreover, B&G's counsel provided no evidence during the meet and confer process, nor has any evidence ever been presented to the Court, or a factual finding made therein, that would support a crime-fraud exception determination by this Court.  Schulte Dec., ¶ 5.

*Third,* putting aside the overarching privilege issue (which provides the easiest basis to quash the attorney subpoenas), the subpoenas also impose an undue burden because they demand the production of documents the Court has not yet ruled are relevant or discoverable.  As noted above,

1  that a discovery dispute remains unresolved falls squarely on B&G's multiple procedural failings in

2  bringing its myriad Motions to Compel, which have repeatedly been denied.

3       *Fourth,* B&G cannot have served the attorney subpoenas for any other purpose than to annoy

4  and harass Defendants and their counsel.  The timing of notice of the subpoenas (December 14, 2023)

5  appears to be no accident.  It forced Defendants' counsel to scramble their holiday schedules to

6  promptly draft substantial motions before and after Christmas given that B&G refused to withdraw

7  the subpoenas notwithstanding offering no evidence outside its conclusory *allegations* to support its

8  11th hour crime-fraud exception push.  Until just now, and for nearly four years since initiating this

9  action, neither B&G nor its counsel ever mentioned "crime-fraud exception" or that it sought to pierce

10 privilege.  B&G is represented by sophisticated counsel who cannot have thought it would be

11 permitted to depose its opponent's counsel without actual evidence (which they have not presented

12 to Defendants or the Court to date) beyond its mere *allegations*.

13 **II.     RELEVANT BACKGROUND[4]**

14      On June 29, 2023, B&G served Embry and EHA with Requests for Production of Documents.

15 The following day, June 30, 2023, B&G served Embry and EHA with Interrogatories and Requests

16 for Admission.  In response, Embry and EHA served timely objections to each of B&G's discovery

17 requests on July 28, 2023.   Thereafter, Defendants produced their supplemental responses and

18 document production on September 22, 2023.  In addition to supplementing their responses, producing

19 documents, and making witnesses available to testify, Defendants' counsel also engaged in good faith

20 ESI search protocol discussions with B&G's counsel.  Schulte Dec., ¶ 6.

21      Unsatisfied with the discovery responses, B&G presented a Joint Statement outlining the

22 alleged discovery disputes on October 6, 2023.  Dkt. 123.  The Court issued an Order denying this

23 Motion to Compel on October 10, 2023, without oral argument.  *See* Order dated October 10, 2023

24 (Docket No. 125 – "Plaintiff's August 10, 2023 motion to compel (Dkt. No. 106) is denied."; B&G

25 failed to comply with Local Rule 251 by not adequately describing what discovery responses were

26 actually in dispute).

27 ────────────────

28 [4] Defendants will not repeat the long procedural history of the case here.  *See, e.g.,* Dkt. Nos. 126 at §
   2, 85-1 at § 2.

OPPOSITION TO EX PARTE APPLICATION TO AMEND CASE SCHEDULE

Unbowed, and only minutes after a perfunctory meet and confer call ended, B&G circulated a second Joint Statement for the very same discovery issues on November 9, 2023, which was wildly deficient and failed to comply with local rules for page length.  After significant reduction in page length, this second Joint Statement was subsequently filed on November 21, 2023.  Dkt. 132.  The Court heard argument from all counsel on December 15, 2023, and thereafter issued its Order denying virtually all of the substantive relief requested by B&G.  *See* Order dated December 18, 2023, (Dkt. No. 136 – "Plaintiff's November 20, 2023, motion to compel (Dkt. No. 130) is denied without prejudice to renewal in all other respects."; B&G improperly combined five discovery items in a single Joint Statement, and its briefing was "entirely vague and conclusory.").

In a continuing pattern of failing to follow the Court's Orders and local rules, B&G then held another perfunctory meet and confer call on January 3, 2024, and thereafter circulated a Joint Statement and set three separate hearings on the same date and time (January 26, 2024, at 10:00 a.m.; Dkt. Nos. 137, 138, 139), in direct violation of the Court's Order dated December 18, 2023.  *See* Dkt. No. 136 at fn. 1 ("Moreover, **multiple discovery motions should be noticed for hearing on separate dates** so that each motion is heard on a distinct date.") (emphasis added).  Only after Defendants pointed out this clearly defective Notice, and to not get embarrassed and blown out a <u>third time</u> (and likely with prejudice to refiling), did B&G relent and agree to comply with the Court's Order by resetting the motions on different dates.  *See* Dkt. Nos. 140, 141, 142.

## III.   <u>ARGUMENT</u>

The Court generally has significant discretion and authority to control the conduct of discovery.  *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits "the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(1)–(3).  A scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

A "scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th

1   Cir. 1992)  (internal quotes omitted).  To establish "good cause," parties seeking modification of a

2   scheduling order must generally show that, even with the exercise of due diligence, they cannot meet

3   the order's timetable.  *Id.* at 609.

4          Good cause requires a prompt request for modification once it became apparent that

5   compliance with the Scheduling Order was not possible. *Hood v. Hartford Life & Acc. Ins. Co.,* 567

6   F.Supp.2d 1221, 1224 (E.D. Cal. 2008).  A court may properly deny a motion to amend a scheduling

7   order where the plaintiff did not show diligence in complying with the dates set in the order and

8   waited too long before seeking relief. *Zivkovic v. Southern Calif. Edison Co*., 302 F3d 1080, 1087

9   (9th Cir. 2002).  If the party seeking to amend the scheduling order fails to show due diligence, the

10  inquiry should end, and the court should not grant the motion to modify.  *Id.* (citing *Johnson*, 975

11  F.2d at 609).  "Relevant inquiries [into diligence] include: whether the movant was diligent in helping

12  the court to create a workable Rule 16 order; whether matters that were not, and could not have been,

13  foreseeable at the time of the scheduling conference caused the need for amendment; and whether the

14  movant was diligent in seeking amendment once the need to amend became apparent." *United States*

15  *ex rel. Terry v. Wasatch Advantage Grp., LLC*, 327 F.R.D. 395, 404 (E.D. Cal. 2018) (internal

16  quotation marks and citation omitted).

17         B&G has not established a good cause.  It has failed on multiple occasions, and despite the

18  indulgence of the Court, to properly move to compel any alleged discovery failings (which Defendants

19  expressly deny have occurred).  Rather, B&G has repeatedly flouted the local rules and express Court

20  Orders over the last four months in having its Motions to Compel denied.  Even after receiving a life

21  raft from the Court when it was allowed to bring the same issues to bear a third time, B&G failed to

22  comply with the Court's December 18, 2023, Order and scheduled three separate hearings on one day.

23         The entirety of the current *Ex Parte* presupposes that B&G will prevail on its myriad Motions,

24  and that the Defendants will fail on their Motions to Quash the attorney subpoenas.  If B&G's Motions

25  to Compel are each denied for the third time, and if the opposing counsel subpoenas are quashed, then

26  there exists no need for any further time to conduct discovery.

27         Moreover, this should not have been done by *Ex Parte* Application. The expression '*ex parte*

28  motion' is a term of art.  In its pure form it means a request a party makes to the court without any

OPPOSITION TO EX PARTE APPLICATION TO AMEND CASE SCHEDULE

notice to the other side." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). "*Ex parte* relief is generally disfavored when relief may be had through a regularly noticed motion." *Hufnagle v. Rino Int'l Corp.*, 2012 WL 6553743, at *1 (C.D. Cal. Dec. 14, 2012).

The Local Rules of the Eastern District recognize limited situations in which *ex parte* applications may be filed: *ex parte* motions to extend time where a stipulation cannot reasonably be obtained as where a defendant has not been served, or where there is an application to shorten time. L.R. 144(c) and (e); injunctive relief (L.R. 231); and default judgment (L.R. 540). Further, "[c]ounsel shall seek to obtain a necessary extension from the Court or from other counsel or parties in an action as soon as the need for an extension becomes apparent," and "[r]equests for Court-approved extensions brought on the required filing date for the pleading or other document are looked upon with disfavor." L.R. 144(d).

Plaintiff's request does not fall within any of these situations. Consistent with the Local Rules, the process by which the Court could entertain such requests would be for a party to file a motion to amend the scheduling order and submit with that motion an application for an order shortening time to hear the matter, with notice to the opposing party, and on good cause. To the extent that the motion needs to be heard on shortened time due to the pending deadline, Plaintiff should have used Local Rule 144(e).

## IV.    **CONCLUSION**

For all the foregoing reasons, the instant *Ex Parte* should be denied, and the Scheduling Order should remain unchanged.

Respectfully Submitted,
Dated: January 19, 2024          **NICHOLAS & TOMASEVIC, LLP**

By:    */s/ Jake W. Schulte*
CRAIG M. NICHOLAS (Bar No. 178444)
cnicholas@nicholaslaw.org
JAKE W. SCHULTE (Bar. No. 293777)
jschulte@nicholaslaw.org
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

NOAM GLICK (Bar No. 251582)
noam@glicklawgroup.com

OPPOSITION TO EX PARTE APPLICATION TO AMEND CASE SCHEDULE

**GLICK LAW GROUP, P.C.**
225 Broadway, Suite 2100
San Diego, CA 92101
Tel: (619) 382-3400 | Fax: (619) 615-2193

R. JEFFREY NEER (Bar No. 190417)
jeff@forumllp.com
**FORUM LAW PARTNERS, LLP**
803 Deep Valley Dr.
Rolling Hills Estates, CA 90274
Tel: (310) 974-8800 | Fax: (310) 974-8801

Attorneys for Defendants
KIM EMBRY and ENVIRONMENTAL
HEALTH ADVOCATES, INC.

OPPOSITION TO EX PARTE APPLICATION TO AMEND CASE SCHEDULE