UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&G FOODS NORTH AMERICA, INC., | No. 2:20-cv-0526 KJM DB |
| Plaintiff, | |
| v. | ORDER |
| KIM EMBRY AND ENVIRONMENTAL HEALTH ADVOCATES, INC., | |
| Defendants. | |

This matter came before the undersigned on February 23, 2024, for hearing of plaintiff's motion to compel pursuant to Local Rule 302(c)(1). (ECF No. 170.) Attorneys David Kwasniewski and Chelsea Tirgardoon appeared on behalf of plaintiff. Attorney Jake Schulte appeared on behalf of defendants. Oral argument was heard, and plaintiff's motion was taken under submission. Thereafter an order issued directing plaintiff to submit an Excel file for in camera review. (ECF No. 171.) Plaintiff submitted the file and the undersigned has reviewed it. For the reasons explained below, plaintiff's motion to compel in camera review is granted and the motion is denied in all other respects.

**BACKGROUND**

Plaintiff is proceeding on a second amended complaint filed on November 23, 2022. (ECF No. 57.) The second amended complaint alleges that plaintiff sells "a variety of high-

1

quality frozen and shelf-stable foods throughout the country, including the Cookie Cakes and Sandwich Cookies sold under the SNACKWELL'S® brand." (Id. at 4[1].)  In 1990, the California Office of Environmental Health Hazard Assessment added acrylamide to its list of known carcinogens that may be regulated under California's Proposition 65.  (Id.)  Defendants allegedly engaged in "sham litigation" by suing plaintiff because "the Cookies contain acrylamide[.]"  (Id.) Defendants did so despite this court having held that such "allegations are false and unconstitutional, and that the state does not, in fact 'know' acrylamide causes cancer." (Id. at 6.) See generally California Chamber of Commerce v. Becerra, 529 F.Supp.3d 1099, 1123 (E.D. Cal. 2021) ("While this action is pending and until a further order of this court, no person may file or prosecute a new lawsuit to enforce the Proposition 65 warning requirement for cancer as applied to acrylamide in food and beverage products.").

On January 17, 2024, plaintiff filed the pending motion to compel.  (ECF No. 143.)  On February 9, 2024, the parties filed a Joint Statement re: Discovery Disagreement.  (ECF No. 160.) The Joint Statement explains that in November of 2020, defendant Environmental Health Advocates, Inc., ("EHA") founder attorney Noam Glick was having a billing dispute with third-party IEH Laboratories & Consulting Group ("IEH").  (JS (ECF No. 160) at 2.)  IEH is the laboratory used by defendants to test products for potential violations of Proposition 65.  (Id.) Plaintiff asserts the dispute was over IEH's "obviously unreliable" test results resulting in "EHA's targets" refusing "to pay EHA its usual ransom." (Id.)  Defendants claim the dispute was simply over "laboratory fees[.]" (Id. at 4.)

On November 18, 2020, Glick emailed IEH an Excel spreadsheet containing attorney work product related to dozens of Proposition 65 cases litigated by defendant EHA.  (JS (ECF No. 160) at 4; Ex. V (ECF No. 160-23) at 2.)  Plaintiff asserts the spreadsheet was intentionally shared with IEH to "support this request for a partial refund[.]"  (JS (ECF No. 160) at 2.) Defendants assert the disclosure was accidental as Glick "intended to send an entirely different

////

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

2

spreadsheet" that was "narrowly tailored to a dispute concerning IEH's laboratory fees[.]" (Id. at 4.)

Three years later, on December 7, 2023, IEH produced Glick's spreadsheet to plaintiff in response to a discovery subpoena issued in this action. (Id. at 2.) On December 29, 2023, defendants emailed plaintiff to "claw back the spreadsheet[.]" (Id.) Plaintiff's motion to compel seeks in camera review of the spreadsheet as well as an order compelling defendants to produce the spreadsheet. (ECF No. 143 at 1-3.) Defendants argue that the spreadsheet is protected pursuant to the work product privilege. (JS (ECF No. 160) at 5.)

## ANALYSIS

The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." United States v. Christensen, 828 F.3d 763, 805 (9th Cir. 2015) (quotation omitted); see also Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1494 (9th Cir. 1989) (" The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.").

> To qualify for work-product protection, documents must: (1) be "prepared in anticipation of litigation or for trial" and (2) be prepared "by or for another party or by or for that other party's representative." In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf), 357 F.3d 900, 907 (9th Cir. 2004). In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the "because of" test is used. Id. Dual purpose documents are deemed prepared because of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." Id. In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether the "'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'" Id. at 908.

U.S. v. Richey, 632 F.3d 559, 567-68 (9th Cir. 2011).

"'The party asserting the privilege has the burden of making a prima facie showing that the privilege protects the information that the party intends to withhold.'" Diamond State Ins. Co.

3

1  v. Rebel Oil Co., Inc., 157 F.R.D. 691, 698 (D. Nev. 1994) (quoting In re Grand Jury
2  Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992)).  "The privilege derived from the work-
3  product doctrine is not absolute.  Like other qualified privileges, it may be waived." U.S. v.
4  Nobles, 422 U.S. 225, 239 (1975).  Voluntarily disclosing a document protected as work product
5  to a third party generally results in a waiver of the protection.  See Burden-Meeks v. Welch, 319
6  F.3d 897, 899 (7th Cir. 2003).

7  However, a voluntary disclosure of a protected document will not operate as a waiver if
8  "(1) the disclosure was inadvertent; (2) the holder of the privilege or protection took reasonable
9  steps to prevent the disclosure; and (3) the holder promptly took reasonable steps to rectify the
10 error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Sidney I.
11 v. Focused Retail Property I, LLC, 274 F.R.D. 212, 215 (N.D. Ill. 2011).  The burden to satisfy
12 these elements is on the party asserting the protection.  Heriot v. Byrne, 257 F.R.D. 645, 658
13 (N.D. Ill. 2009).

14 **(1)    Inadvertent Disclosure**

15 An "inadvertent disclosure" is simply where the work-product protected document was
16 produced as the result of a mistake.  Coburn Group, LLC v. Whitecap Advisors LLC, 640
17 F.Supp.2d 1032, 1038 (N.D. Ill. 2009).  Here, on November 17, 2020, IEH's corporate counsel,
18 Nema Koohmaraie, emailed Glick to ask Glick to email "information in advance" of an upcoming
19 "call"  with IEH's "technical staff" about testing as it relates to "retest" versus "a separate and
20 distinct test[.]"  (Ex. V (ECF No. 160-23) at 2.)  Glick then emailed Koohmaraie on November
21 18, 2020, and asserted that Glick had attached a file depicting "a *small sampling* of the problems
22 we encountered with the reliability of IEH's lab results" and how those errors cost EHA "more
23 than IEH's invoices for this faulty work."  (Id. at 2.)

24 Having reviewed the document in camera, the Excel file Glick actually attached is not
25 consistent with the description Glick provided to Koohmaraie.  The file Glick sent does not
26 reflect a sampling of problems related to the reliability of IEH's lab results.  Instead, the
27 document appears to be Glick's case management of numerous Proposition 65 actions.  The
28 ////

1  document is, as defendants describe it, a "smorgasbord of notes and impressions concerning a
2  litany of matters entirely unrelated to IEH's testing." (JS (ECF No. 160) at 21.)

3  Under these circumstances, it does appear that the disclosure of the attorney work product
4  was inadvertent.[2] See generally Amobi v. District of Columbia Dept. of Corrections, 262 F.R.D.
5  45, 53 (D. D.C. 2009) (defining "inadvertent" as "an unintended disclosure").

6  **(2)     The Holder of the Protection Took Reasonable Steps to Prevent Disclosure**

7  "Determining whether a party took reasonable steps to prevent disclosure and to rectify
8  the error requires considering a variety of factors including the procedures followed to avoid
9  producing privileged material, the volume and timing of the production, and overriding issues of
10 fairness." In re Testosterone Replacement Therapy Products Liability Litigation, 301 F.Supp.3d
11 917, 924 (N.D. Ill. 2018).

12 The issue of waiver of work product due to inadvertent production typically concerns
13 instances in which the holder of the privilege and the producing party are one and the same. See
14 generally U.S. ex rel. Bagley v. TRW, Inc., 204 F.R.D. 170, 175 (C.D. Cal. 2001) ("The
15 inadvertent production of a privileged document is a specter that haunts every document intensive
16 case."). In such circumstances, the court often examines the efforts put forth by the producing
17 party to screen out privileged and protected information from production. But that is not the
18 factual situation here.

19 Here, attorney Glick unknowingly provided IEH, a third party, with protected work
20 product. Three years later, IEH produced that protected work product to plaintiff. (JS (ECF No.
21 160) at 6.) Defense counsel in this action was not required to and did not preview IEH's
22 production. (Id. at 22.) Nor was defense counsel required to review IEH's production. Rule
23 502(b) "does not require the producing party to engage in a post-production review to determine
24 whether any protected communication or information has been produced by mistake." Heriot v.
25 Byrne, 257 F.R.D. 645, 660 (N.D. Ill. 2009). Defense counsel, however, did review IEH's
26 ////

---

[2] Glick has submitted a declaration declaring that disclosure was inadvertent and that Glick has "no recollection of the mistakenly attached spreadsheet being brought up during" the call with IEH. (Decl. Glick (159-1) at 2-3.)

5

production on December 29, 2023, and contacted plaintiff that same day to claw back the work product. (JS (ECF No. 160) at 22.)

In this regard, it appears that defendants and defense counsel were unaware of the production of the work product until December 29, 2023, the same day they contacted plaintiff to claw back the spreadsheet. Under these circumstances, considering the procedures resulting in the production, the timing, and the overriding issue of fairness, the undersigned finds that holder of the privilege took reasonable steps to avoid disclosure. See generally Datel Holdings Ltd. v. Microsoft Corp., No. C-09-05535 EDL, 2011 WL 866993, at *4 (N.D. Cal. Mar. 11, 2011) ("Despite the fact that Defendant produced the 'Re-auth' emails at various times, post-production review is not required as long as there was no obvious indication that protected information had been produced.").

**(3) The Holder Promptly Took Reasonable Steps to Rectify The Error**

While "Rule 502(b) does not require a producing party to engage generally in a post-production review . . . . 'the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently.'" AdTrader, Inc. v. Google LLC, 405 F.Supp.3d 862, 866 (N.D. Cal. 2019) (quoting Fed. R. Evid. 502 advisory committee's note).

Here, the same day defense counsel learned of IEH's production of Glick's work product they contacted plaintiff to claw back the work product. (JS (ECF No. 160) at 23.) The undersigned, therefore, finds that defendants promptly took reasonable steps to rectify the error. See Valenzuela v. Union Pacific Railroad Company, No. CV-15-01092 PHX DGC, 2016 WL 7385037, at *6 (D. Ariz. Dec. 21, 2016) ("Rule 502 states that waiver does not occur if 'the holder promptly took reasonable steps to rectify the error.' Fed. R. Evid. 502(b)(3). The Court concludes that this requirement was satisfied by Defendants' same-day actions to assert the privilege."); Datel, 2011 WL 866993, at *5.

**4) Defendants' Privilege Log**

"In considering whether a proponent of the privilege is entitled to protection, the Court must place the burden of proof squarely upon the party asserting privilege. Accordingly, the

proponent must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that precise facts exist to support the claim of privilege." North Carolina Elec. Membership Corp. v. Carolina Power & Light Co., 110 F.R.D. 511, 515 (M.D. N.C. 1986)

"In requiring a party to prove the factual basis for its claims of privilege, the courts generally look to a showing based on affidavits or equivalent statements that address each document at issue," however, a party may instead rely on "an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps." Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 473-74 (S.D. N.Y. 1993). The privilege log should state (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated, as well as provide information of the subject matter of each document. See In re Grand Jury Investigation, 974 F.2d at 1071; see also Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 145 F.R.D. 84, 88 (N.D. Ill. 1992) (privilege log "should identify the date, the author and all recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery. These categories, especially this last category, must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden.").

Here, plaintiff argues that defendants' privilege log is neither timely nor complete and thus constitutes a waiver. (JS (ECF No. 160) at 14.) As noted above, defense counsel learned of the disclosure of the work product on December 29, 2023, and that same day contacted plaintiff to request return of the spreadsheet. According to defense counsel, "[o]ver the course of the next several weeks, Defendants' counsel sent multiple emails asking B&G's counsel to meet and confer and to confirm the spreadsheet had been quarantined, had not been shared with anyone else, and whether B&G intended to make a claim." (Decl. Schulte (ECF No. 159) at 4.) The parties met and conferred on January 30, 2024. (Id.) The following day, pursuant to plaintiff's

request, defendants produced a supplemental privilege log addressing the protected work product. (Id. at 5.)

Under these circumstances, defendants' privilege log does not appear to be untimely, or at least so untimely as to justify waiver. See White v. Graceland College Center for Professional Development & Lifelong Learning, Inc., 586 F.Supp.2d 1250, 1266 (D. Kan. 2008) ("This Court has found waiver too harsh a sanction for untimely submission of the privilege log in most cases where the delay is not excessive or unreasonable."); First Sav. Bank, F.S.B. v. First Bank System, Inc., 902 F. Supp. 1356, 1362 (D. Kan. 1995) ("courts have decided against waiver when there has been minor procedural violations, good faith attempts at complying, and some notice to opposing party of the privilege objections").

Nor does the privilege log appear to the undersigned to be incomplete. (ECF No. 159 at 46.) See Hupp v. San Diego County, Civil No. 12cv0492 GPC (RBB), 2014 WL 1404510, at *5 (S.D. Cal. Apr. 10, 2014) ("Generally, a privilege log is adequate if it identifies with particularity the documents withheld, including their date of creation; author, title or caption; addressee and each recipient; and the general nature or purpose for creation.").

Moreover, even if plaintiff had established the privilege log was untimely and/or incomplete deeming the protect material waived is not mandatory. "When a party provides an inadequate or untimely privilege log, the Court may choose between four remedies: (1) give the party another chance to submit a more detailed log; (2) deem the inadequate log a waiver of the privilege; (3) inspect in camera all of the withheld documents; and (4) inspect in camera a sample of the withheld documents." Nationwide Mut. Fire Ins. Co. v. Keit, Inc., No. 6:14-cv-749 Orl 41TBS, 2015 WL 1470971, at *9 (M.D. Fla. Mar. 31, 2015).

**CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's January 17, 2024 motion to compel in camera review (ECF No. 143) is granted in part;

////

////

2. The undersigned has conducted an in camera review of the file at issue; and

3. Plaintiff's January 17, 2024 motion is denied in all other respects.

DATED: March 1, 2024          /s/ DEBORAH BARNES
                              UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.civil/b&g0526.oah.0223(2)