**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Jake W. Schulte (SBN 293777)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: jschulte@nicholaslaw.org

**GLICK LAW GROUP, P.C**
Noam Glick (SBN 251582)
225 Broadway, 19th Floor
San Diego, CA 92101
Tel: (619) 382-3400
Fax: (619) 615-2193
Email: noam@glicklawgroup.com

**FORUM LAW PARTNERS, LLP**
R. Jeffrey Neer (SBN 190417)
803 Deep Valley Dr.
Rolling Hills Estates, CA 90274
Tel: (310) 974-8800
Fax: (310) 974-8801
Email: jeff@forumllp.com

Attorneys for Defendants
KIM EMBRY & ENVIRONMENTAL HEALTH ADVOCATES, INC.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&G FOODS NORTH AMERICA, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KIM EMBRY and ENVIRONMENTAL HEALTH ADVOCATES, INC., acting as enforcement representatives under California Proposition 65 on behalf of the State of California,<br><br>Defendant. | Case No.: 2:20-cv-00526-KJM-DB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT**<br><br>**Hearing Date**: August 23, 2024<br>**Hearing Time**: 10:00 a.m.<br>**Location**: 3 (15th floor)<br><br>**Judge**: Hon. Kimberly J. Mueller<br>**Magistrate**: Hon. Deborah Barnes<br><br>**Complaint Filed**: March 6, 2020<br>**Trial Date**: None Set |

# TABLE OF CONTENTS

I.    **INTRODUCTION** ................................................................................................ 1

II.   **STATEMENT OF THE CASE** ...................................................................... 2

    A.   **Proposition 65's Built-In Mechanism to Prevent Frivolous Suits** ............ 2

    B.   **Defendants' Investigation Concerning the B&G NOVs** .......................... 3

        1.   *Embry's Cookie Cakes NOV & Suit* ............................................. 3

        2.   *EHA's Sandwich Cookies NOV & Suit* .......................................... 3

    C.   **The Attorney General Refutes B&G's Central "Sham" Allegation** ............................................................................................... 4

    D.   **Defendants Produced Factual Support for <u>Seventy (70)</u> Other Randomly Selected (Non-B&G) Acrylamide NOVs Brought Over a 5-Year Period** ............................................................................ 4

    E.   **Defendants Have Been Successful in their Acrylamide Prosecution** ...................................................................................... 5

    F.   **Plaintiff's 30(b)(6) Witness Admits this Lawsuit is Frivolous** ................ 5

III.  **LEGAL STANDARD** ...................................................................................... 5

IV.   **THERE IS NO TRIABLE ISSUE REGARDING THE SHAM EXCEPTION TO THE *NOERR-PENNINGTON* DOCTRINE** ..................... 6

    A.   **The Sham Exception for Objective Baselessness** .................................... 7

        1.   *Acrylamide and Cancer* ............................................................... 7

        2.   *Pre-Suit Investigation* ................................................................. 8

        3.   *Constitutional Issues* ................................................................. 11

    B.   **The Sham Exception for Fraud or Intentional Misrepresentations** ...................................................................... 11

        1.   *"Spoliation" – Or Lack Thereof* ................................................ 11

        2.   *Certificates of Merit* ................................................................. 13

        3.   *Proposition 65 Lawsuits* ............................................................ 14

    C.   **The Sham Exception for Series of Lawsuits Brought Without Regard to Merit** ..................................................................... 15

**V.**   **THERE IS NO TRIABLE ISSUE REGARDING STATE ACTION**...................... 17

    **A.**   **Embry and EHA are Presumptively Not State Actors** .................................. 17

    **B.**   **Defendants do not Perform a Traditional, Exclusive Public Function**................................................................................................. 17

    **C.**   **Defendants Do Not Act Jointly with the State** .................................... 19

    **D.**   **Private Enforcers Are Not Compelled to Bring Actions**................................ 20

**VI.**   **CONCLUSION**.......................................................................................... 20

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

4

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................................6

5

*B&G Foods v. Embry*,
   29 F.4th 527 (9th Cir. 2022) ...............................................6, 7, 8, 10, 11, 15

6

7

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) .................................................................................................20

8

*Brunette v. Humane Soc'y of Ventura County*,
   294 F.3d 1205 (9th Cir. 2002) ...........................................................................19

9

10

*California Chamber of Com. v. Becerra*,
   529 F.Supp.3d 1099 (E.D. Cal. 2021) ......................................................9, 11

11

12

*California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
   29 F.4th 468 (9th Cir. 2022) .................................................................................9

13

14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................................6

15

*Colonies Partners, L.P. v. County of San Bernardino*,
   2020 WL 149644 (C.D. Cal., Feb. 27, 2020) ....................................................13

16

17

*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*,
   168 Cal.App.4th 675 (2008) .................................................................................15

18

19

*Consumer Cause, Inc. v. SmileCare*,
   91 Cal.App.4th 454 (2001) ............................................................................9, 10

20

*Consumer Defense Group v. Rental Housing Industry Members*,
   137 Cal.App.4th 1185 (2006) .......................................................................7, 15

21

22

*DiPirro v. American Isuzu Motors, Inc.*,
   119 Cal.App.4th 966 (2004) ............................................................................2, 3

23

*Flagg Bros., Inc. v. Brooks*,
   436 U.S. 149 (1978) .................................................................................................18

24

25

*Lee v. Amazon.com, Inc.*,
   76 Cal.App.5th 200 (2022) ...................................................................................15

26

27

*Manhattan Cmty. Access Corp. v. Halleck*,
   587 U.S. 802 (2019) .................................................................................................17

28

*Nabors Well Servs. Co. v. Bradshaw*,
  2006 WL 8432088 (C.D. Cal., Feb. 15, 2006) ..................................................................19

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ..........................................................................................6

*Pro Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993) ............................................................................................................7

*Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs*,
  608 F.3d 110 (1st Cir. 2010) ...........................................................................................18

*Rendell-Baker v. Kohn*,
  457 U.S. 830 (1982) .........................................................................................................18

*Sutton v. Providence St. Joseph Med. Ctr.*,
  192 F.3d 826 (9th Cir. 1999) ...........................................................................................17

*Yeroushalmi v. Miramar Sheraton*,
  88 Cal.App.4th 738 (2001) ..............................................................................................18

**STATUTES**

15 U.S.C. § 2619 ...................................................................................................................19

30 U.S.C. § 1270 ...................................................................................................................19

33 U.S.C. § 1365 ...................................................................................................................19

33 U.S.C. § 1515 ...................................................................................................................19

33 U.S.C. § 1910 ...................................................................................................................19

42 U.S.C. § 300j-8 .................................................................................................................19

42 U.S.C. § 1983 .....................................................................................................................6

42 U.S.C. § 4911 ...................................................................................................................19

Cal. Code Regs., tit. 11, § 3102 ............................................................................................2

Cal. Code Regs., tit. 27, § 25101 ..........................................................................................9

Cal. Code Regs., tit. 27, § 25703 ........................................................................................10

Cal. Code Regs., tit. 27, § 25705 ..........................................................................................9

Cal. Code Regs., tit. 27, § 27001 ..........................................................................................7

Cal. Health & Safety Code, § 25249.6 .................................................................................2

Cal. Health & Safety Code, § 25249.7 ...............................................................2, 8, 18, 19, 20

Cal. Health & Safety Code, § 25249.10 ............................................................................9

Cal. Health & Safety Code, § 25249.12 .........................................................................5, 9

Cal. Lab. Code, § 2699 ...................................................................................................19

**RULES**

Fed. R. Civ. P. 56 ............................................................................................................6

**TREATISES**

Weil & Brown,
 *California Practice Guide: Civil Procedure Before Trial*
 (The Rutter Group, June 2024 Update) ...................................................................10

# I.  **INTRODUCTION**

This lawsuit is based on allegations that Defendants always knew were false and that discovery has now revealed Plaintiff B&G knows are false.  The action seeks to harass and intimidate enforcers of Proposition 65 where, as here, B&G never tested its own food products for carcinogenic chemicals before selling them to California consumers.  Defendants Kim Embry ("Embry") and Environmental Health Advocates, Inc. ("EHA") filled the void, testing B&G's products at laboratories and sharing those lab results with an independent professor of environmental health at the University of Michigan, Dr. John Meeker, who verified the products violated California's Proposition 65.  Thus, Defendants' counsel signed certificates of merit supporting Notices of Violation ("NOV") of the initiative and filed lawsuits.  That is precisely how Proposition 65 is supposed to work.  What is not supposed to happen is this retaliatory lawsuit.

Twice this Court dismissed the action as barred by the *Noerr-Pennington* doctrine, the second time finding B&G's "sham" allegations insufficient, even after the Ninth Circuit permitted leave to amend expressly for that purpose.  Dkt. 56.  The Court granted leave to amend and forewarned that factual allegations must comply with Rule 11.  *Id.* at 16.

Since then, discovery has laid bare B&G's lack of evidence and downright falsity of its "sham litigation" allegations including, but not limited to: (1) Defendants "intentionally and willfully destroyed the only products they tested to support their claims," (2) Defendant Embry "instructed" her laboratory to destroy the sample, (3) Defendants' certificates of merit falsely claimed they consulted with experts before filing suit, (4) Defendants "manufactured after the fact" their expert reports to avoid a finding of sham litigation, and (5) Defendants failed to conduct any good faith investigation prior to issuing NOVs.  Each of these claims is demonstrably false.

Nor does B&G have a shred of evidence to support its allegations that Defendants are "state actors" liable under section 1983, which this Court noted was a "close call" even assuming the truth of B&G's false and malicious allegations in its operative Complaint.  Indeed, B&G can point to no evidence, outside the statutory scheme itself, that Defendants ever conspired with the state of California, as alleged, or that Defendant otherwise acted as "state actors."  And no court has ever found that a citizen enforcer of Proposition 65 acts under color of law.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

## II.    STATEMENT OF THE CASE

### A.    Proposition 65's Built-In Mechanism to Prevent Frivolous Suits

Proposition 65 is a voter-enacted initiative that protects the public's right to know about potential exposures to hazardous chemicals.  Cal. Health & Safety Code § 25249.6 *et. seq.*[1] Proposition 65 generally requires businesses to provide "clear and reasonable warning[s]" on products that expose consumers to "chemical[s] known to the state to cause cancer or reproductive toxicity." § 25249.6.  Proposition 65 permits any "person" to bring an action "in the public interest" to enforce the initiative.  § 25249.7(d).  A citizen enforcer seeking to bring a Proposition 65 action must provide 60 days' notice of the alleged violation to the alleged violator and to the California Attorney General and certain local government prosecutors.  § 25249.7(d)(1).

In 2001, the Legislature amended the notice provision to require, in cases alleging a failure to warn (like here), a "certificate of merit" (COM) stating the private enforcer, or their attorney, consulted with one or more experts who "reviewed facts, studies, or other data" regarding the chemical exposure at issue and believes "there is a reasonable and meritorious case for the private action."  *DiPirro v. American Isuzu Motors, Inc.,* 119 Cal.App.4th 966, 970 (2004) (citing § 25249.7(d)(1)).  The amendment (known as Senate Bill No. 471) requires private enforcers to disclose to the Attorney General information sufficient to establish the basis of the certificate.  *Id.* "Senate Bill No. 471 was prompted by a concern that private enforcers were abusing Proposition 65 by filing meritless lawsuits[.]"  *Id.*; Defendants' Request for Judicial Notice ("RJN"), Ex. 152 at p. 2 (Sen. Rules Com.) ("The basic intent of the bill makes changes to the enforcement of Proposition 65 and addresses abusive actions brought by private persons containing little or no supporting evidence by barring such actions from proceeding[.]") .

Regulations enacted following adoption of Senate Bill No. 471 detail what factual material must be provided to the Attorney General.  Cal. Code Regs., tit. 11, § 3102.  "If, after reviewing the factual information sufficient to establish the basis for the certificate of merit . . . , the Attorney General believes there is no merit to the action, the Attorney General *shall* serve a letter . . . stating the Attorney General believes there is no merit to the action."  § 25249.7(e)(1)(A) (emphasis added);

---

[1] Unless otherwise stated, unaccompanied § citations refer to the Cal. Health & Safety Code.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

*see also*, *DiPirro*, 119 Cal.App.4th at 974-975 ("By requiring the private enforcer to supply the Attorney General with the factual information supporting the merits of the claim," the Attorney General can "focus its efforts to discourage filing of the truly frivolous" and is "better able to persuade a private enforcer to [] refrain from filing a frivolous suit[.]").

### B.    Defendants' Investigation Concerning the B&G NOVs

Consistent with the above requirements for private enforcement of Proposition 65, Defendants Embry and EHA undertook rigorous pre-notice investigations regarding acrylamide exposure in the two subject B&G cookie products.

#### 1.    Embry's Cookie Cakes NOV & Suit

On April 22, 2019, Embry served B&G with an NOV related to its failure to warn consumers of exposure to acrylamide in its SnackWell's Devil's Food Fat Free Cookie Cakes ("Cookie Cakes"). UMF 1.  **<u>Before</u>** issuing the Cookie Cakes NOV (i.e., before April 22, 2019), Embry, or her agents, undertook the following investigation:

(a) purchased Cookie Cakes on <u>March 26, 2019</u>, from a Ralphs grocery store in San Diego, California [UMF 2]; (b) submitted a sample of the Cookie Cakes for acrylamide testing to IEH Laboratories ("IEH") on <u>March 29, 2019</u> [UMF 3]; (c) IEH conducted a test on <u>April 4, 2019</u>, revealing an acrylamide concentration of 643 parts per billion [UMF 4]; and (d) retained a toxicologist at the University of Michigan, Dr. John Meeker, who opined, on <u>April 12, 2019</u>, that consumption of a single recommended serving size of the product exposes consumers to an acrylamide level that is 50 times greater than the Act's prescribed No Significant Risk Level ("NSRL") [UMF 5].

Following her investigation, on April 22, 2019, Embry attached her factual support (i.e., the IEH test and Dr. Meeker's report) to the Attorney General's copy of the COM.  UMF 6.  Thereafter, on <u>March 6, 2020</u>, following the 60-day notice period, Embry filed a Proposition 65 complaint against B&G related to the Cookie Cakes NOV.  UMF 7.

#### 2.    EHA's Sandwich Cookies NOV & Suit

EHA exhausted all these same steps before bringing its NOV and lawsuit against B&G related to acrylamide exposure in SnackWell's Chocolate Crème Sandwich Cookies ("Sandwich

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

1  Cookies").  *See* UMF 8-14.

2  **C.    The Attorney General Refutes B&G's Central "Sham" Allegation**

3       According to B&G, the Prop 65 suits were shams filed without investigation.  SAC, ¶¶ 86,

4  103.  In light of B&G's baseless allegations, Defendants' counsel wrote the Office of the Attorney

5  General ("AGO") requesting the AGO confirm that Defendants submitted factual information in

6  support of their COMs related to the B&G NOVs.  Declaration of Susan S. Fiering ("Fiering Dec."),

7  ¶ 2, Ex. 1.  In response, the AGO confirmed it "reviews all certificates of merit submitted with

8  Proposition 65 notices."  *Id.*, ¶ 6.  As it pertains to the B&G NOVs, the AGO verified that

9  Embry/EHA indeed submitted factual information to the AGO to support the merit of each notice.

10  *Id.*, ¶¶ 7-9, Ex. 1 at Ex. A-B (the lab tests and Meeker reports).  "In this case, the AGO reviewed the

11  certificates of merit submitted with notices No. 2019-00765 [Cookie Cakes] and No. 2020-02646

12  [Sandwich Cookies], and with the related amended notices, and did not determine that there was no

13  merit to the action[s].  The AGO did not therefore issue a no merit letter[s]."  *Id.*, ¶ 6 (emphasis

14  added); UMF 6, 13, 15-16.

15  **D.    Defendants Produced Factual Support for <u>Seventy (70)</u> Other Randomly**

16  **Selected (Non-B&G) Acrylamide NOVs Brought Over a 5-Year Period**

17       In this case, B&G has pursued an overly broad discovery plan seeking to validate its "sham"

18  litigation claims, initially demanding Defendants produce all documents from hundreds of separate

19  acrylamide NOVs that Embry/EHA have ever issued over a 5-year period.  This was the subject of

20  a discovery dispute (Joint Statement, Dkt. 146), wherein the Honorable Magistrate Deborah Barnes

21  agreed with Defendants' "reasonable compromise" of offering documents surrounding a random

22  sampling of 70 acrylamide NOVs.  Dkt. 164 at 6.

23       Defendants' subsequent, timely production responsive to Dkt. 164 proves their meticulous

24  B&G investigations were no anomaly.  Ex. A at 115-1545.[2]  Defendants undertook the <u>same</u> pre-

25  notice investigation (not just for the B&G NOVs) but for 70 other randomly selected acrylamide

26  NOVs as well: (1) the product is purchased in California, (2) the product is shipped to an accredited

27  third-party laboratory for testing, (3) a qualified expert reviews the lab test, and (4) if the expert

28  _____
[2] Unless otherwise stated, unaccompanied exhibit citations refer to exhibits attached to the Schulte Dec.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

opines the consumer product contains acrylamide beyond the level of exposure permitted under Proposition 65, then (5) the supporting factual materials are supplied to the Attorney General as part of the certifying the merit of the notice. *Id.*; Ex. C (Holliday 30(b)(6) Dep. Tr. at 86:11-90:23; and *see* Ex. B (for ease of reference, Defendants prepared a chart identifying the BATES location of each available invoice, product picture, lab test, and expert report for the B&G and 70 random NOVs).

### E.    Defendants Have Been Successful in their Acrylamide Prosecution

Embry and EHA were two of the most successful enforcers under Proposition 65 in the state of California based on objective data.  Defendants settled or obtained a judgment prosecuting acrylamide NOVs/suits on at least 151 separate occasions over a 5-year period, collecting more than **7 million dollars** in civil penalties (75% of which are directed to the State of California, § 25249.12(c)(1)) and  attorneys' fees and costs.  UMF 20; RJN, Exhs. 1-151.

### F.    Plaintiff's 30(b)(6) Witness Admits this Lawsuit is Frivolous

B&G's 30(b)(6) deposition confirmed what Defendants suspected all along – this lawsuit is unsupported by any facts or evidence.  B&G identified <u>only one</u> company witness: Juvenal Marchisio.  Mr. Marchisio sat for deposition and verified he never heard of this 4-year-old lawsuit until three weeks before his deposition [Ex. D, Marchisio 30(b)(6) Dep. Tr. at 28:23-29:19, 197:22-25], was unaware that Defendants retained and produced the original cookie samples [*id.*, 143:14-144:1, 273:25-274:21], and was unaware of Defendants' production of investigation materials regarding 70 other non-B&G acrylamide NOVs, including whether these materials had been reviewed or even shared with anyone at B&G.  *Id.,* 267:21-271:13.  As to B&G's "sham litigation" allegations, Mr. Marchisio could not, for example, provide an evidentiary basis for the claims that: Defendants manufactured Dr. Meeker's expert reports after the fact [*id.*, 160:15-165:8], Embry/EHA did not provide COMs with factual support to the Attorney General [*id.*, 172:19-174:25]; Defendants' Prop 65 suits were based on false or fraudulent COMs [*id.*, 274:22-276:6]; or that Embry/EHA failed to investigate claims prior to filing suit.  *Id.*, 276:7-23.

### III.    <u>LEGAL STANDARD</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Facts are "material" only if a dispute about them may affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party (like here) would not have the burden to prove the disputed claim at trial, then it may carry its initial burden in one of two ways: "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

## IV.     THERE IS NO TRIABLE ISSUE REGARDING THE SHAM EXCEPTION TO THE *NOERR-PENNINGTON* DOCTRINE

This court has twice assumed without deciding that if Defendants are state actors who can be sued under 42 U.S.C. § 1983, they would be entitled to the protections of the *Noerr-Pennington* doctrine.  Dkt. 33, 56.  The Ninth Circuit made the same assumption when resolving the appeal of the Court's first dismissal order.  *B&G Foods v. Embry*, 29 F.4th 527, 536, 542 (9th Cir. 2022) ("Assuming Defendants are state actors, our precedent compels the conclusion that their activities were protected by the Petition Clause.").  Indeed, the Ninth Circuit found that all requirements for *Noerr-Pennington* immunity were met except whether B&G could allege application of the sham exception in an amended complaint.  *Id.* at 535-42.

There are "three circumstances in which the sham exception might apply in the litigation context."  *B&G Foods*, 29 F.4th at 542.  The first is if "the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful."  The second is "where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose." The third is where "a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy."  *Id.* at 537-38.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

The question now, therefore, is considering the evidentiary record, whether Defendants' underlying lawsuits were indeed a "sham" such that Embry/EHA's litigation activity is not entitled to *Noerr-Pennington* protection.  The answer is clear: B&G's "sham" allegations are false or otherwise do not rise to the level of a triable issue.

### A.      The Sham Exception for Objective Baselessness

Defendants' lawsuits are not objectively baseless – far from it.  Under the first exception, Defendants' Proposition 65 actions "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *B&G Foods*, 29 F.4th at 538 (quoting *Pro Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)).  "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, this suit is immunized under *Noerr* ..." *Id.*  "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.*

B&G concedes the low bar for initiating a Proposition 65 lawsuit: "The State permits Defendants to file suit against products containing modest, trace amounts of substances, even if they pose no possible health effect."  SAC, ¶ 28.  The California Court of Appeal has stated: "the instigation of Proposition 65 litigation [is] easy – and almost absurdly easy at the pleading stage and pretrial stages." *Consumer Defense Group v. Rental Housing Industry Members*, 137 Cal.App.4th 1185, 1215 (2006).  As this Court previously observed: "B&G's allegations about low standards and advantageous rules undermine its claim that the defendants' lawsuits are objectively meritless." Dkt. 56 at 10:22-24 (citing FAC, ¶¶ 85-89).

Considering Defendants' good faith investigations into the merits of each claim, as well as the AGO's review of same and determination "that there was [not] no merit to the action[s]," no reasonable trier of fact could ascertain that Embry/EHA would not have expected to succeed in their lawsuits against B&G.  In turn, B&G is left only poking holes into the supposed "adequacy" of Defendants' investigation – none of its arguments create a triable issue of material fact.

#### 1.     Acrylamide and Cancer

Acrylamide is a listed chemical under the Act.  It was listed as a carcinogen in 1990 and a reproductive toxin in 2011.  Cal. Code Regs., tit. 27, § 27001(b), (c).  Nonetheless, B&G argues

Defendants should have, but did not, "do their own research" into the carcinogenicity of dietary acrylamide, and if they had, would have discovered the B&G cookie products do not cause cancer. SAC, ¶¶ 146-159.

The Court has already rejected this argument. "Proposition 65 enforcers do not need to independently determine whether a listed chemical causes cancer, and they could prevail in a lawsuit if the chemical is listed." Dkt. 56 at 9:11-13 (citing § 25249.7).   The uncontroverted fact that the B&G cookies contain at least some amount of acrylamide, and that acrylamide is listed as a carcinogen under Proposition 65 "could offer an objective basis for the action." *Id.* at 9:8-14 (citing *B&G Foods*, 29 F.4th at 538).   In short, Defendants did not need to do their own independent research to confirm whether the State's placement of acrylamide on the Proposition 65 list of harmful chemicals was scientifically warranted generally, or to the B&G cookies specifically.

### 2.     Pre-Suit Investigation

Relying on California's listing of acrylamide, Defendants undertook a rigorous investigation into acrylamide exposure in the B&G cookies before issuing their NOVs and filing suit, including relying on a University of Michigan toxicologist who concluded the levels of acrylamide in the subject cookies exceeded the published NSRL by 50 and 145 times, respectively.  UMF 2-5, 9-12. The AGO verified that Defendants shared their factual support as part of the certificates of merit served on the Attorney General, and that the AGO reviewed Embry/EHA's factual support and found no reason to issue "no merit" letters.  UMF 6, 13, 15-16.

In the face of these uncontroverted facts, B&G nonetheless claims Defendants failed to "adequately" investigate their claims before filing suit.  SAC, ¶¶ 103-123.  B&G primarily relies on two arguments: (1) Defendants did not investigate an affirmative defense that the cookies did not exceed the NSRL (*id.*, ¶¶ 103-117); and (2) Defendants knew that acrylamide in B&G's cookies formed during the baking process and, thus, was exempted from the warning requirement under the Act's cooking regulation.  *Id.*, ¶¶ 118-23.

B&G's **first argument** fails to raise a triable issue for several reasons.  To start, proving the NSRL defense is *an alleged violator's burden* – i.e., B&G's burden.  "Proposition 65 grants businesses an affirmative defense if they can prove the alleged exposure 'poses no significant risk

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

assuming lifetime exposure at the level in question.'" *California Chamber of Com. v. Becerra,* 529 F.Supp.3d 1099, 1109 (E.D. Cal. 2021) (citing § 25249.10(c)). The manufacturer "must prove that fact using 'evidence and standards of comparable scientific validity' to the evidence and standards that led to the inclusion of that substance on the Proposition 65 list." *Id.* OEHHA has determined that an exposure of 0.2 micrograms of acrylamide per day "poses no significant risk."[3] Cal. Code Regs., tit. 27, § 25705(c)(2). "Proving the acrylamide level is lower than the No Significant Risk Level requires expensive testing and costly expert testimony if the case proceeds to trial." *California Chamber of Com. v. Council for Educ. & Rsch. on Toxics,* 29 F.4th 468, 480 (9th Cir. 2022); and *see B&G Foods*, 29 F.4th at 533 ("the scientific [NSRL] assessment is very burdensome and often inconclusive []as enforcers disagree on how average consumption should be calculated[].").

The above authority makes clear it was B&G's burden (to the extent the underlying enforcement actions went to trial or through dispositive motion practice) to prove an NSRL affirmative defense, requiring costly testing, expert testimony, and an established record. Yet, B&G attempts to flip the burden, arguing it was somehow Defendants' responsibility to disprove B&G's NSRL defense <u>before filing suit</u> (and before Embry/EHA would even know what defenses B&G's intended to assert). This is not the law. *See Consumer Cause, Inc. v. SmileCare,* 91 Cal.App.4th 454, 473 (2001) ("Defendants had an initial burden to make a prima facie showing that the [NSRL] exposure exemption applied. That showing, however, could not be based on [the private enforcer's] *lack of evidence to disprove* the applicability of the defense.") (italics in original).

*SmileCare* is instructive. In discussing the burden of production on summary judgment where the defendant asserted an NSRL defense, the Court of Appeal held a private enforcer plaintiff "did not have to offer any evidence disputing the applicability of the exposure exemption until defendants made the requisite initial showing." *SmileCare*, 91 Cal.App.4th at 473. "Were it otherwise, a defendant's initial burden in moving for summary judgment on an affirmative defense would be no burden at all – even though defendants would have the burden at trial." *Id.;* and *see* Weil & Brown, *California Practice Guide: Civil Procedure Before Trial* (The Rutter Group, June

---

[3] The California Office of Environmental Health Hazard Assessment (OEHHA) is the lead agency designated by the Governor to implement and enforce Proposition 65. § 25249.12(a); Cal. Code Regs., tit. 27, § 25101(o).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

2024 Update), ¶ 10:235 ("[I]t is not plaintiff's initial burden to disprove affirmative defenses …
asserted by defendant.").  Like the defendants in *SmileCare*, B&G cannot put the cart before the
horse by arguing private enforcers Embry/EHA must prove up its claimed NSRL defense.

Moreover, an expert (Dr. Meeker) opined the cookie products contain acrylamide in amounts
that exceeded the NSRL by orders of magnitude.  Declaration of Dr. John Meeker ("Meeker Dec.",
¶¶ 4-7, Exhs. D, G.  The expert stated, based on test results showing acrylamide content of more
than 600 parts per billion, "consuming a single serving of the product[s]" results in ingesting more
than 50 times (for Cookie Cakes) or 145 times (for Sandwich Cookies) the NSRL.  *Id*.  The NSRL
evaluation Defendants undertook and supplied to the Attorney General was adequate at the pre-
litigation stage.  Fiering Dec., ¶¶ 6-9.

B&G's **second argument** based on pre-lawsuit investigation is that the Proposition 65 claims
are barred by the cooking regulation – Cal. Code Regs., tit. 27, § 25703(b)(1).  SAC, ¶¶ 118-23.
This too does not raise a triable issue.  The cooking regulation does not stand for the proposition
B&G advances – i.e., that a chemical caused by cooking is *automatically* exempt from Prop 65.
Rather, it applies to products "where sound considerations of public health support an alternative
level, as, for example: (1) where chemicals in food are produced by cooking necessary to render the
food palatable or to avoid microbiological contamination."  Cal. Code Regs., tit. 27, § 25703(b)(1).
"But to qualify under this exemption, a business must satisfy a vague standard – that 'sound
considerations of public health support' an alternative risk level."  *B&G Foods*, 29 F.4th at 533
(citing Cal. Code Regs., tit. 27, § 25703(b)).  Like with the NSRL defense, the onus is on the alleged
violator (B&G), not the private enforcer (Embry/EHA) to prove the application of this affirmative
defense.  *See SmileCare,* 91 Cal.App.4th at 473; Rutter Group, *supra,* ¶ 10:235.

Even assuming the acrylamide levels here were caused by cooking as opposed to some other
mechanism, there is no blanket exemption for chemicals caused by cooking, just a question about
whether the NSRL should be modified.  B&G admits that is the proper reading of the regulation by
referring to "the *alternative NSRL* that would be required by Cal. Code Regs., tit. 27, § 25703(b)(1)"
rather than to an automatic exemption.  SAC, ¶ 123 (emphasis added).   There is no triable issue
relating to whether Embry/EHA's actions were a sham based on the cooking regulation, which is

1    neither obvious nor Defendants' burden to prove.[4]

2              3.    Constitutional Issues

3         B&G further alleges that the mere filing of Proposition 65 lawsuits on acrylamide is a sham

4    because of a pending case on the constitutionality of acrylamide warnings.  SAC, ¶¶ 189-200.  But

5    there was no injunction at the time Embry/EHA issued their NOVs and filed suit against B&G.  RJN

6    Exhs. 153 (Embry Compl. filed March 2020), 154 (EHA Compl. filed January 2021); *California*

7    *Chamber of Commerce v. Becerra*, 529 F. Supp. 3d 1099 (E.D. Cal. 2021) (preliminary injunction

8    issued March 30, 2021).  Moreover, as the Court is aware, the First Amendment issue surrounding

9    acrylamide was highly contested.  Defendants were not required to read tea leaves or abandon their

10   claims based on a hypothetical outcome.  Lastly, this Court's injunction was prospective, affecting

11   only "new" acrylamide lawsuits.  *Becerra*, 529 F. Supp. 3d at 1123.

12        B&G also argues that the Proposition 65 lawsuits are a sham because they would require

13   unconstitutional forced speech.  SAC, ¶¶ 201-14.  But the standard is that no reasonable litigant

14   could realistically expect success.  *B&G Foods*, 29 F.4th at 538.  As noted above, Defendants' state

15   court lawsuits were filed before this Court issued the preliminary injunction.  Even if the First

16   Amendment argument prevails in the end, there is no basis to say Defendants' lawsuits were shams

17   at the time they were filed.

18        **B.    The Sham Exception for Fraud or Intentional Misrepresentations**

19        This exception concerns litigation predicated upon "a party's knowing fraud upon, or its

20   intentional misrepresentations to, the court to deprive the litigation of its legitimacy."  *B&G Foods*,

21   29 F.4th at 538.  B&G's three fraud arguments have no legitimacy.

22              1.    *"Spoliation" – Or Lack Thereof*

23        B&G argues that Defendant Embry committed fraud by spoliating evidence because the

24

25   ---
     [4] The Court previously observed:

26        B&G admits that "[n]o one who makes or sells baked goods could ever be sure whether the [cooking] exemption applies to their products … [because t]he language of the cooking exemption is also vague on its face and subject to a multitude of differing interpretations."  FAC ¶¶ 73-74.  **If B&G itself could not be sure whether the cooking exemption applied to its cookies, then the exemption's application cannot be so obvious that lawsuits against B&G are objectively baseless**.

27

28   Dkt. 56 at 9:15-20 (emphasis added).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

Cookie Cakes sample tested by IEH Laboratories prior to filing her Proposition 65 lawsuit has since been destroyed.[5]  SAC, ¶¶ 75-85.  B&G further alleges that "at Ms. Embry's instruction," IEH destroyed the sample 30-days after it was tested to prevent B&G from testing the validity of the result Defendant Embry relied on to support her Cookie Cakes NOV.  *Id.*, ¶¶ 80, 85.

Nothing about B&G's contention is true, or even relevant to defending a Proposition 65 claim.  Defendants retained the B&G cookies purchased in 2019/2020 and produced them to B&G in this litigation.  In short, B&G has access to the same cookies from the same packages purchased by Defendants 4-5 years ago that were tested by IEH and Medallion.  Schulte Dec., ¶ 9, Exhs. E, F.

What B&G characterizes as "spoliation" is simply IEH's regular disposal practice of perishable product samples.  Declaration of Damien Gadomski ("Gadomski Dec."), ¶ 6.  Indeed, the disposal of the Cookie Cakes sample after testing is IEH's standard protocol, no different from the thousands of other samples IEH receives, processes, and tests on a monthly basis.  *Id.*  Moreover, Embry never instructed IEH to destroy the Cookie Cakes sample after testing.  UMF 18.  Since IEH was not told "to keep the Cookie Cakes for a longer duration[,] they were disposed of as per IEH's standard retention policy" approximately two weeks after the test was conducted.  Gadomski Dec., ¶ 6; and *see* Ex. A at 4 [Embry's submission form does not contain a special instruction to keep or destroy the sample].

Regardless, the evidence for Proposition 65 claims is not the product samples that produced the test results but the actual test results.  There was nothing special about the cookies Defendants tested prior to initiating litigation.  Ex. D (Marchisio 30(b)(6) Dep. Tr. at 109:16-23, 218:18-25) (the cookie ingredients and recipes never changed throughout the 5-year period B&G manufactured them).  The Cookie Cakes and Sandwich Cookies were also mass produced.  *Id.* at 146:3-5, 237:22-238:5 (B&G sold thousands of cookies each year).  Further, each cookie package had a batch or lot number associated with a particular production run.  *Id.* at 148:20-149:10.  Even though all cookies were the same, B&G was not prevented from testing another cookie from the same batch or lot number that Defendants tested.  Ultimately, B&G was not prevented from, and indeed admits to,

---

[5] B&G makes no "spoliation" claim against Defendant EHA or Medallion – the lab that tested the Sandwich Cookies for acrylamide.  *See* SAC, ¶¶ 75-85.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

1  conducting its own testing of the subject cookies.  *Id.* at 213:24-214:10 (verifying B&G conducted

2  testing after receipt of Embry's NOV); SAC, ¶ 76 ("B&G Foods' own testing showed…").

3      There is no greater weight given to pre-lawsuit testing in determining liability under

4  Proposition 65 than any other testing.  The products can be retested using other samples (as B&G

5  accomplished here) and any dispute over the accuracy of the lab results is a factual issue for trial –

6  not a "spoliation" issue.  Generally, the main inquiry of a spoliation claim is whether the missing

7  item is relevant and irreplaceable.  *See Colonies Partners, L.P. v. County of San Bernardino,* 2020

8  WL 149644, at *5 (C.D. Cal., Feb. 27, 2020).  Here, a mass-produced cookie, where the ingredients

9  and recipe never changed, is not "irreplaceable" evidence.  In short, <u>a cookie is a cookie</u>.[6]

10         *2.    Certificates of Merit*

11     B&G next argues that Defendants made false statements in the certificates of merit submitted

12  with their notices of violation under Proposition 65.  SAC, ¶¶ 86-102.  This argument is largely

13  premised on baseless claims already debunked above.

14     B&G admits (as it must) that "Defendants submitted certificates of merit[.]"  SAC, ¶ 86; and

15  *see* Fiering Dec., ¶¶ 6-9.  However, B&G then posits several falsehoods about the COMs: (1) they

16  do not reflect any good faith investigation, (2) they were "manufactured after the fact" to avoid a

17  finding of sham litigation, and (3) counsel's certification regarding consulting with experts is

18  inconsistent with Defendants' prior statements in discovery.  SAC, ¶ 86.

19     <u>First</u>, the uncontroverted evidence demonstrates a robust pre-notice investigation by

20  Defendants, verified by the Attorney General.[7]  *See, supra,* § II(B), (C).  <u>Second</u>, B&G inexplicably

21  claims that Defendants' expert reports "were manufactured after the fact and/or were never included

22  in Defendants' original certificates of merit [served on the Attorney General], making them false or

---

[6] B&G's counsel have advanced this same "spoliation" argument in at least one other Proposition 65 case, where it was soundly rejected.  RJN, Exhs. 155-57.  As the Orange County Superior Court found, "spoliation cases referred to in the briefing all identify a particular item or items that once lost, could not be replicated in any manner."  RJN, Ex. 156 at 2.  But a Proposition 65 defendant "could as effectively challenge the initial test results by testing the products initially subjected to testing as by testing products currently available."  *Id.* B&G's counsel have recycled the same spoliation argument they lost to attempt to show fraud.  No reasonable trier of fact could find that B&G's logic-defying "spoliation" claim constitutes fraud.

[7] The Court previously ruled: "If the defendants filed a certificate of merit as required by law, then B&G's allegations about additional steps not taken do not plausibly convey that no meaningful investigation was conducted."  Dkt. 56 at 10:16-18.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

defective … [in an attempt] "to avoid a finding of sham litigation in this case." SAC, ¶¶ 86, 112. B&G's own 30(b)(6) witness could not articulate the factual or evidentiary basis for this defamatory allegation. Ex. D (Marchisio 30(b)(6) Dep. Tr. at 160:15-165:8; 246:3-250:23). <u>This is because it is completely made up.</u> *See* Fiering Dec., ¶¶ 6-9, Ex. 1 at Ex. A-B; Meeker Dec., ¶¶ 4-7, Exhs. B-I. As to the <u>third</u> supposition, B&G takes out of context a response from Defendant EHA in its state court action to argue Defendants' counsel falsely stated in the COM that he consulted with an expert. SAC, ¶¶ 96-97. Regardless, the undisputed evidence proves counsel's certification was true – i.e., an expert (Dr. Meeker) was consulted prior to issuing the B&G NOVs. UMF 5, 12.

B&G next raises the specter that Defendants amended their NOVs to "fix" deficiencies with their original NOVs. SAC, ¶¶ 89-90, 98. Wrong. No new investigation or expert work occurred after the original NOVs issued. Defendants amended their NOVs for one simple reason – to disprove B&G's baseless allegations. *See* Ex. C (Holliday 30(b)(6) Dep. Tr. at 43:2-44:10, 82:3-20) ("EHA amended the notice of violation in order to attach supporting materials … in order to rebut B&G's claims that these documents did not exist when the original notice was filed."); Fiering Dec., ¶¶ 6-9 ("EHA and Embry have made the confidential information connected with the two notices public and have waived the information's confidentiality."); RJN, Exhs. 159, 161 (the factual support attached to the amended NOVs <u>predate</u> issuance of the original NOVs).

Lastly, B&G argues Defendants' COMs are false because they "conceded" there is a successful affirmative defense to their Proposition 65 lawsuits because acrylamide is caused by cooking. SAC, ¶¶ 90-94, 99-100. This is a rehash of the argument that Defendants' pre-suit investigation was a sham because Embry/EHA did not disprove the cooking regulation, which is addressed above. *See*, *supra*, § IV(A)(2).

### 3.  *Proposition 65 Lawsuits*

B&G also argues that Defendants made false statements in their lawsuits. SAC, ¶¶ 124-145. B&G first argues that Defendants falsely stated that acrylamide is known to the State of California to cause cancer. SAC, ¶¶ 124-126. This is another refashioned argument that Defendants' enforcement actions were a sham because Embry/EHA did not "do their own research" into the carcinogenicity of acrylamide. *See*, *supra*, § IV(A)(1). B&G next argues that Defendants falsely

stated that they provided valid certificates of merit prior to suing.  SAC, ¶¶ 124, 127, 137-139.  Again, Defendants proved this to be *yet another* false allegation.  *See, supra,* § IV(B)(2); Fiering Dec., ¶¶ 6-9.  Unsurprisingly, B&G's 30(b)(6) witness was unable to provide a factual basis for this allegation.  Ex. D (Marchisio 30(b)(6) Dep. Tr. at 172:19-174:24, 252:10-256:1, 274:22-276:6).

Still further, B&G points to Defendants' pleading of irreparable harm and contrasts that to the lack of evidence that any particular person got cancer from eating the cookies.  SAC, ¶¶ 135-36.  But the Court of Appeal recently affirmed that a private enforcer need not plead or come forward with evidence of "actual use" of the violating product.  *Lee v. Amazon.com, Inc.,* 76 Cal.App.5th 200, 244-250 (2022) (holding that evidence of "actual use" of the product is not required to establish an "exposure" under Proposition 65 – the sale itself is enough, regardless of the consumer's actual use).  Hence, there is no triable issue here since Defendants' pleading of irreparable harm in the state court lawsuits is entirely correct based on the deprivation of consumers' right to know so that they can make informed decisions.

B&G also maligns Defendants' lawsuits as not being in the public interest.  SAC, ¶¶ 140-41, 144-45.  However, the phrase "in the public interest" is used to distinguish a Proposition 65 case from a case where a plaintiff may sue for personal injury or damages.  *See Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*, 168 Cal.App.4th 675, 692-93 (2008) (discussing difference between representative action to vindicate public rights under Proposition 65 and individual action); § 25249.7(d).  Therefore, by their very nature, it is a "*given* that private-enforcement Proposition 65 actions are brought 'in the public interest.'"  *Consumer Defense Group v. Rental Housing Industry Members*, 137 Cal.App.4th 1185, 1207 (2006) (emphasis added).  There is no triable issue as to whether Defendants made a false statement since enforcement actions are – by definition – brought in the public interest.

### C.   The Sham Exception for Series of Lawsuits Brought Without Regard to Merit

This exception applies "where the defendant is accused of bringing a whole series of legal proceedings" without regards to the merits.  *B&G Foods*, 29 F.4th at 539.  To determine whether the exception applies, courts ask: "Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for

purposes of harassment?" *Id.*

Defendants have brought a total of 565 acrylamide NOVs over an approximate 5-year period. Declaration of Isabella Ordonez ("Ordonez Dec."), ¶ 5. By any measure, Defendants' history of acrylamide prosecution has been a resounding success. Defendants settled or obtained a judgment prosecuting acrylamide NOVs/suits on at least 151 separate occasions, collecting more than **7 million dollars** in civil penalties (75% of which are directed to the State of California, § 25249.12(c)(1)) and attorneys' fees and costs. UMF 20; RJN, Exhs. 1-151.

Defendants' overall "success rate" of 37% does not suggest that Embry/EHA were operating a sham. Ordonez Dec., ¶ 10-11 (explaining the success rate calculation). This Court has found that "the key question is whether the success rate is so low that it is plausible to infer a sham operation." Dkt. 56 at 12:11-12. The Court then added: "Even with the low-end success rates of 25 out of 260 and 160 out of 800 [a 17% success rate, (25+160/260+800)], such an inference is not plausible." *Id.* at 12:12-14. Hence, without more facts "to tip the scale from possible to plausible" which B&G cannot provide, a success rate of 37% does not make a sham inference even plausible. Dkt. 56 at 12:12-14, 18-19. This is especially true considering Defendants have recovered over 7 million dollars in civil penalties and attorneys' fees, which directly "rebut claims of a sham." Dkt. 33 at 5:9-14.

B&G's speculative allegations as to IEH Laboratories being a "captive lab" are easily rejected. SAC, ¶¶ 164-67. B&G claims that Defendants used IEH as its preferred laboratory because IEH (1) uses non-standard testing procedures that resulted in inflated results, (2) destroys product samples after testing, making it impossible for B&G to retest the products and challenge the accuracy of the testing methods, and (3) is located out of state, making it more difficult to obtain discovery. *Id.* As an initial matter, IEH was not Defendants' sole lab of choice when it came to acrylamide litigation. Defendants utilized at least four other laboratories to obtain acrylamide test results in support of their NOVs.[8] Indeed, Defendants produced those non-IEH lab results to B&G as part of the randomized sample production. *Supra*, II(D). The first two allegations were addressed

---

[8] *See, e.g.*, Ex. A at 138, 159, 181 (Adamson Analytical Laboratories), 242-43, 882, 899 (SGS), 725, 828-833, 864 (Medallion Labs), 1337, 1353, 1373 (Covance).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

previously.  *Supra*, IV(B)(1) (discussing IEH's standard disposal protocol, and how any dispute over the accuracy of the lab results is a factual issue for the state court trial); and *see* Gadomski Dec., ¶ 6.  Lastly, Rule 45 permits discovery to out-of-state parties like IEH.  Indeed, B&G issued a subpoena to IEH in this matter and IEH produced documents.  Schulte Dec., ¶ 10.

## V.   **THERE IS NO TRIABLE ISSUE REGARDING STATE ACTION**

Because there is no triable issue on the *Noerr-Pennington* doctrine, even assuming arguendo Defendants acted under color of law, the Court need not address the state action inquiry.  The Court has already observed "the question makes for a close call" at the motion to dismiss stage, even accepting all of B&G's allegations as true.  Dkt. 82 at 13:5.  The Court also noted "it is far from clear B&G could ultimately prove California has condoned the alleged shakedown.  *Id.* at 17:10-11.  As detailed below, Embry and EHA are not state actors, a precondition of B&G's 1983 claim.

### A.   **Embry and EHA are Presumptively Not State Actors**

"When addressing whether a private party acted under color of law," courts "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999).  There are only a "few limited circumstances" when a private party (such as Embry or EHA) may "qualify as a state actor."  *Manhattan Cmty. Access Corp. v. Halleck,* 587 U.S. 802, 809 (2019).  Specifically, a private citizen may be deemed a state actor if: (1) he "performs a traditional, exclusive public function"; (2) "the government acts jointly with the private" citizen; or (3) "the government compels" the private citizen "to take a particular action."  *Id.*  B&G's section 1983 claim against Defendants fails to meet any of the state actor tests.

### B.   **Defendants do not Perform a Traditional, Exclusive Public Function**

Private enforcers do not "perform[] a traditional, exclusive public function" when they bring Proposition 65 enforcement actions.  *Manhattan Cmty.*, 587 U.S. at 809.  The U.S. Supreme Court "has stressed that 'very few' functions fall into that category."  *Id.* (citing "running elections" and "operating a company town" as examples).  To meet this test, B&G must "show more than the mere performance of a public function by a private entity"; it must show that "the private party performed a public function that has been traditionally the <u>exclusive</u> prerogative of the state."  *Real Estate Bar*

1  *Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs*, 608 F.3d 110, 121 (1st Cir. 2010) (quotations

2  omitted; emphasis added).

3      B&G argues Defendants "are performing a quintessential state function by acting as

4  California's enforcement arm relating to the presence of targeted chemicals in the environment."

5  SAC, ¶ 234(i); and *see* ¶ 235 (observing how "Proposition 65 is a state statue and Defendants have

6  filed suit in state court."). Yet, because the State may enact health and safety laws (and even bring

7  public prosecutions under those laws) does not make private citizens who bring litigation to enforce

8  those laws state actors, as a lawsuit to enforce public policy is "far from" an "exclusive" function of

9  government. *Real Estate Bar Ass'n*, 608 F.3d at 122. "An action undertaken by a private party does

10  not become state action merely because the action is authorized by state statute." *Id*. (citing *Flagg*

11  *Bros., Inc. v. Brooks,* 436 U.S. 149, 164-66 (1978)).

12      Proposition 65's statutory scheme demonstrates that its enforcement is <u>not an exclusive</u>

13  <u>government function</u> because an action may be brought in two very different ways. First, the

14  government may bring an action by "the Attorney General in the name of the People of the State of

15  California, by a district attorney, by a city attorney . . . [or] by a city prosecutor." § 25249.7(c).

16  Second, the Act permits "private action[s]" brought by a "person" acting "in the public interest" but

17  only after the person: (1) provides notice of the Proposition 65 violation to the defendant, the

18  Attorney General and the relevant district attorney or city prosecutor; and (2) waits 60 days and

19  "neither the Attorney General, a district attorney, a city attorney, nor a prosecutor has commenced

20  an action and is diligently prosecuting an action against the violation." § 25249.7(d). The "purpose

21  of the notice provision is to encourage public enforcement, thereby avoiding the need for a private

22  lawsuit altogether." *Yeroushalmi v. Miramar Sheraton*, 88 Cal.App.4th 738, 750 (2001).

23      Nor does acting "in the public interest" convert private action into an exclusively public

24  function as the Court has suggested. *See* Dkt. 82 at 13:15-15:11. "That a private entity performs a

25  function which serves the public does not make its acts state action." *Rendell-Baker v. Kohn,* 457

26  U.S. 830, 842 (1982). To the contrary, environmental statutes have long contained citizen suit

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

provisions.[9]  California law also permits citizen suits outside of the Proposition 65 context, including under the California Labor Code Private Attorneys General Act of 2004 (PAGA).  *See* Cal. Lab. Code, § 2699.  Proposition 65's provision for private enforcement actions is merely another example of such a citizen suit statute.

Notably, it does not appear a court has ever adjudicated that a private enforcer of Prop 65 is a state actor subject to § 1983 liability.  *See*, *e.g.*, RJN, Ex. 162 at 7:16-17 ("The Attorney General has not found a single case holding that a private party transforms into a state actor when he brings a suit to enforce public rights.").  Indeed, in *Nabors Well Servs. Co. v. Bradshaw*, 2006 WL 8432088, at *2-3 (C.D. Cal., Feb. 15, 2006), the district court held that a person who brought a citizen suit to enforce California labor law requirements under PAGA was not a "state actor" for § 1983 purposes.

In sum, Prop 65 differentiates between state actions that are brought by a public prosecutor and "private actions" that are brought by private citizens after notifying the State and *the State declining to take its own action*.  That is, both public and private actions are permitted.  Like with PAGA, the ability to bring a lawsuit under Prop 65 is not exclusively reserved to the State.

### C.    Defendants Do Not Act Jointly with the State

To show there was joint action between a private actor and the State, the plaintiff must show the private actors are "willful participants in joint action with the government or its agents." *Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205, 1210 (9th Cir. 2002).  A private party is liable under this theory "only if its particular actions are inextricably intertwined with those of the government." *Id*. at 1211 (internal quotation marks omitted).

Proposition 65 does not countenance joint action.  It requires *independent* actions of the government and private citizens.  A potential plaintiff must first notify the State and may only bring suit after the State declines to act.  § 25249.7(d).  Although the Attorney General can inform the potential plaintiff that the Attorney General does not believe the case has merit, that does not stop the action from going forward. § 25249.7(e)(1)(A). Moreover, the Act treats private enforcers

---

[9] These include, for example, the citizen suit provisions of the federal Clean Water Act, 33 U.S.C. § 1365; Endangered Species Act, 16 U.S.C. § 1540(g); Safe Drinking Water Act, 42 U.S.C. § 300j-8; Toxic Substances Control Act, 15 U.S.C. § 2619; Surface Mining Control and Reclamation Act, 30 U.S.C. § 1270; Deepwater Port Act, 33 U.S.C. § 1515; Act to Prevent Pollution of Ships, 33 U.S.C. § 1910; and Noise Control Act, 42 U.S.C. § 4911.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

differently from the government: unlike public enforcers, private enforcers are required to provide 60 days' notice before filing an action, § 25249.7(d)(1); they cannot sue if a public enforcer has already sued, § 25249.7(d)(2); they are subject to sanctions if they bring a frivolous case, § 25249.7(h)(2); and they must get judicial approval to settle their cases, § 25249.7(f)(4).

As to settlement, a private enforcer must notify the Attorney General upon filing a motion to enter into a settlement agreement and the Attorney General may then "appear and participate in [the settlement] proceeding without intervening in the case."[10] § 25249.7(f)(5).  But Proposition 65 leaves it to the state court to approve or reject a settlement regardless of the Attorney General's position.  § 25249.7(f)(4).  Ultimately, B&G has no evidence to support the claim that California implicitly blessed Defendants' "sham litigation" given there is no triable issue regarding same.  *Supra*, § IV. This alone deprives B&G of what the Court previously found was a necessary basis to meet the joint action test.  *See* Dkt. 82 at 16 n.6, 17:8-14.

### D.     Private Enforcers Are Not Compelled to Bring Actions

"The compulsion test considers whether the coercive influence or significant encouragement of the state effectively converts a private action into a government action."  *Kirtley*, 326 F.3d at 1094 (internal quotation marks omitted).  Proposition 65 permits but does not require private enforcement. § 25249.7(d) ("Actions pursuant to this section *may* be brought by a person in the public interest.") (emphasis added). Defendants opted to pursue litigation against B&G on their own accord without any outside influence or encouragement from the AGO or state officials.  Schulte Dec, ¶¶ 3-4; Glick Dec., ¶¶ 3-4; Nicholas Dec., ¶¶ 3-4.  There is simply no evidentiary support for the allegation that the State "encouraged" Defendants' Proposition 65 litigation against B&G.  SAC, ¶¶ 223, 234(a),(c), 236.  Nor are potential Proposition 65's penalties such "significant encouragement" that the choice to initiate private enforcement "must in law be deemed to be that of the State."  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

### VI.    <u>CONCLUSION</u>

For all the above reasons, Defendants' motion for summary judgment should be granted.

---

[10] Far from evidencing joint action, the Attorney General has objected to proposed settlements brought by Defendants.  *See*, *e.g.*, RJN, Ex. 163.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT

Respectfully Submitted,
Dated: July 19, 2024

NICHOLAS & TOMASEVIC, LLP

By:     */s/ Jake W. Schulte*
         CRAIG M. NICHOLAS (Bar No. 178444)
         cnicholas@nicholaslaw.org
         JAKE W. SCHULTE (Bar. No. 293777)
         jschulte@nicholaslaw.org
         225 Broadway, 19th Floor
         San Diego, California 92101
         Tel: (619) 325-0492 | Fax: (619) 325-0496

         NOAM GLICK (Bar No. 251582)
         noam@glicklawgroup.com
         **GLICK LAW GROUP, P.C.**
         225 Broadway, 19th Floor
         San Diego, CA 92101
         Tel: (619) 382-3400 | Fax: (619) 615-2193

         R. JEFFREY NEER (Bar No. 190417)
         jeff@forumllp.com
         **FORUM LAW PARTNERS, LLP**
         803 Deep Valley Dr.
         Rolling Hills Estates, CA 90274
         Tel: (310) 974-8800 | Fax: (310) 974-8801

         Attorneys for Defendants KIM EMBRY &
         ENVIRONMENTAL HEALTH ADVOCATES,
         INC.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS KIM EMBRY
AND ENVIRONMENTAL HEALTH ADVOCATES, INC.'S MOTION FOR SUMMARY JUDGEMENT