1      ROB BONTA, State Bar No. 202668
         Attorney General of California
2      LAURA J. ZUCKERMAN, State Bar No. 161896
         Supervising Deputy Attorney General
3      SUSAN S. FIERING, State Bar No. 121621
         Deputy Attorney General
4        1515 Clay Street, 20th Floor
          P.O. Box 70550
5        Oakland, CA  94612-0550
          Telephone:  (510) 879-1300
6        Fax:  (510) 622-2270
          E-mail:  Susan.Fiering@doj.ca.gov
7      *Attorneys for California Office of the Attorney
     General*

8

9                 IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| **B&G FOODS NORTH AMERICAN, INC.** | Case No. 2:20-CV-00526-KJM-DB |
| Plaintiff, | **Declaration of Susan S. Fiering** |
| v. | Judge:   Hon. Kimberly J. Mueller |
| **KIM EMBRY AND ENVIRONMENTAL HEALTH ADVOCATES, INC.,** | |
| Defendants. | |

I, Susan S. Fiering, declare as follows:

        1.      I am an attorney duly licensed to practice before all of the courts of the State of California. I am a Deputy Attorney General in the California Office of the Attorney General. I am familiar with the facts stated herein and if called upon as a witness I could testify to the following facts based on my own personal knowledge.

        2.      The Office of the Attorney General ("AGO") received a letter dated December 7, 2023, attached as **Exhibit 1.**  In the letter, counsel for Environmental Health Advocates, Inc. ("EHA") and Kim Embry ("Embry"), requested that the AGO verify that certain documents were

1

submitted to the AGO in connection with two notices served by Defendants under Health & Safety Code section 25247.5 et seq. ("Proposition 65").

3.     Noticing parties are required to include with their notices a certificate of merit "stating that the person executing the certificate has consulted with one or more persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other data regarding the exposure to the listed chemical that is the subject of the action, and that, based on that information, the person executing the certificate believes that there is a reasonable and meritorious case for the private action. Factual information sufficient to establish the basis of the certificate of merit,… shall be attached to the certificate of merit that is served on the Attorney General." (Health & Saf. Code, § 25249.7, subd. (d)(1).)

4.     Further, the statute states that if, after reviewing the above factual information and conferring with the noticing party, "the Attorney General believes there is no merit to the action, the Attorney General shall serve a letter to the noticing party and the alleged violator stating the Attorney General believes there is no merit to the action." (*Id.,* subd. (e)(1)(A).)  It is the Attorney General's policy and practice to post these no-merit letters on its website, located here: https://oag.ca.gov/prop65/ag-letters.

5.     Finally, except for sharing the above information with other public enforcers, the Attorney General "shall maintain… the submitted information as confidential official information to the full extent authorized in Section 1040 of the Evidence Code." (*Id.,* subd. (i).)

6.     The AGO reviews all certificates of merit submitted with Proposition 65 notices. In this case, the AGO reviewed the certificates of merit submitted with notices No. 2019-00765 and No. 2020-02646, and with the related amended notices, and did not determine that there was no merit to the action.  The AGO did not therefore issue a no merit letter.

7.     I have gone back and compared the information contained in Exhibits A and B to the December 7th letter attached as Exhibit 1 hereto with the information submitted confidentially to the AGO in Notices No. 2019-00765 and No. 2020-02646. Based on the representation of counsel that EHA and Embry have made the confidential information connected with the two notices public and have waived the information's confidentiality, I can confirm the following:

1    8.    Exhibit A to the December 7th letter attached hereto as Exhibit 1 is a true and correct

2    copy of the full and complete factual information that  Embry submitted to the AGO in connection

3    with AG Notice No. 2019-00765.

4    9.    Exhibit B to the December 7th letter attached hereto as Exhibit 1 is a true and correct

5    copy of the full and complete factual information that EHA submitted to the AGO in connection

6    with AG Notice No. 2020-02646.

7    I declare under penalty of perjury under the laws of the United States that the foregoing is

8    true and except where stated to be based on information and belief and as to that information I am

9    informed and do so believe.

10   Executed on March 19, 2024, in Oakland, California.

11

12                                        /S/  SUSAN S. FIERING
                                              SUSAN S. FIERING
13

14

15   SF1986IN1847

16

17

18

19

20

21

22

23

24

25

26

27

28

3

EXHIBIT 1

# NICHOLAS & TOMASEVIC LLP

### ATTORNEYS AT LAW

Tel: 619-325-0492                                                       225 Broadway, 19th Floor
Fax: 619-325-0496                                                       San Diego, CA 92101

December 7, 2023

**VIA FEDEX & E-MAIL**
Susan Fiering
    Deputy Attorney General, Retired Annuitant
Laura Zuckerman
    Supervising Deputy Attorney General
**CALIFORNIA ATTORNEY GENERAL'S OFFICE**
1515 Clay St., 20th Floor
Oakland, CA 94612
susan.fiering@doj.ca.gov
laura.zuckerman@doj.ca.gov

> Re:   ***B&G Foods v. Embry/EHA***
>        **Case No. 2:20-cv-00526-KJM-DB (E.D. Cal.)**

Mmes. Fiering and Zuckerman:

Citizen enforcers of Proposition 65 Kim Embry ("Embry") and Environmental Health Advocates, Inc. ("EHA"), defendants in the above-referenced action, hereby request, through counsel, that the Attorney General confirm, in writing, that the documents attached to this letter are true and correct copies of the factual information Embry and EHA submitted in support of their certificates of merit, pursuant to Cal. Health & Safety Code § 25249.7(d)(1), related to the below-described 60-Day Notices of Violation served on B&G Foods North America, Inc. ("B&G"), plaintiff in the above-referenced action.

**Embry Notices**

On April 22, 2019, Embry served B&G with a 60-day notice related to its failure to warn consumers of exposure to acrylamide in its "SnackWell's Devil's Food Fat Free Cookie Cakes" (the "Cookie Cakes NOV"; AG No. 2019-00765). On March 6, 2020, Embry filed a Proposition 65 complaint against B&G related to the Cookie Cakes NOV in the Superior Court of California, County of Alameda, No. RG20057491. On August 17, 2022, Embry served B&G with an amended notice (the "Amended Cookie Cakes NOV"; AG No. 2022-01870) attaching (and making public) her supporting factual information related to the original Cookie Cakes NOV – namely, the IEH Laboratories test result (dated April 4, 2019) and Dr. Meeker's expert report (dated April 12, 2019).

In short, Embry has already put in the public domain the factual information supporting her pre-suit investigation of B&G's Cookie Cakes. Accordingly, **Ms. Embry unequivocally waives any confidentiality she may have in said factual information pursuant to Cal. Evid. Code § 1040.** Therefore, Embry respectfully requests the Attorney General confirm that the materials attached to this letter as **Exhibit A** constitute true and correct copies of the full and

December 7, 2023
*B&G Foods v. Embry/EHA*
Page 2

_____

complete factual information that Embry submitted to the Attorney General as part of the original Cookie Cakes NOV, AG No. 2019-00765.

**EHA Notices**

On October 8, 2020, EHA served B&G with a 60-day notice related to its failure to warn consumers of exposure to acrylamide in its "SnackWell's Chocolate Crème Sandwich Cookies" (the "Sandwich Cookies NOV"; AG No. 2020-02646).   On January 22, 2021, EHA filed a Proposition 65 complaint against B&G related to the Sandwich Cookies NOV in the Superior Court of California, County of Alameda, No. RG21086510.  On July 27, 2022, EHA served B&G with an amended notice (the "Amended Sandwich Cookies NOV"; AG No. 2022-01704) attaching (and making public) its supporting factual information related to the original Sandwich Cookies NOV – namely, the Medallion Labs test result (dated June 23, 2020) and Dr. Meeker's expert report (dated June 24, 2020).

Like with Embry, EHA has already put in the public domain the factual information supporting its pre-suit investigation of B&G's Sandwich Cookies.   Accordingly, **EHA unequivocally waives any confidentiality it may have in said factual information pursuant to Cal. Evid. Code § 1040**.  Therefore, EHA respectfully requests the Attorney General confirm that the materials attached to this letter as **Exhibit B** constitute true and correct copies of the full and complete factual information that EHA submitted to the Attorney General as part of the original Sandwich Cookies NOV, AG No. 2020-02646.

Thank you in advance for your attention to this matter.  Please feel free to contact me with any questions.

Sincerely,

**NICHOLAS & TOMASEVIC, LLP**

Jake W. Schulte, Esq.
Counsel for Embry/EHA

CC:

J. Noah Hagey, Esq.; hagey@braunhagey.com
Matthew Borden, Esq.; borden@braunhagey.com
David H. Kwasniewski, Esq.; kwasniewski@braunhagey.com
Robert Petraglia, Esq.; petraglia@braunhagey.com
H. Chelsea Tirgardoon, Esq.; tirgardoon@braunhagey.com
Eric Schlabs, Esq.; schlabs@braunhagey.com

EXHIBIT A

Noam Glick
Glick Law Group
225 Broadway, Suite 2100, San Diego, CA 92101
Tel: 619.382.3400
email:  noam@glicklawgroup.com


April 12, 2019


Dear Mr. Glick,

This letter is in response to your request for my opinion on the potential for human overexposure to acrylamide based on the amount measured in a food product purchased in the State of California. The product in question is Snack Well's Devil's Food Fat Free Cookie Cakes. After purchase, the product was sent to IEH Analytical Laboratory in Seattle, WA. IEH is a commercial laboratory that holds accreditation by multiple accrediting bodies; for this analysis they used a modified version of the method developed by scientists at the U.S. Food and Drug Administration, which measures acrylamide in foods via liquid chromatography-tandem mass spectrometry (LC-MS/MS).[1]  As part of this method the laboratory analysis included steps to assess and maintain quality control of the method (sample chain of custody, method blanks, spiked standards, recovery tests, etc.). **The analyzing laboratory reported high concentrations of acrylamide which appears on the California Prop 65 list of chemicals known by the State of California to be carcinogenic. The acrylamide content of the product was 643 parts per billion (ppb), equal to 0.643 microgram per gram of food (µg/g).**

Acrylamide is a carcinogen than can form as reducing sugars react with free asparagine when carbohydrate-rich foods are processed at high temperatures (such as cooking, frying, roasting, and baking), primarily through what is known as the Maillard reaction.[2-4]  Direct ingestion is the primary route of exposure to acrylamide from food products. It is my opinion that consumption of this particular food product could result in exposure well above the No Significant Risk Level (NSRL) for carcinogens set by the state of California, which for acrylamide is set at 0.2 µg per day.  *Since this product contains 0.643 µg/g acrylamide, the NSRL would be exceeded when consuming just 0.3 grams (0.01 ounces) of the product. The serving size listed on the package is 16 grams. Thus, one would ingest 10.3 µg of acrylamide when consuming a single serving of the product, which is more than 50 times greater than the NSRL.*

In conclusion, given the amount of acrylamide measured in the product and typical serving sizes, exposures in excess of the NSRL are likely to occur. Please let me know if you have further questions.

Sincerely,

John Meeker, MS, ScD, CIH

References

1. Roach JA, Andrzejewski D, Gay ML, Nortrup D, Musser SM. Rugged LC-MS/MS survey analysis for acrylamide in foods. J Agric Food Chem, 2003; 51(26):7547-7554.

2. Arvanitoyannis JS, Dionisopoulou N. Acrylamide: formation, occurrence, in food products, detection methods, and legislation. Crit Rev Food Sci Nutr, 2014; 54(6):708-733.

3. Pedreschi F, Mariotti MS, Granby K. Current issues in dietary acrylamide: formation, mitigation and risk assessment. J Sci Food Agric, 2014; 94(1):9-20.

4. Xu Y, Cui B, Ran R, Liu Y, Chen H, Kai G, Shi J. Risk assessment, formation, and mitigation of dietary acrylamide: current status and future prospects. Food Chem Toxicol, 2014; 69:1-12.



# CERTIFICATE OF ANALYSIS

**IEH Laboratories & Consulting Group**

Nicholas & Tomasevic, LLP
Contact:Lindsay Beatty
225 Broadway, Suite 1900
San Diego, CA 92101
Phone:619-325-0492

**IEH Laboratories & Consulting Group**
IEH Analytical Laboratories
3927 Aurora Avenue North
Seattle, WA 98103
Phone:(206) 632-2715 Fax:(206) 632-2417
www.iehinc.com

TRADE SECRET / CONFIDENTIAL COMMERCIAL INFORMATION

WO: 1705360     Samples Received: 4/1/2019     Report Date: 4/4/2019     Report No: IAL-5532

| Lab Sample ID | Client Sample ID | Matrix | Acrylamide (ppb) |
|---|---|---|---|
| 1705360-16294 | 1 | Keebler Pita Crackers | 103 |
| 1705360-16295 | 2 | Hampton Peanuts | 189 |
| 1705360-16296 | 3 | Murray SF CC Cookies | 219 |
| 1705360-16297 | 4 | Enj. Life DCC Cookies | 140 |
| 1705360-16298 | 5 | JOM Crisps Cheddar | 128 |
| 1705360-16299 | 6 | Ralphs CC Cookies | 180 |
| 1705360-16300 | 7 | Lofthouse Cookie | 12 |
| 1705360-16301 | 8 | SW's FF Cookie Cakes | 643 |

Test Method: Acrylamide = Acrylamide by LC-MS/MS; Method Reference: J. Agric. Food Chem. 54.19 (2006): 7001-7008; Reporting Limit = 10 ppb

UNLESS OTHERWISE NOTED, ALL SAMPLES WERE RECEIVED IN ACCEPTABLE CONDITION. THE RESULT(S) IN THIS REPORT RELATE ONLY TO THE PORTION OF THE SAMPLE(S) TESTED. THIS REPORT DOES NOT CONSTITUTE A RELEASE OF PRODUCT FOR CONSUMPTION. THIS REPORT SHALL NOT BE REPRODUCED EXCEPT IN FULL, WITHOUT WRITTEN APPROVAL OF THE LABORATORY. THIS DOCUMENT CONTAINS CONFIDENTIAL COMMERCIAL INFORMATION PURSUANT TO 5 U.S.C. SEC. 552(b)(4).

Authorized Analyst: Zach Gottschalk

Thursday, Apr 4 2019 15:42:58     Page 1 Of 1

EXHIBIT B

Noam Glick
Glick Law Group
225 Broadway, Suite 2100, San Diego, CA 92101
Tel: 619.382.3400
email:  noam@glicklawgroup.com

June 24, 2020

Dear Mr. Glick,

This letter is in response to your request for my opinion on the potential for human overexposure to acrylamide based on the amount measured in a food product purchased in the State of California. The product in question is SnackWell's Chocolate Creme Sandwich Cookies. After purchase, the product was sent to Medallion Labs in Minneapolis, MN. Medallion is a commercial laboratory that holds accreditation by multiple accrediting bodies; for this analysis they measured acrylamide in foods via liquid chromatography-tandem mass spectrometry (LC-MS/MS).[1]  As part of this method the laboratory analysis included steps to assess and maintain quality control of the method (sample chain of custody, method blanks, spiked standards, recovery tests, etc.). **The analyzing laboratory reported high concentrations of acrylamide which appears on the California Prop 65 list of chemicals known by the State of California to be carcinogenic. The acrylamide content of the product was 616 parts per billion (ppb), equal to 616 microgram per kilogram of food (µg/kg) or 0.616 microgram per gram of food (µg/g).**

Acrylamide is a carcinogen than can form as reducing sugars react with free asparagine when carbohydrate-rich foods are processed at high temperatures (such as cooking, frying, roasting, and baking), primarily through what is known as the Maillard reaction.[2-4]  Direct ingestion is the primary route of exposure to acrylamide from food products. It is my opinion that consumption of this particular food product could result in exposure well above the No Significant Risk Level (NSRL) for carcinogens set by the state of California, which for acrylamide is set at 0.2 µg per day. *Since this product contains 0.616 µg/g acrylamide, the NSRL would be exceeded when consuming just 0.32 grams (0.01 ounces) of the product. The serving size listed for the product is 48 grams. Thus, one would ingest 29.6 µg of acrylamide when consuming a single serving of the product, which is more than 145 times greater than the NSRL.*

In conclusion, given the amount of acrylamide measured in the product and typical serving sizes, exposures in excess of the NSRL are likely to occur. Please let me know if you have further questions.

Sincerely,

John Meeker, MS, ScD, CIH

References

1. Roach JA, Andrzejewski D, Gay ML, Nortrup D, Musser SM. Rugged LC-MS/MS survey analysis for acrylamide in foods. J Agric Food Chem, 2003; 51(26):7547-7554.

2. Arvanitoyannis JS, Dionisopoulou N. Acrylamide: formation, occurrence, in food products, detection methods, and legislation. Crit Rev Food Sci Nutr, 2014; 54(6):708-733.

3. Pedreschi F, Mariotti MS, Granby K. Current issues in dietary acrylamide: formation, mitigation and risk assessment. J Sci Food Agric, 2014; 94(1):9-20.

4. Xu Y, Cui B, Ran R, Liu Y, Chen H, Kai G, Shi J. Risk assessment, formation, and mitigation of dietary acrylamide: current status and future prospects. Food Chem Toxicol, 2014; 69:1-12.

# Medallion Labs

www.medallionlabs.com  800-245-5615  info@medlabs.com

| | | | |
|---|---|---|---|
| **Order Number:** | **2020-004655** | **Completed Date:** | 23-Jun-2020 |
| | | **Submitted Date:** | 01-Jun-2020 |
| **Submitter:** | Anissa Elhaiesahar | | |
| **Company:** | Environmental Health Advocates | | |
| **Company Address:** | 225 Broadway STE 2100 | | |
| | San Diego, CA 92101 | | |
| **Results Email:** | anissa@glicklawgroup.com | | |
| **Invoice Email:** | sara@glicklawgroup.com | | |
| **Purchase Order:** | Elhaiesahar01 | | |

Medallion Labs maintains A2LA accreditation to ISO/IEC 17025 for the specific tests listed in certificates # 2769.01 and 2769.02.
Medallion Labs' services, including this report, are provided subject to all provisions of Medallion's Standard Terms and Conditions, a copy of which appears at www.medallionlabs.com. Unless otherwise noted above, samples were received in acceptable condition and analyzed as received.

# Medallion Labs

www.medallionlabs.com  800-245-5615  info@medlabs.com

| Order # Sample ID: | 2020-004655-01 | Company: | Environmental Health Advocates |
|---|---|---|---|
| Customer Sample ID: | 1) SW Chocolate Creme Sandwich | | Environmental Health Advocates Inc. |
| Sample Description: | 1) SW Chocolate Creme Sandwich Cookies | | |

**Analytical Testing**

| Method: | Component: | Result: | Test Date: |
|---|---|---|---|
| ² Acrylamide | Acrylamide | 616 ppb | 23-Jun-2020 |

| Results Approved By: | Alyssa Ofsthun |
|---|---|
| | (Authorized Reviewer) |

Medallion Labs maintains A2LA accreditation to ISO/IEC 17025 for the specific tests listed in certificates # 2769.01 and 2769.02.
Medallion Labs' services, including this report, are provided subject to all provisions of Medallion's Standard Terms and Conditions, a copy of which appears at www.medallionlabs.com. Unless otherwise noted above, samples were received in acceptable condition and analyzed as received.

² This test is not considered in-scope of our current A2LA accreditation.  For a listing of in-scope tests, please visit www.medallionlabs.com.

# Medallion Labs

www.medallionlabs.com  800-245-5615  info@medlabs.com

**Analytical Method References:**

| Method Name | Method Reference |
|---|---|
| Acrylamide | Please contact for Method Details |

Medallion Labs maintains A2LA accreditation to ISO/IEC 17025 for the specific tests listed in certificates # 2769.01 and 2769.02.

Medallion Labs' services, including this report, are provided subject to all provisions of Medallion's Standard Terms and Conditions, a copy of which appears at www.medallionlabs.com. Unless otherwise noted above, samples were received in acceptable condition and analyzed as received.

² This test is not considered in-scope of our current A2LA accreditation.  For a listing of in-scope tests, please visit www.medallionlabs.com.